IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL E. RUFF, | No. CV-F-05-631 OWW/GSA |
| | MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 47) AND GRANTING IN PART WITH LEAVE TO AMEND, GRANTING IN PART WITHOUT LEAVE TO AMEND, AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (Doc. 73) |
| Plaintiff, | |
| vs. | |
| COUNTY OF KINGS, et al., | |
| Defendant. | |

On January 3, 2007, Defendants filed a motion for summary judgment or summary adjudication (Doc. 47). On January 31, 2008, Plaintiff filed a First Amended Complaint without prior leave of court. After extensive and convoluted proceedings, Plaintiff obtained leave to file the First Amended Complaint and a continuance of the motion for summary judgment. The First Amended Complaint was deemed filed as of April 8, 2008. By Order filed on April 8, 2008, "the hearing on the Defendants' anticipated motion challenging the First Amended Complaint and their pending Motion for Summary Judgment shall be consolidated, since the legal and factual issues will overlap."

**A.   <u>FIRST AMENDED COMPLAINT</u>.[1]**

The First Amended Complaint (FAC) is brought by Plaintiff, Eugene Ruff, alleged to be a 55 year-old African-American. Plaintiff is alleged to be the owner of property located at 11180-11252 S. 10th Avenue, Hanford, CA.  Plaintiff alleges that he purchased this property in December 2003 for the purpose of establishing a commercial recycling center.  Defendants are the County of Kings; Kings County Planner Mark Sherman; Kings County Assistant Zoning Administrator Sandy Roper; and Kings County Director of Planning and Building Inspection William R. Zumwalt.

_____

[1]On May 10, 2005, Plaintiff, then represented by Rafael Pio Fonseca, filed a Complaint in which it was alleged:

> 8.   Beginning on or about September 1, 2004, Defendants began the practice of racial discrimination against Plaintiff which consists of the enforcement against Plaintiff of General amendments to the Kings County general plan targeted against Plaintiff as an individual African American and designed with the specific intent to prevent Plaintiff from engaging the [sic] lawful of [sic] operation of a recycling business on land purchased for that purpose and Plaintiff further alleges that on or about February 25, 2005 Defendants continued their discrimination against Plaintiff by selective enforcement against Plaintiff as to similar business operations in Armona, California situated in Kings county [sic] under the color of official authority. On information and belief Plaintiff further alleges that other individuals similarly situated have not been subjected to these practices.

The Complaint alleged claims for injunctive and declaratory relief based on the Equal Protection Clause of the California and United States Constitutions; for damages pursuant to 42 U.S.C. § 1983; and for violation of 15 U.S.C. § 2.

All individual defendants are sued in their individual capacities for purposes of monetary damages and in their official capacities for purposes of injunctive and declaratory relief.  The FAC alleges as the First Cause of Action violation of 42 U.S.C. § 1983; as the Second Cause of Action violation of 42 U.S.C. § 1985(3); as the Third Cause of Action violation of 15 U.S.C. §§ 2, 15; and as the Fourth Cause of Action, declaratory judgment.

The FAC alleges the following facts in the First Cause of Action pursuant to 42 U.S.C. § 1983:

> 8. By November 2003, Ruff had developed plans for a recycling center on the subject property, which he had by then agreed to purchase in principle from Art Brieno ("Brieno"). During November 2003, Ruff confirmed that the subject property was zoned service commercial and that his intended recycling center as a permitted use under that zoning classification. During this time period, Ruff had direct contact and communication with Sherman and another planning commission employee, Charles Kinney. Plaintiff was typically accompanied by others when he had these contacts, which only confirmed that he would be entitled to proceed with his intended recycling center.
>
> 9. On December 2, 2003, Ruff finalized his purchase of the property and recorded his purchase on December 3, 2003.
>
> 10. Beginning in December 2003 and through July 2004, Ruff repeatedly attempted to submit his recycling center plan without success, as he was intentionally, discriminatorily and capriciously prevented from doing so by the defendants and their agents. On multiple occasions, although Ruff had timely recorded his purchase, of the subject property, he was told by Sherman and others under his supervision that he could not submit his plans because he was not listed in Kings County's computerized system

3

as the principle owner of the subject property. Ruff was repeatedly denied to even submit his plan on this basis, even though he was able to produce and indeed did produce a recorded copy of the purchase agreement for the subject property demonstrating he was the sole owner. Yet, Ruff was repeatedly advised that he would not be allowed to submit plans for his recycling center because he was allegedly not listed as the owner of the property in the computer system relied upon by the Kings County agencies dealing with property and development issues. On these multiple occasions, Ruff was accompanied by another individual, either his son Hananiah Ruff or Tammy Sanders and/or Brieno.

11. On or about July 14, 2004, Sherman finally permitted Ruff to submit his recycling center plan under protest, only to be telephoned by Sherman shortly thereafter and told that his plan "would not fly" because the "law" did not allow it. Ruff requested that this denial be provided in writing.

12. On August 25, 2004, Ruff received a letter from the Kings County Planning Director, defendant Zumwalt, informing him that his plan had been denied, The cited reason why the plan was denied was page LV-3, section II and page LU08, Policy LU 3.4a of the Kings County General Plan, which by then collectively provided that city fringe area plan proposed for commercial or industrial development required annexation to the city.

13. The provisions of the Kings County General Plan upon which Ruff's denial was based were not in effect at the time he purchased the subject property and first submitted his plan for approval. Indeed, in violation of LAFCO procedures and customary practices, no public hearing or review was provided for and instead the proposed plan submitted to Board of Supervisors without LAFCO review or approval by Zumwalt. Moreover, no notice was provided by any agency of Kings County to Ruff, Brieno or anyone associated with subject property. Moreover, published notices were

4

intentionally and impermissibly vague and did not in any way indicate that the subject property was under consideration to be rezoned. The published notice and other documents purporting to constitute notice were drafted by defendant Roper, and they were drafted in a way as to prevent Ruff from receiving any actual notice of the proposed rezoning.

14. Discovery has shown that the plan amendment was promulgated, presented and approved only after the defendants and their agents became aware of Ruff's proposed recycling center. Indeed, the plan amendment appears to have taken effect sometime between January and April 2004, the time period during which Ruff was being intentionally, discriminatorily and capriciously denied the right to submit plans for his proposed recycling center and to have said proposal acted upon. Ruff is informed and believes that the purpose of these efforts was to hold him off until the plan amendment could be adopted and thereby provide a basis for denying development that was previously permissible.

15. The above actions could not have been more intentionally and discriminatorily directed at Ruff and the subject property. Indeed, discovery has shown that the subject property is the only piece of property that was affected by the hastily promulgated, presented and approved plan amendment. Indeed, the defendants have been asked to identify another property affected by this amendment in discovery and have failed to do so.

16. Ruff initiated an appeal of his denial by Kings County but abandoned it after it became clear that his proposed recycling center was not a permitted use under the illicit plan amendment and that he could only go forward with such plans if the City of Hanford discretionarily permitted him to do so. It would have been futile to continue to appeal to Kings County based on the 2004 plan amendment, which was specifically drafted to deny him the development rights he would have

had prior to rezoning.

17. The intent of the defendants actions are further borne out by their and their agents intervening to contact the City of Hanford planning authorities regarding Ruff's recycling center, even before he had submitted any plans to the City of Hanford and sought annexation to the City of Hanford, as required by the plan amendment. In any event, these potential efforts were demonstrated to be futile, since Ruff was told by Hanford officials shortly after that illicit contact that his proposed recycling center would never be permitted in Hanford and that his property would never be annexed by Hanford for that purpose.

18. At all pertinent times, Ruff has been ready, willing and able to proceed with his proposed recycling center on the subject property. Ruff has spent his working life in the refuse and recycling industry and had the experience to make his proposed recycling center work. Further, the Kings County recycling market at the time would have been advantageous for the implementation of Ruff's proposed recycling center, as no equivalent commercial recycling center existed in the County and the nearest equivalent ones were operating in Tulare and Fresno counties. Those equivalent recycling centers had multimillion dollar revenues, based on public filings obtained by plaintiff.

19. Ruff's proposed recycling center also would have been in the public interest, since, at all pertinent times, Kings County has been the site of the dumping of more recyclable refuse than any county in California and, perhaps, the United States. Indeed, other counties contract with Kings County to dump their refuse within its premises. Kings County also had state and federal sponsored incentives to increase its recycling efforts during the subject period. However, Kings County itself runs the only roughly equivalent recycling operation in Kings County and has thus monopolized the commercial recycling market, for its own illicit benefit and to the plaintiff's

1        substantial detriment.

2        20. The defendants and their agents prevented
         Ruff from proceeding with his proposed
3        recycling center not because they were acting
         in the public interest or in accordance with
4        law but, rather, because they selectively,
         discriminatorily and intentionally wanted to
5        thwart Ruff's efforts. This is consistent
         with a long line of selective, discriminatory
6        and intentional mistreatment that Ruff and
         his family have sustained during their many
7        years of providing valuable refuse and
         recycling services to Kings County. This
8        pattern rises to the level of County policy.

9        21. The foregoing demonstrates that Ruff's
         constitutional rights were intentionally,
10       selectively and discriminatorily denied by
         the defendants, who acted jointly, in concert
11       and/or conspired to accomplish this denial.
         The predatory plan amendment and the lack of
12       notice thereof was designed to prevent Ruff
         from using his property as he saw fit and as
13       was then permissible under the law, without
         any justifiable basis therefor. These actions
14       violate Ruff's rights under the Fifth and
         Fourteenth Amendments, specifically his
15       rights not to be deprived of property rights
         in violation of well recognized procedural
16       and substantive due process and takings
         principles. These acts were also arbitrary
17       and capricious, and conscience shocking.
         These actions subject the individual
18       defendants to liability, including punitive
         damages, and subject Kings County to
19       liability as well. Plaintiff is also entitled
         to additional relief, including attorney's
20       fees and costs, as a result of these actions.

21  The Second Cause of Action in the FAC incorporates the preceding

22  allegations and alleges that Defendants conspired to deny

23  Plaintiff equal protection in violation of 42 U.S.C. § 1985(3).

24  The Third Cause of Action alleges violations of the Sherman and

25  Clayton Antitrust Acts in violation of 15 U.S.C. §§ 2 and 15.

26  The Fourth Cause of Action is for declaratory relief and seeks a

declaration that Plaintiff's rights were violated and "remedial orders requiring the County of Kings to repeal the illicit plan amendment, to permit Ruff to proceed with his recycling center forthwith, and to prevent future such actions in this County by its officials."

The FAC alleges a regulatory takings claim under the Fifth Amendment, claims for violation of procedural and substantive due process, and a *Monell* claim that were not alleged in the Complaint. Because Defendants' motion for summary judgment was filed before the FAC was allowed to be filed, Defendants' motion for summary judgment does not specifically address these claims.

B.   <u>MOTION TO DISMISS</u>.

1.   <u>GOVERNING STANDARDS</u>.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001). "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.,* 523 F.3d 934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007). "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atlantic*, *id.* at 1964-1965.   Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).   Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984).   In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).   However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.   *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).

Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint.   *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)   When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.   *Parrino v. FHP, Inc.*, 146

1   F.3d 699, 705-706 (9th Cir.1988).

2          2.   **FIFTH AMENDMENT CLAIM**.

3          Defendants move to dismiss Plaintiff's claim under the Fifth

4   Amendment on the ground that there are no allegations that

5   Plaintiff's land has "absolutely no productive or economically

6   beneficial use"; the claim is not ripe for adjudication; and

7   Plaintiff has filed to plead an unconstitutional delay.

8               a.   Productive or Economically Beneficial Use.

9          In *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003,

10  1019 (1992), the Supreme Court held that "when the owner of real

11  property has been called upon to sacrifice *all* economically

12  beneficial uses in the name of the common good, that is, to leave

13  his property economically idle, he has suffered a taking."

14  Defendants argue that, just because Plaintiff is not able to open

15  a recycling business on his property does not mean that the land

16  has no productive use.   Therefore, Plaintiff has not stated a

17  claim upon which relief can be granted under the Fifth Amendment.

18         Plaintiff responds that Rule 8, Federal Rules of Civil

19  Procedure, requires nothing more than a short and plain statement

20  that establishes a right to relief above the speculative level.

21  Plaintiff argues:

22              Since the plaintiff does not even need to
                allege the various elements of a taking in
23              his complaint under federal procedural law,
                his complaint certainly cannot be subject to
24              dismissal for failing to allege one
                alternative element of a takings claim, i.e.,
25              lack of any other viable uses of the subject
                land.

26

                              10

1  Plaintiff, citing *Palazzalo v. Rhode Island*, 533 U.S. 606, 617

2  (2001), *Dolan v. City of Tigard*, 512 U.S. 374, 383-387 (1994),

3  and *Del Monte Dunes v. City of Monterey*, 95 F.3d 1422, 1429 (9th

4  Cir.1996), *aff'd*, 526 U.S. 687 (1999), further argues that "even

5  where some relatively minimal economic use of the land might

6  remain, a regulatory taking may nonetheless be found under a

7  three factor test: (1) the economic impact of the regulation; (2)

8  the extent of interference with legitimate investment backed

9  expectations; and (3) the character of the governmental action

10 involved."  Plaintiff asserts that the "defense argument thus

11 assumes the plaintiff is necessarily pursuing one of multiple

12 possible takings theories."

13      Defendants acknowledge the requirements of Rule 8, but argue

14 that, because of the pending motion for summary judgment,

15 Plaintiff should be required to do more than make an allegation.

16 Defendants assert:

17          This is especially true in this case because
            plaintiff's deposition testimony established
18          that a business called Asadio's Taco Truck
            operates on the subject property.  In
19          addition, there is an occupied four unit
            apartment complex and single family
20          residences on the property for which
            plaintiff charges and receives rent.
21          Plaintiff does not contend that the economic
            impact of requiring annexation has taken or
22          damaged these pre-existing uses or that he
            had made any investment other than the
23          installment purchase of the land.  This is
            especially important given the public
24          interest in assuring the fringe area
            developments meet required building codes and
25          pay their fair share for services.
            Therefore, whether analyzed under *Lucas v.*
26          *South Carolina Coastal Council* ... or the

11

1
2
3

> three-part test mentioned in *Palazzalo,*
> plaintiff's Fifth Amendment takings claim
> must be dismissed since he clearly has not
> been deprived of all economically beneficial
> uses of his land.

4   The standards governing pleading requirements and resolution

5  of a motion to dismiss are clear.  Although the dilatoriness of

6  Plaintiff's counsel caused this procedural morass, Plaintiff was

7  allowed by Court Order to file the FAC after the motion for

8  summary judgment.  The Court cannot, under the law, dismiss this

9  cause of action on the ground asserted by Defendant, which, in

10  any case, raise questions of fact.

11   The motion to dismiss on this ground is DENIED.

12              b.   Ripeness.

13   In *Kinzi v. City of Santa Cruz*, 818 F.2d 1449, 1453-1454

14  (9th Cir.), *amended*, 830 F.2d 968 (9th Cir.1987), *cert. denied*,

15  484 U.S. 1043 (1988), the Ninth Circuit, citing *MacDonald, Sommer*

16  *& Frates v. Yolo County*, 477 U.S. 340 (1986), and *Williamson*

17  *County Regional Planning Commission v. Hamilton Bank*, 473 U.S.

18  172 (1985), explained:

19
20
21
22

> Recently, in *MacDonald*, the Supreme Court
> explained that to assert a regulatory takings
> claim, a plaintiff must establish its two
> components: (1) that the regulation has gone
> so far that it has 'taken' plaintiff's
> property, and (2) that any compensation
> tendered is not 'just.' ....

23
24

> To establish this first component of a
> regulatory takings claim, 'an essential
> prerequisite' must be present: there must be

25
26

> a final and authoritative
> determination of the type and
> intensity of development legally

12

1          permitted on the subject property.
           A court cannot determine whether a
2          regulation has gone 'too far'
           unless it knows how far the
3          regulation goes.

4          ... This 'final and authoritative
           determination' must expose 'the nature and
5          extent of permitted development.' ....

6          The Supreme Court has expounded the
           requirements for a 'final and authoritative
7          determination.'  In *Hamilton Bank*, the
           Supreme Court not only set forth the
8          requirement that the plaintiff must first
           have submitted a development plan which was
9          rejected, but also explained that the
           plaintiff must seek variances which would
10         permit uses not allowed under the regulations
           ... Therefore, the 'final decision' which
11         inflicts a concrete injury on the plaintiff
           and is ripe for adjudication as a claim of
12         regulatory taking, even if the claim is
           brought under 42 U.S.C. § 1983, requires at
13         least two decisions against the Kinzlis: (1)
           a rejected development plan, and (2) a denial
14         of a variance ... The Kinzlis have not
           secured or even attempted to secure either of
15         these two requisite decisions.

16    Defendants, referring to paragraph 16 of the FAC, contend

17 that Plaintiff admits that he did not appeal the denial of his

18 application nor did he seek any type of variance.  Defendants

19 argue that, as a matter of law, Plaintiff is not entitled to

20 maintain a Fifth Amendment takings claim.

21    Plaintiff responds that dismissal on this ground is improper

22 because the FAC alleges facts in paragraphs 16-17 suggesting that

23 further appeal or seeking annexation to the City of Hanford would

24 have been futile.  Plaintiff cites, *inter alia*, *Herrington v.*

25 *Sonoma County*, 834 F.2d 1488, 1496-1497 (9th Cir. 1987):

26         The Herringtons did not apply for a variance.

13

Nevertheless, the second *Kinzli* factor -
application for a variance - need not be met
in this case because the testimony at trial
states that the *only* means of obtaining
approval of the 320-lot proposal after the
inconsistency determination was through a
General Plan amendment.  This testimony finds
support in Cal.Govt. Code § 66474(a) ...,
which *requires* a county to reject a
development proposal which is inconsistent
with the general plan.  Thus, section
66474(a) would appear to prohibit variances
for inconsistent developments.  Application
for a variance was not an option for the
Herringtons.

In sum, we hold that the Herringtons have
satisfied the 'final decision' ripeness
requirement enunciated in *Kinzli*.  The
Herringtons' 32-lot development proposal was
conclusively rejected by the County.  Efforts
to complete the development application, and
application for a variance, would have been
futile.  In so holding, we emphasize that
mere allegations by a property owner that it
has done everything possible to obtain
acceptance of a development proposal will not
suffice to prove futility ... Our holding is
based upon repeated and uncontradicted
testimony by County officials that the
Herringtons' 32-lot proposal could not have
obtained approval.

*See also Palazzolo v. Rhode Island*, *supra*, 533 U.S. at 622:

In assessing the significance of petitioner's
failure to submit applications to develop the
upland area it is important to bear in mind
the purpose that the final decision
requirement serves.  Our ripeness
jurisprudence imposes obligations on
landowners because '[a] court cannot
determine whether a regulation goes "too far"
unless it knows how far the regulation goes.'
... Ripeness doctrine does not require a
landowner to submit applications for their
own sake.  Petitioner is required to explore
development opportunities on his upland
parcel only if there is uncertainty as to the
land's permitted use.

14

Plaintiff argues that his takings claim is based in part on the allegedly improper passage of the regulation itself. Plaintiff contends that "[a] takings or procedural due process claim based on the improper passage of a zoning regulation without appropriate notice is ripe for adjudication without further administrative appeal."

Plaintiff cites *Seguin v. City of Sterling Heights*, 968 F.2d 584, 587-588 (9th Cir.1992).

*Seguin* does not support Plaintiff's contention.  In the section of the *Seguin* opinion discussing the plaintiff's Fifth Amendment takings claim, the Ninth Circuit did not even remotely hold as Plaintiff Ruff contends; in fact, the Ninth Circuit held that "*Macene* and *Williamson* demonstrate that plaintiffs' fifth amendment taking claim is not ripe in the present case, and that they are precluded from pursuing their claim in federal court." 968 F.2d at 588.  *Seguin* holds that in the context of the plaintiffs' procedural due process claim that they should have received personal notice of the zoning ordinance, "this is the type of injury that is instantly cognizable in federal court, regardless of whether the city has reached a final decision on the merits of their claim."  *Id.* at 589.  Here, Defendants are moving to dismiss Plaintiff's Fifth Amendment takings claim, not his procedural due process claim.

Plaintiff also cites *Hoehne v. County of San Benito*, 870 F.2d 529, 533-534 (9th Cir.1989).  In *Hoehne*, a property owner had made an application to divide a 60-acre parcel of land into

15

four lots, with one home to be placed on each.  The local board
of supervisors denied the subdivision request, and immediately
rezoned the property to a zone having a minimum lot size of 40
acres.  The Ninth Circuit held:

> It would have been futile for the Hoehnes to
> seek a zoning variance to accommodate their
> application because the supervisors, by
> legislative act, changed the zoning
> designation from a minimum lot size of five
> acres to one of forty acres ....
>
> It would have also been futile for the
> Hoehnes to seek a conditional use permit or a
> more favorable rezoning because in actually
> rezoning the tract to further restrict
> development, the supervisors themselves sent
> a clear and, we believe, final signal
> announcing their views as to the acceptable
> use of the property.  Finally, it would have
> been futile for the Hoehnes to seek a General
> Plan amendment in their favor, because the
> supervisors had amended the General Plan in a
> manner clearly and unambiguously adverse to
> the application of the landowners.

870 F.2d at 534-535.

Finally, Plaintiff argues, no appeal needs to be made to
governmental entities other than the one responsible for the
regulatory taking.  Plaintiff cites *Palazzolo v. Rhode Island*,
*supra*, 533 U.S. at 622.  Plaintiff asserts that "there is no
basis for finding plaintiff's claim unripe for failing to request
annexation to the City of Hanford, a distinct governmental
entity."

No reference has been found in *Palazzolo* supporting the
Plaintiff's contention.

Defendants' reply that Plaintiff's arguments that dismissal

16

of the Fifth Amendment takings claim for lack of ripeness should be denied on the ground of futility are without merit.

First, Defendants argue, because Plaintiff withdrew his permit application and obtained a refund of the filing fee, Plaintiff "should be equitably estopped from coming into federal court claiming futility especially since federal courts traditionally abstain from deciding local land use matters."

Second, Defendants argue that, even if Plaintiff meets the threshold requirement for pleading futility, because of the pending motion for summary judgment, Plaintiff must offer more than a hearsay statement allegedly made by City of Hanford employee Stowe:

> Plaintiff must at least have tried to comply with the annexation requirement. As noted in *Palazzolo* at pg. 622, plaintiff is required to explore development opportunities on his property if there is uncertainty as to the land's permitted use. Plaintiff did not ask Mr. Stowe if the City of Hanford would object to a recycling plant on the subject property if he did not seek annexation. (Ratliff Decl., Exhibit M, pg. 44:12-25). As established by the Zumwalt declaration, if annexation was not feasible all plaintiff would have to do to begin establishing a recycling business is bring his property up to the standards required by the City of Hanford. (Zumwalt Decl., para. 4).
>
> In the present case, a recycling business was the only use for which plaintiff sought approval and that application was withdrawn. Not a scintilla of evidence has been alleged or offered to show that the recycling center would not have been approved if the subject property met the development standards required by the City of Hanford. Further, plaintiff has made no effort to demonstrate that all or almost all development projects

would not have been approved.  Nor is there
any evidence to suggest that there was any
economic impact on pre-existing uses of
property.  And, plaintiff cannot show that he
used and was denied just compensation under
the inverse condemnation procedures allowed
by California Civil Code Section 1245.260
[sic].  *Williamson* at pg. 195.

Defendants move to dismiss the Fifth Amendment takings claim for failure to state a claim under Rule 12(b)(6).  In fairness to Defendants, Mr. Little's dilatoriness in prosecuting this action caused the motion for summary judgment to be filed before Plaintiff filed the First Amended Complaint.  Nonetheless, because Defendants did not and have not moved for summary judgment in connection with Plaintiff's Fifth Amendment takings claim, the Court cannot dismiss this claim based on underlying facts with respect to which Defendants did not move for summary judgment.

The Supreme Court held in *Williamson*: "[B]ecause the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action here is not 'complete' until the State fails to provide adequate compensation for the taking."  473 U.S. at 195.  In *United States v. Clarke*, 445 U.S. 253, 257 (1980), the Supreme Court explained that inverse condemnation is "a shorthand description of the manner in which a landowner receives just compensation for a taking of his property when condemnation proceedings have not been instituted."  In *Cassettari v. Nevada County, Cal.*, 824 F.2d

18

735, 738 (9th Cir.1987), the Ninth Circuit held:

> California law permits a property owner to
> bring an inverse condemnation action to
> obtain just compensation for an alleged
> taking of property.  *See* Cal.Code Civ.P. §
> 1245.260 ... If the County did indeed take
> these property interests from Cassettari
> without payment, just compensation can be
> obtained by using California's inverse
> condemnation procedures.  Thus, an adequate
> state compensation procedure is available to
> Cassettari.  Until Cassettari uses this
> procedure, his taking claim is premature.

*See also Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344
F.3d 959, 965-966 (9th Cir.2003), *cert. denied*, 542 U.S. 904
(2004):

> 'Under our precedents, a facial takings claim
> alleging the denial of the economically
> viable use of one's property is unripe until
> the owner has sought, and been denied, just
> compensation by the state.'  *San Remo Hotel
> v. City and County of San Francisco*, 145 F.3d
> 1095, 1101 (9th Cir.1998).  This
> jurisdictional predicate is grounded in the
> text of the Fifth Amendment and in the
> Supreme Court's admonition that 'no
> constitutional violation occurs until just
> compensation has been denied.'  *Williamson
> County Reg'l Planning Comm'n v. Hamilton
> Bank*, 473 U.S. 172, 194 n.13 ... (1985).  As
> the district court correctly pointed out,
> nowhere in its pleading does the Association
> aver that it has pursued state administrative
> or judicial remedies to seek just
> compensation.  Accordingly, the takings
> claim, insofar as it alleges denial of
> economically viable use, is unripe for
> review.

Defendants raised this contention for the first time in
their reply brief.  Courts generally decline to consider
arguments raised for the first time in a reply brief.  *See United
States v. Bohn*, 956 F.2d 208, 209 (9th Cir.1992); *United States*

19

1  *v. Boyce*, 148 F.Supp.2d 1069, 1085 (S.D.Cal.2001).  However, this

2  is a ripeness issue going to jurisdiction, which can be raised at

3  any time.

4  　　　Defendants' motion to dismiss the Fifth Amendment takings

5  claim on the ground of ripeness is GRANTED WITH LEAVE TO AMEND.

6  　　　　　　　　c.   <u>Unconstitutional Delay</u>.

7  　　　Defendants contend that Plaintiff's Fifth Amendment takings

8  claim should be dismissed to the extent that it is based on the

9  alleged delay in processing his application.  Defendants cite

10  *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 803

11  (Fed.Cir.1993):

12  　　　　　　While *Danforth* and *Agins* leave open the
　　　　　　possibility that a taking may occur by reason

13  　　　　　　of 'extraordinary delay' in governmental
　　　　　　decisionmaking, nothing in case law suggests

14  　　　　　　that unreasonable delay converts the first
　　　　　　preliminary act into the date of the taking

15  　　　　　　....

16  See also *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1233

17  (9th Cir.1994):

18  　　　　　　We have stated that for a delay to be
　　　　　　excessive, it must be substantial, 'since the

19  　　　　　　Supreme Court has held a claim to be unripe
　　　　　　even where the application process covering a

20  　　　　　　development project required approximately
　　　　　　eight years.'

21

22  　　　Plaintiff argues that his takings claim rests on delay in

23  accepting his application "for the purpose of enabling a

24  predatory intervening plan amendment."  Plaintiff contends that

25  the type of delay he has alleged is distinct from cases relied on

26  by Defendants discussing delay in completing the application

process.

However, the cases cited by Plaintiff do not address a Fifth Amendment takings claim.   Rather, they analyze First Amendment, denial of equal protection, denial of due process claims, Fair Housing Act violations.  *See Hampton Bays Connections, Inc. v. Duffy*, 127 F.Supp.2d 364 (E.D.N.Y.2001); *Castle Hills First Baptist Church v. City of Castle Hills,* 2004 WL 546792 (W.D.Tex.2004); *Summerchase Ltd. Partnership I. v. City of Gonzales*, 970 F.Supp. 522, 527 (M.D.La.1997); *Valley Outdoor, Inc. v. City of Riverside*, 446 F.3d 948 (9th Cir.2006); *Resolution Trust Corp. v. Town of Highland Beach*, 18 F.3d 1536 (11th Cir.1994).

In their reply brief, Defendants assert that Plaintiff's claim in the FAC and his opposition contradict his previous deposition testimony.  Further, Defendants argue, Plaintiff has no evidence to support his contention that the acceptance of his application was intentionally delayed in order to allow amendment of the General Plan:

> Even assuming plaintiff had submitted an application the same day he acquired the property, any claim based on delay would have to be denied.  Plaintiff admitted during deposition that Sherman said he could not submit a site plan application because he only owned 40% of the property.  The Assessor's office also told him that installment purchases of real property are not recorded as having conveyed full title.  (Ratliff Declaration, Exhibit 'M', pg. 34:13-35:22).  Plaintiff has no evidence tending to show Sherman's alleged delay in accepting the zoning permit application was motivated by anything other than the requirement that the

1
2
3
4
5
6

> zoning permit application show the signature
> of the owner, and plaintiff was not the legal
> owner. (Ratliff Decl., Exhibit 'N', p.2:21).
> Further, at most only seven months elapsed
> between acquisition of the property in
> December of 2003 and the time Sherman
> accepted plaintiff's Zoning Permit
> Application under protest in July of 2004
> which is well within constitutional limits
> ....

Plaintiff's failure to cite any cases involving a Fifth Amendment takings claim based on a theory that a governmental entity intentionally delayed in accepting an application so that an adverse zoning amendment could be implemented is telling. All of the cases cited by Plaintiff involve due process or equal protection claims, both of which are alleged in the FAC. Plaintiff cannot base his Fifth Amendment takings claim solely on the ground that Defendants delayed in accepting his application to gain time to amend the General Plan.

Defendants' motion to dismiss the Fifth Amendment takings claim to the extent that it is based on the alleged delay in processing his application is GRANTED.

3.   SUBSTANTIVE DUE PROCESS.

Defendants move to dismiss the substantive due process claim alleged in the FAC.

a.   Preempted by Takings Clause.

Defendants, citing *Patel v. Penman*, 103 F.3d 868, 873-875 (9th Cir.1996), *cert. denied*, 520 U.S. 1240 (1997), which in turn cites *Armendariz v. Penman*, 75 F.3d 1311, 1324 (9th Cir.1996), argue that Plaintiff's substantive due process claim is preempted

22

by the Fifth Amendment's takings clause.

Plaintiff opposes this ground for dismissal, contending that *Patel v. Penman* is no longer good law.   Plaintiff cites *Crown Point Development, Inc. v. City of Sun Valley*, 506 F.3d 851 (9ᵗʰ Cir.2007).

In *Crown Point Development*, the Ninth Circuit recognized that its precedent held that a regulation that does not "substantially advance legitimate state interests" was a taking under *Agins v. City of Tiburon*, 447 U.S. 255 (1980), and, if a taking, the Fifth Amendment taking clause is the specific textual source of protection against such conduct.   The Ninth Circuit held:

> However, this understanding of the *Agins* 'substantially advances' language - i.e., that it is a 'stand-alone regulatory takings test' - was rejected by the Supreme Court in *Lingle* [*v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005)].  The Court concluded 'that this formula proscribes an inquiry in the nature of a due process, not a takings, test, and that it has no proper place in our takings jurisprudence.'  *Id.* [at 540].  As the Court explained, the 'substantially advances' test 'does not help to identify those regulations whose effects are functionally comparable to governmental appropriation or invasion of private property; it is tethered neither to the text of the Takings Clause nor to the basic justification for allowing regulatory actions to be challenged under the Clause.' *Id.* at 542 ....
>
> In this, *Lingle* pulls the rug out from under our rationale for totally precluding substantive due process claims based on arbitrary or unreasonable conduct.  As the Court made clear, there is no specific textual source in the Fifth Amendment for protecting a property owner from conduct that

> furthers no legitimate governmental purpose.
> Thus, the *Graham* rationale no longer applies
> to claims that a municipality's actions were
> arbitrary and unreasonable, lacking any
> substantial relation to the public health,
> safety, or general welfare.

506 F.3d at 854-855.   *See also Equity Lifestyle Properties, Inc.*

*v. County of San Luis Obispo,* 505 F.3d 860, 870 n.16 (9th

Cir.2007):

> The parties dispute whether takings
> jurisprudence governs this challenge, or
> whether its merits turn only upon our due
> process doctrine.   The Supreme Court's
> decision in *Lingle v. Chevron U.S.A., Inc.*,
> 544 U.S. 528, 537 ..., answers this question:
> '[The Takings Clause] "is designed not to
> limit the governmental interference with
> property rights *per se*, but rather to secure
> *compensation* in the event of otherwise proper
> interference ...."' Due process violations
> cannot be remedied under the Takings Clause,
> because 'if a government action is found to
> be impermissible - for instance because it
> fails to meet the "public use" requirement or
> is so arbitrary as to violate due process -
> that is the end of the inquiry.   No amount of
> compensation can authorize such action.'   *Id.*
> at 543 ....

Because the FAC alleges that the actions taken against him

were not in the public interest and were without any

justification, these allegations for violation of substantive due

process are not preempted by the Takings Clause.   Defendants'

motion to dismiss on this ground is DENIED.

          b.   <u>No Evidence of Substantive Due Process

Violation</u>.

Here, Defendants seek dismissal for failure to state a claim

based on the evidence submitted in support of their motion for

summary judgment:

> In this case, the undisputed material facts set forth in Defendants' motion for summary judgment demonstrate that GPA 3-01 was modified to require that commercial and industrial developments with [sic] the sphere of influence of cities either annex to the city or develop to city improvement standards.  See, *Defs. UMF Nos. 1-5*.  As noted above, GPA 3-01 clearly serves legitimate public interest by, among other things, making sure fringe area development meets current building codes and assuring that industrial and commercial projects pay their fair share for City services.  Therefore, it is abundantly clear that a substantive due process claim is not supported by the evidence, and the instant motion should be granted.

Plaintiff does not respond to this aspect of the motion to dismiss.  Rather, in the section of his memorandum of points and authorities in opposition to Defendants' motion for summary judgment, Plaintiff contends that the FAC and Plaintiff's evidence suffice to state a claim for violation of substantive due process.

In *Lingle v. Chevron U.S.A., Inc.*, *supra*, 544 U.S. at 542, the Supreme Court held that an arbitrary and irrational deprivation of real property, although it would no longer constitute a taking, might be "so arbitrary or irrational that it runs afoul of the [substantive] Due Process Clause."  In *Action Apartment Ass'n v. Santa Monica Rent Control Bd.,* 509 F.3d 1020, 1026 (9th Cir.2007), the Ninth Circuit held:

> We see no difficulty in recognizing the alleged deprivation of rights in real property as a proper subject of substantive due process analysis.  We have long held that

25

a substantive due process claim 'must, as a threshold matter, show a government deprivation of life, liberty, or property.' *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir.1998).  In *Squaw Valley*, we specifically reaffirmed the principle that landowners have 'a constitutionally protected property interest' in their 'right to devote [their] land to any legitimate use.'  375 F.3d at 949 ... An arbitrary deprivation of that right, thus, may give rise to a viable substantive due process claim in any case in which the Takings Clause does not provide a preclusive cause of action.

The FAC alleges that the amendment of the general plan was not in the public interest and was arbitrarily and irrationally enacted to prevent Plaintiff from developing a recycling center because of his race.  These allegations suffice to state a claim upon which relief can be granted as none of the alleged purposes for the legislation were for a valid purpose.  Factual disputes preclude summary judgment for Defendants on the claimed violation of substantive due process.

Defendants' motion to dismiss and motion for summary judgment are DENIED with respect to Plaintiff's alleged violation of substantive due process.

4.  <u>PROCEDURAL DUE PROCESS AND EQUAL PROTECTION CLAIMS</u>.

Although Defendants move to dismiss these claims pursuant to Rule 12(b)(6), Defendants specifically refer to the facts posited by them in support of their motion for summary judgment.  The viability of these claims will be discussed in the section of this Memorandum Decision dealing with Defendants' motion for summary judgment.  *See discussion infra*.

1  Defendants' motion to dismiss Plaintiff's procedural due

2  process and equal protection claims is DENIED.

3       5.  *Monell* Liability.

4       Paragraph 4 of the FAC alleges that Kings County "is liable

5  as set forth herein under federal law based upon its

6  unconstitutional customs and policies, which will be specified at

7  a later point in this proceeding."[2]

8       Defendants move to dismiss the claim in the FAC on the

9  ground that *Monell* liability may not be imposed absent an

10 underlying violation of the Plaintiff's rights that is related to

11 the official policy or custom in question.  *See City of Los*

12 *Angeles v. Heller*, 475 U.S. 796, 799 (1986)("If a person has

13 suffered no constitutional injury at the hands of the individual

14 police officer, the fact that the departmental regulations might

15 have *authorized* the use of constitutionally excessive force is

16 quite beside the point.").  Contending that none of Plaintiff's

17 constitutional claims have merit, Defendants assert that

18 Plaintiff's *Monell* claim must be dismissed.

19      Because Defendants' motion to dismiss is denied on various

20 grounds, Defendants' motion to dismiss Plaintiff's *Monell* claim

21 is DENIED.

22  _____

23      [2]It is well established in the Ninth Circuit that an
   allegation based on nothing more than a bare averment that the
24 official's conduct conformed to official policy, custom or practice
   suffices to state a *Monell* claim under Section 1983.  *See Karim*
25 *Panahi v. L.A. Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988);
   *Shah v. County of L.A.*, 797 F.2d 743, 747 (9th Cir. 1986); *Guillory*
26 *v. County of Orange*, 731 F.2d 1379, 1382 (9th Cir. 1984).

6.   <u>ANTITRUST CLAIM</u>.

Defendants move to dismiss Plaintiff's antitrust claim.

In *Parker v. Brown*, 317 U.S. 341, 352 (1943), the Supreme Court held that Congress did not intend federal antitrust laws to apply to the acts of States as "sovereigns."  In *Community Communications, Inc. v. Boulder*, 455 U.S. 40, 51 (1982), the Supreme Court held that municipal acts are exempt from federal antitrust standards only when they are done pursuant to a "clearly articulated and affirmatively expressed" state policy. As explained in *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 890 (9th Cir.1988):

> The basis of the state action exception is that the free market principles embodied by the Sherman Antitrust Act must give way to the countervailing principles rooted in federalism and state sovereignty that states must be free to act upon local concerns, even if these actions have anticompetitive results ... This exception was later expanded to protect municipalities in *Community Communications Co. v. City of Boulder* ... The Court ruled in *Boulder* that anticompetitive acts of a municipality that would normally give rise to liability under the Sherman Act are shielded if the municipality acted pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition with regulation ... Pursuant to this test, we must undertake a two-part inquiry to determine whether state action immunity applies.  We must first determine whether the California legislature authorized the challenged actions of the city and the agency.  Then we must determine whether the legislature intended to displace competition with regulation.  Both elements are prerequisites to proper application of the state action exception to municipal action.

28

Plaintiff cites *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105-106 (1980), for the proposition that the test is two-part: (1) the challenged action must be "one clearly articulated and affirmatively expressed as state policy," and (2) "the policy must be actively supervised by the state itself."

However, in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 47 (1985), the Supreme Court held that "active state supervision is not a prerequisite to exemption from the antitrust laws where the actor is a municipality rather than a private party."  The Supreme Court explained:

> [T]he requirement of active state supervision serves essentially an evidentiary function: it is one way of ensuring that the actor is engaging in the challenged conduct pursuant to state policy.  In *Midcal*, we stated that the active state supervision requirement was necessary to prevent a State from circumventing the Sherman Act's proscriptions 'by casting ... a gauzy cloak of state involvement over what is essentially a private price-fixing arrangement.' ... Where a private party is engaging in the anticompetitive activity, there is a real danger that he is acting to further his own interests, rather than the governmental interests of the State.  Where the actor is a municipality, there is little or no danger that it is involved in a *private* price-fixing arrangement.  The only real danger is that it will seek to further purely parochial public interests at the expense of more overriding state goals.  This danger is minimal, however, because of the requirement that the municipality act pursuant to a clearly articulated state policy.  Once it is clear that state authorization exists, there is no need to require the State to supervise actively the municipality's execution of what is a properly delegated function.

*Id.* at 46-47.

Plaintiff, relying on *Midcal*, argued:

> In contending that Kings County's actions
> pass this test, the defendants misconstrue
> the First Amended Complaint to contend that
> the anticompetitive action here was the mere
> enactment of a land use regulation, which the
> plaintiff would concede, if standing alone,
> is an act to which state antitrust immunity
> would apply.  However, in this case, the
> anticompetitive acts committed by Kings
> County included its preventing plaintiff from
> even submitting an application to develop a
> recycling center on the subject property ...
> Even if such a ministerial act is
> tangentially related to the state law zoning
> framework sufficient to satisfy the first of
> the Midcal elements, it certainly is not an
> aspect that is actively regulated by the
> State of California, or even regulated at
> all.

The parties were ordered to address the effect of *Town of Hallie* on Plaintiff's opposition to the motion to dismiss the antitrust claim in the FAC at the August 4, 2008 hearing.  At the hearing, Plaintiff contended that "the second prong basically just collapses into the first and basically becomes an evidentiary requirement to show actual supervision is a way of showing whether or not the state policy is clearly articulated or not."  Plaintiff argued that actual supervision is not completely irrelevant even for municipalities:

> [O]ne example of that is whether, whereas
> here the state acts not pursuant to but,
> rather, in violation of state law, that
> certainly is one way of showing whether or
> not a municipality complies with the *Midcal*
> test.

Plaintiff cites no authority supporting his contention that

the "active supervision" component of the *Midcal* test has any application to the acts of a municipality.  In the absence of such authority, Defendants' motion to dismiss will be analyzed under the test set forth in *Town of Hallie* and *Boone*.

At the hearing, Plaintiff argued that the antitrust exception for municipalities articulated by the Supreme Court does not apply to government officials.

Plaintiff's contention is without merit.  In *Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991), the Supreme Court rejected the argument that *Parker v. Brown* antitrust immunity fails whenever the nature of the regulation is substantively or procedurally defective.  499 U.S. at 371-372.  In addition, the Supreme Court rejected any conspiracy exception to the *Parker v. Brown* antitrust immunity.  *Id.* at 374-379.  *See also Traweek v. City and County of San Francisco*, 920 F.2d 589, 592 (9th Cir.1990)("[S]ubjective motivation plays no part *at any point* in determining whether state action immunity protects the conduct of municipalities.").  Further, the Local Government Antitrust Act of 1984 ("LGAA"), 15 U.S.C. §§ 34-36, provides in Section 35(a) that "[n]o damages, interest on damages, costs, or attorney's fees may be recovered under section 4, 4A, or 4C of the Clayton Act (15 U.S.C. 15, 15a, or 15c) from any local government, or official or employee thereof acting in an official capacity."  Section 36(a) provides that "[n]o damages, interest on damages, costs or attorney's fees may be recovered under section 4, 4A, or 4C of the Clayton Act (15 U.S.C. 15, 15a, or

15c) in any claim against a person based on any official action directed by a local government, or official or employee thereof acting in an official capacity."[3]   The provisions of the Clayton Act cited by the LGAA provide the private damages remedy for violation of the Sherman Act.  *Crosby v. Hosp. Auth.*, 93 F.3d 1515, 1536 (11th Cir.1996).  As explained in *GF Gaming Corp. v. City of Black Hawk, Colo.*, 405 F.3d 876, 885 (10th Cir.2005):

> The legislative history of the LGAA ... demonstrates that Congress intended the phrase 'acting in an official capacity' to be given broad meaning encompassing all 'lawful actions, undertaken in the course of a defendant's performance of his duties, that reasonably can be construed to be within the scope of his duties and consistent with the general responsibilities and objectives of his position."  *Sandcrest Outpatient Svcs., P.A. v. Cumberland County Hosp. Svcs., Inc.*, 853 F.2d 1139, 1145 (4th Cir.1988).  In this case, plaintiffs do not allege that the city officials lacked the authority to cause the city of Black Hawk to sell the undivided interests in the mining claims or to withhold Winn's certificate of occupancy.  Their only contention is that in exercising these legitimate powers the city officials acted pursuant to an illegitimate motive.  The LGAA, however, 'makes no provision for consideration of a defendant's motives.'  *Id.* at 1146 (rejecting the 'argument that allegations of a conspiracy convert otherwise authorized conduct into unauthorized conduct'); *see also Cohn v. Bond*, 953 F.2d 154, 159 (4th Cir.1991)('An allegation of conspiracy is akin to an allegation that [defendants' conduct] was done in bad faith

---

[3]Although the Local Government Antitrust Act does not bar injunctive or declaratory relief, *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1477 (10th Cir.1990), the FAC does not seek injunctive or declaratory relief in connection with the Third Cause of Action.

1
2
3

> or with malice,' which is 'clearly irrelevant
> in determining the application of the
> immunity.' ...)); *Thatcher Enters. v. Cache*
> *County Corp.*, 902 F.2d 1472, 1477 (10th
> Cir.1990).

Defendants argue that dismissal of the Third Cause of Action is required because they are entitled to antitrust immunity under the Ninth Circuit's two-part test to determine whether a clearly articulated state policy authorized the County's anticompetitive actions. *Traweek*, *supra*, 920 F.2d at 591. The Court must first determine whether the legislature authorized the County's challenged action and, second, the Court must determine whether the legislature intended to displace competition with regulation. *Id.* at 591-592.

California's legislature has provided a comprehensive scheme for land use planning, zoning and annexation. California Government Code §§ 65300 *et seq.* provides authority for and scope of general plans; Government Code §§ 65450 *et seq.* authorize adoption of specific plans to implement general plans; Government Code §§ 65750 *et seq.* authorizes actions or proceedings to challenge general plans; Government Code §§ 65800 *et seq.* authorize the adoption and administration of zoning laws, ordinances, and rules and regulations; and Government Code §§ 65940 *et seq.* authorize applications for development projects. These statutes authorize the County's challenged action.

The California legislature intended to displace competition with regulation. "The Supreme Court has made clear that an in-depth substantive review of a statute to determine the

33

legislature's intent is not appropriate."  *Traweek*, *supra*, 920 F.2d at 593, citing *Town of Hallie*, *supra*, 471 U.S. at 41-42.

In *Traweek*, the owners of an apartment complex sued the city and county and government officials, challenging an ordinance restricting conversion of apartment units to condominiums.  The Ninth Circuit held:

> The legislature is deemed to have intended anticompetitive conduct as long as it may foreseeably result from a broad authority to regulate. [*Town of Hallie*], *Id.* at 42-43 ... (finding legislative intent from state's specific authorization to cities to provide sewage services and its delegation to cities of express authority to take action which could foreseeably result in anticompetitive conduct); *see also Southern Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 64-65 ... (finding that state's failure to describe the implementation of its policy in detail will not defeat protection of the state action doctrine if legislature's intent to establish an anticompetitive regulatory program is clear).  Under this non-substantive review of the statutory scheme, the only instance in which the Court will apparently deny a finding of legislative intent to sanction the alleged anticompetitive conduct is where the state has given the municipality an exceedingly broad and unspecific grant of power.  *See, e.g., Boulder*, 455 U.S. at 54-56 ... (holding that a grant of home rule authority to the city was not specific enough to warrant state action immunity).  The Court's rejection of substantive review of state statutes is wholly consistent with the policies of federalism and state sovereignty upon which the state action doctrine is based.  Once the state decides to delegate its regulatory authority to a city, that city enjoys the same immunity from federal antitrust law that the state would have enjoyed.
>
> The relevant portions of the California Government Code § 65300 et seq. ... delegate

34

> to the City the power to adopt a
> comprehensive, long-term general plan for the
> physical development of the county or city,
> including waste disposal, conservation,
> analysis of housing needs and regulation of
> the housing market.  We find that this
> statute clearly delegates sufficient
> regulatory authority to the City to uphold
> state action immunity.  The legality of the
> 1983 Ordinance under California law is
> irrelevant for the purposes of this case.
> The relevant question is whether the *state*
> intended the authorizing statute to have
> anticompetitive effects.  Thus, what the *city*
> does to implement that statute, rightly or
> wrongly, reveals nothing about the state's
> intent.
>
> For the reasons stated above, we hold that
> appellee has immunity from appellant's
> antitrust claim.

*Id.* at 593.

Here the Court is alleged to have violated the law by maintaining a recycling center and operation.  Plaintiff refers to no authority that prevents a local government from operating a recycling center and related operations.  To the contrary, local governments are permitted by law to provide services for recycling and trash disposal.  Controlling Supreme Court and Ninth Circuit authority establish as a matter of law that Defendants are entitled to immunity from antitrust liability alleged in the Third Cause of Action.

The Third Cause of Action of the FAC is DISMISSED WITH PREJUDICE.

C.   <u>MOTION FOR SUMMARY JUDGMENT</u>.

Defendants' motion for summary judgment was filed before the FAC was filed.

1.   <u>GOVERNING STANDARDS</u>.

Summary judgment is proper when it is shown that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  A fact is "material" if it is relevant to an element of a claim or a defense, the existence of which may affect the outcome of the suit.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  Materiality is determined by the substantive law governing a claim or a defense.  *Id*.  The evidence and all inferences drawn from it must be construed in the light most favorable to the nonmoving party.  *Id*.

The initial burden in a motion for summary judgment is on the moving party.  The moving party satisfies this initial burden by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party to defeat summary judgment.  *T.W. Elec.*, 809 F.2d at 630.  The nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment," but must set forth by affidavit or other appropriate evidence "specific facts showing there is a genuine issue for trial."  *Id*.  The nonmoving party may not simply state that it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint."  *Id*.  The

question to be resolved is not whether the "evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir.1995).  This requires more than the "mere existence of a scintilla of evidence in support of the plaintiff's position"; there must be "evidence on which the jury could reasonably find for the plaintiff." *Id*.  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment." *Id*.  As explained in *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099 (9th Cir.2000):

> The vocabulary used for discussing summary judgments is somewhat abstract.  Because either a plaintiff or a defendant can move for summary judgment, we customarily refer to the moving and nonmoving party rather than to plaintiff and defendant.  Further, because either plaintiff or defendant can have the ultimate burden of persuasion at trial, we refer to the party with and without the ultimate burden of persuasion at trial rather than to plaintiff and defendant.  Finally, we distinguish among the initial burden of production and two kinds of ultimate burdens of persuasion: The initial burden of production refers to the burden of producing evidence, or showing the absence of evidence, on the motion for summary judgment; the ultimate burden of persuasion can refer either to the burden of persuasion on the motion or to the burden of persuasion at trial.

> A moving party without the ultimate burden of persuasion at trial - usually, but not always, a defendant - has both the initial burden of production and the ultimate burden of persuasion on a motion for summary

> **judgment ... In order to carry its burden of
> production, the moving party must either
> produce evidence negating an essential
> element of the nonmoving party's claim or
> defense or show that the nonmoving party does
> not have enough evidence of an essential
> element to carry its ultimate burden of
> persuasion at trial ... In order to carry its
> ultimate burden of persuasion on the motion,
> the moving party must persuade the court that
> there is no genuine issue of material fact
> ....**
>
> **If a moving party fails to carry its initial
> burden of production, the nonmoving party has
> no obligation to produce anything, even if
> the nonmoving party would have the ultimate
> burden of persuasion at trial ... In such a
> case, the nonmoving party may defeat the
> motion for summary judgment without producing
> anything ... If, however, a moving party
> carries its burden of production, the
> nonmoving party must produce evidence to
> support its claim or defense ... If the
> nonmoving party fails to produce enough
> evidence to create a genuine issue of
> material fact, the moving party wins the
> motion for summary judgment ... But if the
> nonmoving party produces enough evidence to
> create a genuine issue of material fact, the
> nonmoving party defeats the motion.**

**210 F.3d at 1102-1103.**

       **2.   FACTUAL BACKGROUND.**

    **Defendants Fact No.1.**

     **In October, 2003 the Kings County Planning Agency became
aware of development proposals for industrial and commercial
properties in the Hanford fringe area which needed to be
addressed.   Supporting Evidence: Declaration of William Zumwalt
(Zumwalt Decl.) para. 2.**

38

DUF 1 is DISPUTED.[4]

**Defendants' Fact No. 2**:  The development proposals revealed weaknesses in the existing annexation policy contained in the Land Use Element of the Kings County General Plan.  <u>Supporting Evidence</u>: Zumwalt Decl. para. 2.

DUF is DISPUTED.

**Defendants' Fact No. 3**:  One of the problems was that the City of Hanford would provide various services to the fringe area developments, the developers were not required to pay their fair share of infrastructure costs, impact fees and connection fees which were required by rate payers within the City of Hanford for the same services.  <u>Supporting Evidence</u>:  Zumwalt Decl., para. 2.

DUF 3 is DISPUTED.

**Defendants' Fact No. 4**:  On December 1, 2003, the Kings County Planning Commission held a duly noticed public hearing

_____

[4]**Plaintiff does not appear to have lodged a copy of his deposition transcript, as required by Rules 5-134(j) and 56-260(e), Local Rules of Practice, and has not attached copies of the excerpts of the transcript to his opposition to the motion for summary judgment.  Further, evidence that Plaintiff's son and a tenant on Plaintiff's property have been the subject of code inspections by officials of Kings County is not relevant to establish that Plaintiff was discriminated on the basis of his race by the amendment to the General Plan, absent a showing that others similarly situated to Plaintiff's son and tenant were not the subject of such code inspections.  Plaintiff's evidence that property owned by him in Armona was inspected in late 2004/early 2005 in response to multiple public complaints is not relevant to show racial discrimination in the amendment to the General Plan absent a showing that no such public complaints were made to the Kings County Planning Agency or that the items listed by the County for correction or improvement were actually up to code standards at the time the Armona property was inspected.  No such evidence is presented.  _See discussion infra._**

regarding General Plan Amendment No. 03-01 (hereinafter GPA 03-01).   The hearing was continued for a portion of the proposed amendment to the January 5, 2004 meeting. A revised staff report was presented to the Commission at that meeting.   At the conclusion of the hearing the Commission adopted Resolution No. 04-02 which recommended that the Board of Supervisors amend the Land Use Element of the Kings County General Plan.   <u>Supporting Evidence</u>:   Zumwalt Decl., para. 3.

DUF 4 is DISPUTED.   However, Plaintiff's assertion that he was the owner of the property and that he had recorded his interest on December 3, 2003 is not supported by the record. Plaintiff refers to Defendants' Exhibit N to prove this.   Exhibit N is an "Agreement of Sale" between Arthur Briones, a married man, and Emily Morales, a married woman, as sellers and Plaintiff as buyer.   The Agreement of Sale provided that the purchase price was $170,000, payable by a down payment of $10,000, $20,000 within 6 months of the execution of the Agreement of Sale, and the balance of $140,000 to be paid by monthly payments of $1,300, commencing on January 3, 2004.   The Agreement of Sale specifically provides:

> It is understood and agreed that the Sellers *shall retain title to the real estate* and any personal property covered by this Agreement of Sale *until the full balance of the purchase price is paid in full*, including interest.   When the full balance of the purchase price is paid, including interest, the Sellers agree to execute and deliver a good and sufficient Grant Deed to the Buyers [sic] covering said premises.   Said deed will convey title to the Buyers [sic] free from

1
2
3

> encumbrances made, suffered or done by
> Sellers, excepting taxes herein agreed to be
> paid by the Buyers [sic], rights of way of
> records [sic] and liens placed on said
> premises by the Buyers.

4
5
6

> At the time of the execution of said deed,
> the Sellers agree to pay for one-half (½) of
> the policy of title insurance, for
> documentary tax on the deed and for one-half
> (½) of the escrow fees. [Emphasis added]/

7   Although Plaintiff asserts that he obtained a "Property Detail

8   Report" in September 2004 (Plaintiff's Exhibit 17) which states

9   that Plaintiff is the owner of the property, the "Property Detail

10  Report" is belied by the Agreement of Sale and the fact that

11  Plaintiff has not provided a Grant Deed evidencing any or all of

12  the fee title to the property to him.  Under a land sale contract

13  he has an equitable right to enforce the conveyance of fee with

14  absolute title to him upon full payment of the purchase price.

15      Defendants' Fact No. 5:  As regards commercial and

16  industrial developments in the Hanford fringe area, the Planning

17  Commission recommended that all new developments or major

18  expansions of existing developments be required to annex to the

19  city or community services district which provides services.

20  However, if the annexation is not feasible, such commercial or

21  industrial developments shall develop to city improvement

22  standards.  Supporting Evidence: Zumwalt Decl., para.. 4.

23      DUF 5 is UNDISPUTED.  Plaintiff's contentions that the

24  subject plan amendment was pretextual and enacted in a way that

25  was arbitrary and capricious and intended to violate Plaintiff's

26  equal protection and due process rights are legal arguments that

41

do not prove what the Planning Commission recommended or intended.

**Defendants' Fact No. 6**:  Planning Director William Zumwalt prepared and submitted an Agenda Item regarding GPA No. 03-01 to the Board for its consideration because changes to the General Plan must be adopted by the Kings County Board of Supervisors. <u>Supporting Evidence</u>:  Zumwalt Decl., para. 5; See also Agenda Item for the January 27, 2004 Board meeting is attached to Zumwalt Decl. as Exhibit A.

DUF 6 is UNDISPUTED.  Plaintiff's contentions that the combination of the facts described by Plaintiff in response to DUF 1-4 raise an issue whether the subject plan amendment was pretextual and enacted in a way that was arbitrary and capricious and intended to violate Plaintiff's equal protection and due process rights does not dispute that Defendant Zumwalt prepared and submitted the Agenda Item for action.

**Defendants' Fact No. 7**:  On January 16, 2004 Clerk of the Board, Catherine Venturella, caused the Notice of Public Hearing for GPA 03-01, components 1, 3a and 7, to be published in the Hanford Sentinel, a newspaper of general circulation within Kings County for at least ten days prior to the public hearing which was scheduled for January 27, 2004.  <u>Supporting Evidence</u>: Zumwalt Decl., para. 6., 37:9-12; See also Notice of Public Hearing and declaration of publication is attached to Zumwalt Decl. as Exhibits B and C.

DUF 7 is DISPUTED.  Defendants' evidence pertains to

different components of the amendments to the General Plan than
those at issue in this action, i.e. Component 2.

    **Defendants' Fact No. 8**:  On or about December 2, 2003 Daniel
Ruff entered into an agreement to purchase real property located
at 11180 S. 10th Avenue  in Hanford, California.  **Supporting
Evidence**:  Exhibit N, Agreement of Sale, attached to Declaration
of Benjamin L. Ratliff (hereinafter Ratliff Decl.) See also
Ratliff Decl., Exhibit M, Deposition of Daniel Ruff, pg. 33:22-
34.

        DUF 8 is UNDISPUTED.  Plaintiff's factual and
argumentative contentions do not contradict that Plaintiff
entered into a written contract to purchase the property on
December 2, 2003.

    **Defendants' Fact No. 9**:  On January 27, 2004 a public
hearing was held and the Board adopted Resolution No. 04-007
approving components 1, 3a and 7 of GPA No. 03-01.  **Supporting
Evidence**:  Zumwalt Decl., para. 7; See also Board of Supervisors
Resolution attached as Exhibit D and Board minutes or Action
Summary attached as Exhibit E to Zumwalt Decl.

        DUF 9 is DISPUTED.  Defendants' evidence pertains to
different components of the amendments to the General Plan than
that at issue in this action, i.e. Component 2.

    **Defendants' Fact No. 10**:  On July 14, 2004 Daniel Ruff
submitted a Uniform Application Form for Zoning Permit
Applications to the Kings County Planning Agency for a proposed
recycling center which was to accept material from the public.

Mr. Ruff paid a processing fee of $490.00. The application was received and assigned number 04-36.  **Supporting Evidence**: Zumwalt Decl., para.8; See also Exhibits F and G attached to Zumwalt Decl.

DUF 10 is UNDISPUTED.  Plaintiff's evidence and argument that he had he attempted to submit the application in early December 2003 but was improperly precluded from doing so because of concerns whether Plaintiff was the owner of the property, does not change the fact that his application was not submitted until July 2004.

**Defendants' Fact No. 11**:  On July 21, 2004 Kings County Planner Mark Sherman called Daniel Ruff and informed him that he would have to annex to the City of Hanford in order to proceed with his recycling project.  **Supporting Evidence**:  Sherman Decl., para. 2.

DUF 11 is UNDISPUTED.  Plaintiff's factual and argumentative contentions do not contradict that Sherman called Plaintiff on July 21, 2004 and what Sherman told him.

**Defendants' Fact No. 12**;  During the conversation on July 21, 2004 with Mark Sherman, Daniel Ruff was a little upset but said "don't think I'm against you". He said he had checked with the City of Hanford and was informed that the sewer nearest to his property is 63" below ground, which was not deep enough to serve his property. He also told Sherman not to send the check until he called to check on the sewer.  **Supporting Evidence**: Sherman Decl.,para. 2.

44

1    DUF 12 is DISPUTED.  Plaintiff denies making the

2  statement attributed to him by Defendant Sherman.

3    **Defendants' Fact No. 13**:  Mark Sherman spoke with John Stowe

4  an employee of the City of Hanford Planning Department on July

5  22, 2004. He said the City would require annexation. He said the

6  subject property would need not only sewer, but fire and police,

7  among other services. He said that Mr. Ruff may be able to keep a

8  septic system rather than hook up to City sewer.  **Supporting**

9  **Evidence**: Sherman Decl., para. 3.

10    DUF 13 is DISPUTED.  Plaintiff asserts that Mr. Stowe

11  told him that Plaintiff would not be allowed to build a recycling

12  center if his property were incorporated into the City of

13  Hanford.

14    **Defendants' Fact No. 14**:  Later on July 22, 2004, Mark

15  Sherman spoke with Daniel Ruff by telephone. Mr. Sherman

16  explained that Mr. Ruff would need to annex and that he would be

17  returning Mr. Ruff's fees.  Mr. Sherman told Mr. Ruff what John

18  Stowe had said. Mr. Ruff was upset and insisted that his property

19  was in the county and said he would hire an attorney. After the

20  conversation, Mr. Sherman wrote a letter to Mr. Ruff to have a

21  record of our conversation.  **Supporting Evidence**:  Sherman

22  Decl.,para. 4; See also Exhibit I attached to Sherman Decl.

23    DUF 14 is UNDISPUTED.  Plaintiff's evidence and

24  argument do not contradict that this conversation occurred and

25  what transpired.

26    **Defendants' Fact No. 15**: On August 25, 2004 William Zumwalt

45

sent a letter to Daniel Ruff regarding his Site Plan Review
Application No. 04-06. Mr. Zumwalt determined that the
application should be denied because the proposed project was not
consistent and would conflict with the Kings County General Plan
and the applicable Kings County Zoning Ordinance.  Mr. Sherman
informed Mr. Ruff that his proposed project was in the City of
Hanford fringe area and the property must be annexed to and
comply with the City of Hanford's requirements in order for the
project to proceed.  Supporting Evidence:  Zumwalt Decl., para.9;
See also Exhibit H attached to Zumwalt Decl.

     DUF 15 is UNDISPUTED.  Plaintiff's facts and argument
pertain to his contentions that Defendants' actions were
pretextual and discriminatory.

     Defendants' Fact No. 16:  Daniel Ruff did not appeal the
denial of his Site Plan Review Application No. 04-06 to the Kings
County Planning Commission or the Kings County Board of
Supervisors.  Supporting Evidence:  Sherman Decl. paragraph 5;
See also Exhibit J attached to Sherman Decl.

     DUF 16 is UNDISPUTED.  Plaintiff's contentions
pertain to legal arguments to excuse his failure to appeal but do
not contradict that Plaintiff did not file the appeal.

     Defendants' Fact No. 17:  On or about September 1, 2004 the
Kings County Planning Agency received a letter from Daniel Ruff's
attorney Daniel Fadenrecht withdrawing plaintiff's application.
Supporting Evidence:  Sherman Decl. paragraph 5; See also Exhibit
J attached to Sherman Decl.

1       DUF 17 is UNDISPUTED.  Plaintiff withdrew the

2  application.  Plaintiff's contentions are legal arguments, not a

3  factual dispute of the action taken on his behalf by his then

4  attorney.

5     **Defendants' Fact No. 18**:  Plaintiff does not have any

6  evidence tending to show that any official actions taken herein

7  were motivated by plaintiff's race.  **Supporting Evidence**:

8  Ratliff Decl, Exhibit L, Plaintiffs Answers to Interrogatories 1

9  and 2; See also Exhibit K attached to the Request for Judicial

10  Notice, Zumwalt Decl., para. 7, Board of Supervisors Resolution

11  attached as Exhibit D and Action Summary attached as Exhibit E to

12  Zumwalt Decl.

13       DUF 18 is UNDISPUTED.  Plaintiff's facts and argument

14  to the contrary do not suffice to raise a genuine issue of

15  material fact that Defendants' intentionally amended the General

16  Plan in order to discriminate against Plaintiff on the basis of

17  his race.  No facts that demonstrate racial animus are provided.

18

19     **Defendants' Fact No. 19**:  There is no evidence of an

20  unconstitutional policy, practice, or procedure on the part of

21  the Kings County Planning Department.  **Supporting Evidence**:

22  Complaint para. 5; See also Ratliff Decl., Exhibit L, Plaintiffs

23  Answers to Interrogatories 1 and 2.

24       DUF 19 is DISPUTED.

25

26

1  3.   **MERITS OF MOTION**.[5]

2  a.   **Lack of Discriminatory Intent**.

3  Defendants move for summary judgment as to the First and

4  Fourth Causes of Action in the Complaint (now the First and

5  Second Causes of Action in the FAC) on the ground that Plaintiff

6  has provided no evidence of intent to discriminate against

7  Plaintiff on the basis of race.  Defendants cite, *inter alia*,

8  *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1238-1239 (9th

9  Cir.1984):

10         'Unless a classification trammels fundamental
       personal rights or is drawn upon inherently

11         suspect distinctions such as race ...
       [courts] presume the constitutionality of the

12         statutory discriminations and require only
       that the classification challenged be

13         rationally related to a legitimate state
       interest.  *New Orleans v. Dukes,*, 427 U.S.

14         297, 303-04 ... (1976).  Because zoning and
       land use issues do not implicate fundamental

15         rights, *Christian Gospel Church, Inc. v. San
       Francisco*, 896 F.2d 1221, 1225 (9th Cir.),

16         *cert. denied*, 498 U.S. 999 ... (1990), in
       order to invoke strict scrutiny in this case

17         the Kawaokas must demonstrate that the City
       intentionally discriminated on the basis of

18

---

19  [5]Defendants move for summary judgment in connection with the
allegation in the Complaint that "on or about February 25, 2005

20  Defendants continued their discrimination against Plaintiff by
selective enforcement against Plaintiff as to similar business

21  operations in Armona, California situated in Kings county [sic]
under the color of official authority."  Because the FAC contains

22  no allegations of discrimination in connection with Plaintiff's
business operations in Armona, the motion for summary judgment on

23  this ground is moot.  Whether evidence of other acts of alleged
racial discrimination against Plaintiff or his family members is

24  admissible at trial will be the subject of a motion in limine.
    Defendants moved for summary judgment on the antitrust claim

25  alleged in the Complaint.  Because the antitrust claim alleged in
the FAC is dismissed with prejudice, the motion for summary

26  judgment on this ground is moot.

race.  *Arlington Heights v. Metropolitan
Housing Dev. Corp.*, 429 U.S. 252, 264-265 ...
(1977).  Discriminatory intent may be proved
by direct or indirect evidence.  *Id.* at 266
...; *Federal Deposit Ins. Corp. v. Henderson*,
940 F.2d 465, 471 (9th Cir.1991).

Defendants refer to Plaintiff's July 2006 response to their

interrogatories requesting all facts supporting the allegations

made in paragraphs 2 and 8 of the Complaint:

> The plaintiff was refused an opportunity to
> timely record and, relatedly, submit
> development plans for the subject property,
> and, without adequate notice or process, plan
> amendments were passed in the interim that
> deprived plaintiff of the use of his
> property.  The defendants and tier [sic]
> agents were aware of plaintiff's African-
> American heritage and the fact that he had
> planned to develop a lucrative recycling
> center business on the subject property and,
> at least in part based on plaintiff's
> protected characteristics, capriciously
> prevented him from proceeding prior to the
> questionable plan amendment's approval.
> Plaintiff is informed and believes that
> discovery will reveal disparate treatment of
> those outside of his protected class.

Defendants argue that "[n]oticeably absent from plaintiff's

response are any facts tending to indicate that any official

action or decision by defendants William Zumwalt, Mark Sherman or

Sandy Roper were motivated by plaintiff's race."  Defendants also

refer to Plaintiff's deposition taken on December 6, 2006, where

Plaintiff testified that he had many conversations with Defendant

Mark Sherman and at no time did Mr. Sherman make any racially

derogatory comments to him.  Defendants argue that, because

neither Defendant Zumwalt or Defendant Roper had any telephone

conversations or face to face communications with Plaintiff,

49

1    there is no evidence that these Defendants were motivated by

2    racial animus.

3         In opposing this aspect of the motion for summary judgment,

4    Plaintiff limits his Section 1983 equal protection claim to a

5    "class of one" pursuant to *Village of Willowbrook v. Olech*, 528

6    U.S. 562 (2000).

7         In *Olech*, the plaintiff had asked the Village of Willowbrook

8    to connect her property to the municipal water supply.  The

9    Village told her that it would provide her a connection if, but

10   only if, she granted the Village a 33-foot easement on her

11   property.  Olech protested, noting that the Village had only

12   required her neighbors to provide 15-foot easements in exchange

13   for their connections.  528 U.S. at 563.  Although the Village

14   eventually relented and connected Olech in return for a 15-foot

15   easement, Olech sued, alleging that the 33-foot easement demand

16   was irrational and wholly arbitrary and violated her right to

17   equal protection by deviating from the standard 15-foot easement.

18   The district court dismissed her claim.  The Supreme Court held:

19            Our cases have recognized successful equal
              protection claims brought by a 'class of
20            one,' where the plaintiff alleges that she
              has been intentionally treated differently
21            from others similarly situated and that there
              is no rational basis for the difference in
22            treatment ... In so doing, we have explained
              that '"[t]he purpose of the equal protection
23            clause of the Fourteenth Amendment is to
              secure every person within the State's
24            jurisdiction against intentional and
              arbitrary discrimination, whether occasioned
25            by express terms of a statute or by its
              improper execution through duly constituted
26            agents.' ....

                              50

> That reasoning is applicable to this case.
> Olech's complaint can fairly be construed as
> alleging that the Village intentionally
> demanded a 33-foot easement as a condition of
> connecting her property to the municipal
> water supply where the Village required only
> a 15-foot easement from other similarly
> situated property owners ... The complaint
> also alleged that the Village's demand was
> 'irrational and wholly arbitrary' and that
> the Village ultimately connected her property
> after receiving a clearly adequate 15-foot
> easement.  These allegations, quite apart
> from the Village's subjective motivation, are
> sufficient to state a claim for relief under
> traditional equal protection analysis.

*Id.* at 564-565.

"Where an equal protection claim is based on 'selective enforcement of valid laws,' a plaintiff can show that the defendants' rational basis for selectively enforcing the law is a pretext for 'an impermissible motive.'" *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir.2004), *overruled on other grounds*, *Action Apt. Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir.2007).  The Ninth Circuit explained:

> Disparate government treatment will survive
> rational basis scrutiny 'as long as it bears
> a rational relation to a legitimate state
> interest.'  *Patel v. Penman*, 103 F.3d 868,
> 875 (9th Cir.1996).  Although '[s]elective
> enforcement of valid laws, without more, does
> not make the defendants' action irrational,'
> *Freeman*, 68 F.3d at 1188, there is no
> rational basis for state action '"that is
> malicious, irrational or plainly arbitrary."'
> *Armendariz*, 75 F.3d at 1326 (quoting *Lockary
> v. Kayfetz*, 917 F.2d 1150, 1155 (9th
> Cir.1990)(as amended)).

*Squaw Valley Development Co.*, *id.*  "In order to claim a violation

of equal protection in a class of one case, the plaintiff must establish that the City intentionally, and without rational basis, treated the plaintiff differently from others similarly situated ... A class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed ... to being an accident or a random act.'" *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir.2008).  In *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189 (11th Cir.2007), *cert. denied*, 128 S.Ct. 2055 (2008), the Eleventh Circuit held:

> We see no reason that a plaintiff in a 'class of one' case should be subjected to a more lenient 'similarly situated' requirement than we have imposed in other contexts.  Adjudging equality necessarily requires comparison, and 'class of one' plaintiffs may (just like other plaintiffs) fairly be required to show that their professed comparison is sufficiently apt.  *See Campbell*, 434 F.3d at 1314; *Purze v. Vill. of Winthrop Harbor*, 286 F.2d 452, 455 (7th Cir.2002)(observing that plaintiffs in a 'class of one' case 'must demonstrate that they were treated differently than someone who is *prima facie identical in all relevant respects*' ...); *Hicks v. Jackson County Comm'n*, 374 F.Supp.2d 1084, 1096 (N.D.Ala.2006)('The burden of identifying similarly situated individuals is a heavy one.'); *cf. Nordlinger v. Hahn*, 505 U.S. 1, 10 ... (1992)('The Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in *all relevant respects* alike.') ... Accordingly, when plaintiffs in 'class of one' cases challenge the outcome of complex, multi-factored government decisionmaking processes, similarly situated entities 'must be very similar indeed.'  *McDonald v. Vill of Winnetka*, 371 F.3d 992, 1002 (7th Cir.2004).

With regard to the Second Cause of Action for violation of Section 1985(3):

> To prove a violation of § 1985(3), [Plaintiff] must show 'some racial, or perhaps otherwise class-based, *invidiously discriminatory animus* behind the conspirators' action.  The conspiracy, in other words, *must aim at* a deprivation of the equal enjoyment of rights secured by the law to all.'

*Orin v. Barclay*, 272 F.3d 1207, 1217 (9th Cir.2001), quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

Plaintiff argues that he has sufficient evidence from which a discriminatory intent on the part of Defendants may be inferred.  He argues that Component 2 of the general plan amendment was only devised after Plaintiff first inquired about the proposed recycling center in October or November 2003 and that Component 2 of the general plan amendment was not enacted until December 23, 2003, after Plaintiff had attempted to submit a site review application in early December 2003.  Plaintiff refers to evidence that Component 2 was devised in response to inquiries, including his, regarding commercial development in the Hanford fringe area.

He contends that evidence demonstrates that Component 2 contemplated a fundamental amendment to the general plan and that being referred to in the notice documents as a "clarification" implies an attempt by Defendants to deny meaningful notice to Plaintiff, who, Plaintiff asserts, was the only potentially affected landowner who had made known his intent to develop a

53

recycling center in the Hanford fringe area and who had attempted to apply for such development.  Plaintiff argues that the evidence demonstrates that Plaintiff was not given actual or meaningful notice of Component 2, which deprived him of the opportunity to oppose the amendment or submit a site plan review before its enactment.

Plaintiff argues that the property was zoned commercial and that, as of December 2003, a recycling center was a permitted use that would have been granted in no more than 15 days after the submission of a compliant site review application.  Plaintiff argues that the evidence suggests that there was no legitimate basis for Defendants' refusal to accept Plaintiff's site plan application or, if it was non-compliant, to deny it pursuant to site plan review procedures.  Plaintiff suggests that there is no evidence that any other property owner or site plan review applicant was affected by the passage of Component 2 of the general plan amendment.  He argues that evidence demonstrates that the stated basis for refusing to accept his site plan review application, that he was not listed as the property owner, is contrived because there is no such requirement and Plaintiff produced documents which he contends establish that he was the property owner.

Plaintiff refers to evidence that Supervisor Barba told Plaintiff that his application was denied because it was filed too late, which Plaintiff argues confirms the purpose of the arbitrary rejection of his application for eight months.  He

refers to evidence that Defendant Sherman contacted John Stowe of the City of Hanford Planning Department before Plaintiff's application was denied, and that Stowe informed Plaintiff that there had been a meeting about his application and that it would not be permitted in the City of Hanford.  Plaintiff refers to evidence that his application, although first returned, was later ruled upon by the Kings County Planning Agency.  Plaintiff suggests other fringe developments were permitted without annexation even after passage of the general plan amendment.  He argues that his proposed recycling center was denied at a time when Kings County had no other private commercial recycling center and was under a state mandate to increase recycling. Plaintiff contends that this evidence is more than sufficient to raise genuine issues of material fact regarding the discriminatory nature of Defendants' actions, whether for purposes of Section 1983 or Section 1985(3).

What is entirely absent from this showing is any evidence that Plaintiff's race was in any way implicated.  There is no evidentiary support for a Section 1985(3) equal protection claim based on alleged race discrimination.  As explained in *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir.1995):

> The first step in equal protection analysis is to identify the [defendants'] classification of groups.' ... To accomplish this, a plaintiff can show that the law is applied in a discriminatory manner or imposes different burdens on different classes of people ... 'The next step ... [is] to determine the level of scrutiny.' ... Classifications based on fact or national

origin, such as those alleged here, are subject to strict scrutiny ....

One the plaintiff establishes governmental classification, it is necessary to identify a 'similarly situated' class against which the plaintiff's class can be compared ... 'The goal of identifying a similarly situated class ... is to isolate the fact allegedly subject to impermissible discrimination.  The similarly situated group is the control group.' ....

... 'To establish impermissible selective prosecution, [Freeman] must show that others similarly situated have not been prosecuted and that the prosecution is based on an impermissible motive.' ....

*See also Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19

(1ˢᵗ Cir.1989):

It is apodictic that evidence of past treatment towards others similarly situated can be used to demonstrate intent in a race discrimination suit ... To put flesh upon the bare bones of this theory, appellants' obligation was to identify and relate specific instances where persons similarly situated 'in all relevant respects' were treated differently, ... instances which have the capacity to demonstrate that the Students were 'singled ... out for unlawful oppression.' ... In general, this requires that the other incidents' circumstances be 'reasonably comparable' to those surrounding appellants' suspensions, and that 'the nature of the infraction and knowledge of the evidence by college officials [be] sufficiently similar to support a finding of facial inconsistency.' ... The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated.  Much as in the lawyer's art of distinguishing cases, the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result.  Exact correlation is neither likely nor necessary, but the cases

must be fair congeners.   In other words,
apples should be compared to apples.

As discussed *supra*, Plaintiff's evidence that his son and a tenant on Plaintiff's property have been the subject of code inspections by officials of Kings County does not establish that Plaintiff was discriminated on the basis of his race by the amendment to the General Plan, absent a showing that others similarly situated to Plaintiff's son and tenant were not the subject of such code inspections.   Plaintiff's evidence that property owned by him in Armona was inspected in late 2004/early 2005 in response to multiple public complaints is not relevant to show racial discrimination in the amendment to the General Plan absent a showing that no such public complaints were made to the Kings County Planning Agency or that the items listed by the County for correction or improvement were actually up to code standards at the time the Armona property was inspected.   No such evidence is presented.

Defendants' motion for summary judgment in connection with Plaintiff's claim that he was denied equal protection as a "class of one" is DENIED.   Because of the evidence that other fringe area developments were allowed to proceed without annexation after the amendment of the General Plan, there is evidence from which it may be inferred that Plaintiff was intentionally treated differently from others similarly situated.

However, Plaintiff's evidence that his son and a tenant were discriminated against on the basis of race and his evidence

57

1  concerning a building code inspection on other property owned by

2  Plaintiff are not relevant to establish Plaintiff's equal

3  protection claim.   Plaintiff presents no evidence from which it

4  may be inferred that Defendants intentionally discriminated

5  against Plaintiff on the basis of his race by amending the

6  General Plan.   Defendants' motion for summary judgment in

7  connection with Plaintiff's equal protection claim based on

8  racial discrimination is GRANTED.

9                    b.   Procedural Due Process.

10      Defendants move for summary judgment in connection with

11  Plaintiff's claim of denial of procedural due process alleged in

12  the First Cause of Action of the FAC.

13      "A claim for violation of procedural due process has two

14  components.   First, plaintiff must show that a protected property

15  interest was taken.   Second, it must show that the procedural

16  safeguards surrounding the deprivation were inadequate." *Sierra*

17  *Lake Reserve v. City of Rocklin,* 938 F.2d 951, 957 (9th

18  Cir.1991), citing *Board of Regents v. Roth*, 408 U.S. 564, 568-569

19  (1972).   "The fundamental component of due process is the

20  opportunity to be heard 'at a meaningful time and in a meaningful

21  manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

22      California Government Code § 65353 provides in relevant

23  part:

24              (a) When the city or county has a planning
                commission authorized by local ordinance or
25              resolution to review and recommend action on
                ... proposed amendments to the general plan,
26              the commission shall hold at least one public

1    hearing before approving a recommendation on
     the adoption or amendment of a general plan.
2    Notice of the hearing shall be given pursuant
     to Section 65090.
3
     (b) If ... amendments to a general plan would
4    affect the permitted uses or intensity of
     uses of real property, notice of the hearing
5    shall also be given pursuant to paragraphs
     (1) and (2) of subdivision (a) of Section
6    65091.

7   Government Code § 65090(a) and (b) requires that notice of the

8   public hearing required by Section 65353 be published in at least

9   one local newspaper of general circulation within the

10  jurisdiction of the local agency at least 10 days prior to the

11  hearing, and that the notice shall include the information

12  specified in Section 65094.   Section 65091(a) provides in

13  relevant part:

14          When a provision of this title requires
            notice of a public hearing to be given
15          pursuant to this section, notice shall be
            given in all of the following ways:
16
                (1) Notice of the hearing shall be
17          mailed or delivered at least 10 days prior to
            the hearing to the owner of the subject real
18          property as shown on the latest equalized
            assessment roll.  Instead of using the
19          assessment roll, the local agency may use
            records of the county assessor or tax
20          collector if those records contain more
            recent information than the information
21          contained on the assessment roll.  Notice
            shall also be mailed to the owner's duly
22          authorized agent, if any, and to the project
            applicant.
23
     Government Code § 65094 provides:
24
            As used in this title, 'notice of a public
25          hearing' means a notice that includes the
            date, time, and place of a public hearing,
26          the identity of the hearing body or officer,

                                    59

1
2
3

>                    a general description of the matter to be
>                    considered, and a general description, in the
>                    text or by diagram, of the location of the
>                    real property, if any, that is the subject of
>                    the hearing.

4   Plaintiff cannot withstand summary judgment on his

5   procedural due process claim.  As established by Plaintiff's

6   documents, Plaintiff was not the legal owner of the property at

7   the time notice was given and he presents no evidence he was

8   listed as the owner on the latest equalized assessment role or in

9   the records of the Kings County assessor or tax collector.  The

10  evidence establishes that the notice was published and was sent

11  to the property address.  Plaintiff has not raised a genuine

12  issue of fact that he was entitled to more notice than he

13  received.

14       Defendants' motion for summary judgment is GRANTED to the

15  extent Plaintiff's claim of denial of procedural due process is

16  based on the failure to mail notice specifically to Plaintiff.

17       Plaintiff also contends that the published and mailed notice

18  was constitutionally inadequate because the notices described

19  Component 2 to the proposed amendment as a "clarification."

20  Plaintiff argues "[t]he evidence ... shows that Component 2 at

21  all times contemplated a fundamental amendment to the general

22  land use plan and that its being referred to in the notice as a

23  mere 'clarification' was a predatory effort to deny meaningful

24  notice to plaintiff, who, according to the evidence, was the only

25  potentially affected landowner [sic] who had made known

26  intentions to develop in the Hanford fringe area and had

attempted to submit an application for such development prior to the drafting of the notice documents."

The "Land Use Element of the Kings County General Plan", last revised on January 27, 2004, states in pertinent part:

> GOAL LU 3: Direct future industrial and
> commercial development to the cities and
> rural communities.
>
> ...
>
> Objective LU 3.4: Coordinate commercial and
> industrial growth with the long-range capital
> improvement plans of the County, cities, and
> special districts.
>
> > Policy LU 3.4a: When a commercial
> > or industrial development, or major
> > expansion of an existing commercial
> > or industrial use, is proposed in a
> > city fringe area, require
> > annexation to the city ....

(Plaintiff's Exhibit 4).  Prior to the January 27, 2004 revision, the Kings County General Plan Land Use Element provided:

> GOAL 3: Direct future industrial and
> commercial development to the cities and
> rural communities.
>
> ...
>
> Policy 3f: When public services are provided
> to an existing developed commercial or
> industrial area, encourage annexation to the
> city or community services district providing
> the service.

(Plaintiff's Exhibit 6).

The "Initial Study/Negative Declaration" concerning General Plan Amendment No. 03-01, prepared by Defendants Zumwalt and Roper on November 6, 2003, stated in pertinent part:

> <u>DESCRIPTION OF PROJECT</u>:

61

> **General Plan Component**: This project consists of amendments to the *Land Use Element of the Kings County General Plan,* and various other technical changes as described below:
>
> ...
>
> Component 2: Clarification of annexation policy for commercial/industrial development in city fringe areas (See the Project Summary for Component 2 on Page 2 of the IS/ND).

(Plaintiff's Exhibit 10).

The Notice of Public Hearing provided that the Board of Supervisors will hold public hearings on December 23, 2003 to consider:

> 1.   General Plan Amendment No. 03-01 (Kings County Planning Agency)
>
> This project consists of amendments to the *Land Use Element* of the *Kings County General Plan*, and various other technical changes as described below:
>
> Component 2:   Clarification of annexation policy for commercial/industrial development in city fringe areas as included in GOAL 3 and its accompanying objectives and policies.
>
> ....

This Notice of Public Hearing was published in the Hanford Sentinel.   (Plaintiff's Exhibit 12).

The Agenda Item for the December 23, 2003 Kings County Board of Supervisors meeting submitted by Defendant Zumwalt is captioned "General Plan Amendment No. 03-01 (Land Use Element)" and states in pertinent part:

1    Recommendation:

2    Hold a Public Hearing and take the following
     actions concerning the General Plan Amendment
3    No. 03-01

4    1. ... General Plan Amendment No. 03-01
     includes various technical and text
5    clarification changes concerning land use
     policies associated with the development of
6    commercial and industrial land use in city
     fringe areas, and other minor land use
7    designation changes in Stratford and the
     Hanford fringe area ....

8    BACKGROUND

9    ...

10   PROPOSED AMENDMENTS ...

11
         Component 2 - Clarification of
12       commercial/industrial development
         annexation policy:
13
         Due to some recent development
14       proposals in the Hanford fringe
         area for industrial and commercial
15       properties certain weaknesses in
         the policies have become apparent.
16       Although the city will provide
         various services to these
17       developments now and in the future,
         the developments are getting a free
18       ride at the expense of other
         developments and rate payers within
19       the city.  Changes to GOAL 3 and
         its related policies (including two
20       new policies are intended to
         require such fringe area
21       developments pay their fair share
         of infrastructure costs in
22       development impact fees and
         connection fees if it is not
23       feasible to annex the property to
         the city before development permits
24       are issued (see Exhibit A of the
         attached draft resolution).

25
     (Plaintiff's Exhibit 8, pp. 1-2).  Resolution No. 03-121, enacted
26

                              63

1 by the Kings County Board of Supervisors on December 23, 2003,

2 provides:

3    BE IT FURTHER RESOLVED that the Board adopts
    General Plan Amendment No. 03-01, Components
4    2 ..., that makes the following changes to
    the *Kings County General Plan* as shown in
5    Exhibits A ... hereto:

6      Component 2.  Clarification of
      commercial/industrial development
7      annexation policy: That due to some
      recent development proposals in the
8      Hanford fringe area for industrial
      and commercial properties certain
9      weaknesses in the policies have
      become apparent.  Changes to *Land*
10     *Use Element* GOAL 3 of the *Kings*
      *County General Plan* and its related
11     policies (including two new
      policies) which require that such
12     fringe area development pay its
      fair share of infrastructure costs
13     in development impact fees and
      connection fees if it is not
14     feasible to annex the property to
      the city before development permits
15     are issued (see Exhibit A).

16 (Plaintiff's Exhibit 9).

17  "An elementary and fundamental requirement of due process in

18 any proceeding which is to be accorded finality is notice

19 reasonably calculated, under all the circumstances, to apprise

20 interested parties of the pendency of the action and afford them

21 an opportunity to present their objections."  *Mullane v. Central*

22 *Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  "The notice

23 must be of such nature as reasonably to convey the required

24 information."  *Id.*

25  Defendants' motion for summary judgment on this issue is

26 DENIED.  Plaintiff has presented evidence from which it may be

inferred that the notice provided did not reasonably convey the required information, *i.e.,* that the General Plan was to be amended to require annexation for fringe area development projects which would burden county services, as opposed to encouraging annexation.

Plaintiff contends that, where a "supposed legislative act was taken without notice or hearing to plaintiff, and the act affected only plaintiff's property, the legislative action itself can support a procedural due process claim." Plaintiff cites *Hotel & Motel Ass'n of Oakland v. City of Oakland*, *supra*, 344 F.3d at 965-966, 972-973, and *Harris v. County of Riverside*, 904 F.2d 497, 502 (9th Cir.1980).

Plaintiff's reliance on *Hotel & Motel Ass'n* to support his claim for denial of procedural due process is misplaced. The opinion discussed a Fifth Amendment Takings claim at pages 965-966. It discusses an equal protection and vagueness challenge at pages 972-973.

In *Harris v. County of Riverside*, the Ninth Circuit addressed a contention that the County was under no constitutional due process constraints in promulgating the disputed general plan amendment because the dictates of procedural due process apply only to adjudicatory or administrative government actions, not legislative determinations. The Ninth Circuit held:

> We find the present case to be more analogous
> to *Londoner* than *Bi-Metallic*. The County's
> consideration of the vast area contemplated

65

> by the General Plan Amendment certainly
> affected a large number of people and would
> not ordinarily give rise to constitutional
> procedural due process requirements.  Within
> the County's amendment process, however, the
> County specifically targeted Harris' property
> for a zoning change after notice had been
> published for the General Plan Amendment.
> The district court made no factual findings
> on this issue, but the record also supports
> the conclusion that the County undeniably
> knew the use Harris was making of his
> property when it acted to change the zoning
> on his land.  Under the facts of this case,
> the County's decision to alter its proposed
> General Plan Amendment specifically to rezone
> Harris' land constituted a decision which was
> distinct from, rather than part of, approval
> of the General Plan Amendment.  This
> decision, in contrast to approval of the
> General Plan Amendment, concerned a
> relatively small number of persons (Harris
> and the immediately adjacent landowner)
> rather than the entire population of the West
> Coachella Valley.  As the California Supreme
> Court has expressly cautioned, 'land use
> planning decisions less extensive than
> general rezoning c[an] not be insulated from
> notice and hearing requirements by
> application of the 'legislative act' doctrine
> ....

904 F.2d at 502.

     Here, Defendants are not seeking summary judgment on the

ground Plaintiff was not entitled to notice because the proposed

amendment was a legislative act.  Notice was mailed to the

property and published in the newspaper.  Further, as discussed

above, Plaintiff has not presented evidence from which it may be

inferred that he was the landowner of record of the property

entitled to notice under the Government Code.

     Plaintiff contends that he can "attack the regulation on

procedural due process grounds on an as-applied basis so long as

66

he has, as here, submitted one application and had it acted upon, thereby being subject to an application of the challenged regulation."  Plaintiff cites *Kawaoka v. City of Arroyo Grande, supra*, 17 F.3d at 1234, and *Carson Harbor Village, Ltd. v. City of Carson*, 37 F.3d 468, 474 (9th Cir.1994).

*Kawaoka* at page 1234 addresses a substantive due process claim, not a procedural due process claim.  *Carson Harbor Village* at 474 addresses an as-applied Fifth Amendment Takings claim, not a procedural due process claim.  Neither of these cases support Plaintiff's contention and it is disregarded for purposes of his procedural due process claim.

Defendants' motion for summary judgment on Plaintiff's claim for denial of procedural due process is GRANTED IN PART AND DENIED IN PART as set forth above.

### c. Liability under *Monell*.

Defendants move for summary judgment on the ground that Plaintiff cannot establish municipal liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Local government entities and local government officials acting in their official capacity can be sued for monetary, declaratory, or injunctive relief, but only if the allegedly unconstitutional actions took place pursuant to some "policy statement, ordinance, or decision officially adopted and promulgated by that body's officers...."  *Monell*, *id*. at 690-91. Alternatively, if no formal policy exists, plaintiffs may point to "customs and usages" of the local government entity.  *Id*.  A

67

local government entity cannot be held liable simply because it *employs* someone who has acted unlawfully.  *Id.* at 694.  *See also Haugen,* 351 F.3d at 393 ("Municipalities cannot be held liable under a traditional respondeat superior theory. Rather, they may be held liable only when "action pursuant to official municipal policy of some nature caused a constitutional tort.... [T]o establish municipal liability, a plaintiff must prove the existence of an unconstitutional municipal policy.").

To prevail in a civil rights claim against a local government under *Monell*, a plaintiff must satisfy a three-part test:

> (1)  The local government official(s) must have intentionally violated the plaintiff's constitutional rights;
>
> (2)  The violation must be a part of policy or custom and may not be an isolated incident; and
>
> (3)  There must be a link between the specific policy or custom to the plaintiff's injury.

*Id.* at 690-92.  There are a number of ways to prove a policy or custom of a municipality.  A plaintiff may show (1) "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "the official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).

The Ninth Circuit has held that a municipal policy "may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded."  Id.

A municipality may still be liable under *Monell* for a single incident where: (1) the person causing the violation has "final policymaking authority;" (2) the "final policymaker" "ratified" a subordinate's actions; or (3) the "final policymaker" acted with deliberate indifference to a subordinate's constitutional violations.  *Christie v. Iopa*, 176 F.3d 1231 (9th Cir.), *cert. denied,* 528 U.S. 928 (1999).

Plaintiff argues that summary judgment is not appropriate because of evidence that his site review application was denied in part based on actions ratified by Defendant Zumwalt, the Kings County Director of Planning and Building Inspection, and the Kings County Board of Supervisors, indicating that the actions were ratified as County policy.

"To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Christie v. Iopa*, *supra*, 176 F.3d at 1239. "[R]atification requires, among other things, knowledge of the alleged constitutional violation."  *Id*.

Here, because summary judgment is DENIED with regard to certain of Plaintiff's equal protection and procedural due process claims, issues of fact as to the County's past implementation and application of its land use regulations,

69

remain with regard to the County's liability under *Monell*.

**CONCLUSION**

For the reasons stated:

1.   Defendants' motion to dismiss the First Amended Complaint is GRANTED IN PART WITH PREJUDICE, GRANTED IN PART WITH LEAVE TO AMEND, AND DENIED IN PART;

2.   Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

Dated:   September 15, 2008            /s/ Oliver W. Wanger
                                   UNITED STATES DISTRICT JUDGE