IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL E. RUFF, | No. CV-F-05-631 OWW/GSA |
| Plaintiff, | MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST (Doc. 206) |
| vs. | |
| COUNTY OF KINGS, et al., | |
| Defendants. | |

Plaintiff moves the Court to award prejudgment interest in the amount of $217,379.60 as part of the Judgment in this action. Plaintiff asserts that the accrual date of his claims under 42 U.S.C. § 1983 was August 25, 2004, the date his site review permit was first formally denied on the basis of Kings County General Land Use Plan 3.4a, which the jury found was applied in violation of Plaintiff's procedural due process rights.

The Ninth Circuit has not ruled specifically about the standards governing an award of prejudgment interest in an action

under Section 1983.  However, district courts have applied the analysis set forth in *Western Pacific Fisheries, Inc. v. SS PRESIDENT GRANT*, 730 F.2d 1280, 1288 (9th Cir.1984), in determining whether to award prejudgment interest in such cases. *See, e.g., Murphy v. City of Elko*, 976 F.Supp. 1359, 1362 (D.Nev.1997); *Golden State Transit Corp. v. City of Los Angeles*, 773 F.Supp. 204, 210 (C.D.Cal.1991).  In *Western Pacific Fisheries*, a maritime case, the Ninth Circuit ruled:

> It is well-established that compensatory damages in maritime cases normally include pre-judgment interest ... Although the award of pre-judgment interest is within the discretion of the trial judge, this discretion must be exercised with a view to the fact that pre-judgment interest is an element of compensation, not a penalty ....

730 F.2d at 1288; *see also* Schwartz & Kirkland, 1C Section 1983 Litigation: Claims and Defenses, § 16.17 (3rd ed.):

> [T]he United States Supreme Court has formulated federal principles to guide the recovery of prejudgment interest.  The Court generally regards prejudgment interest as a component of 'complete compensation.'  For example, in *Osterneck v. Ernst & Whinney*, an action under the Securities Exchange Act of 1934, the Supreme Court stated that, in deciding whether and how much prejudgment interest should be granted, the federal courts should consider a variety of factors pertinent to the merits of the particular claim for relief.  The factors referred to in *Osterneck* include 'whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries, the degree of personal wrongdoing on the part of the defendant, ... whether the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness.'  These factors are pertinent to § 1983 damage claims as well.

Defendants argue that Plaintiff's request for prejudgment interest should not be awarded for the full period from August 25, 2004 to the date of the Judgment.

Defendants note that the Complaint was filed on May 10, 2005.  At the time, Plaintiff was represented by Rafael Pio Fonseca.  Defendants' Answer was filed on June 6, 2005.  On December 2, 2005, Kevin Little, present counsel for Plaintiff, made a special appearance and requested leave to file an amended complaint.  A Minute Order ordered that an amended complaint be filed by January 15, 2006.  Plaintiff did not file an amended complaint as required by the Court's Order.  On March 31, 2006, Mr. Little filed a Notice of Substitution of Attorneys, listing himself as counsel for Plaintiff and substituting Mr. Little as counsel of record (Doc. 25).  On April 25, 2006, Mr. Little, listing himself as attorney for Plaintiff, filed a Stipulation and Proposed Order substituting Mr. Little as counsel for Plaintiff (Doc. 27).  Mr. Little was substituted as counsel for Plaintiff by docket entry issued on April 7, 2006.  On October 19, 2006, Plaintiff filed a motion to vacate the dates set forth in the Scheduling Order (Doc. 31), stating as grounds that the current pretrial schedule "was rendered infeasible by unforeseen delays in the finalization of the undersigned counsel's retention in this matter"; that "[t]he finalization of this retention, which has now occurred, was necessary before counsel began substantial work in this matter"; that "as a result of counsel's extended illness in the latter part of 2005 many maters [sic]

were delayed, and he has had to 'make up for lost time' in 2006 and has been in a trial or evidentiary-type proceeding virtually the entire year, in addition to handling complex briefing issues on several cases." Plaintiff's motion to vacate the schedule was granted and new dates set by Minute Order filed on November 20, 2006 (Doc. 35) and formal written Order filed on March 13, 2007 (Doc. 40). By Stipulation and Order filed on July 5, 2007, a new schedule was entered "[d]ue to a confluence of circumstances affecting the schedule of plaintiff's counsel and certain key witnesses, as well as the unintended failure to file a prior duly executed stipulation" (Doc. 43). The July 5, 2007 scheduling order required that non-dispositive motions be filed by November 5, 2007 and that dispositive motions be filed by December 3, 2007. The Pretrial Conference was set for March 28, 2008 and jury trial was set for May 6, 2008.

The period from December 2, 2005, through July 5, 2007, must be excluded.

On December 3, 2007, Defendants filed a motion for summary judgment or summary adjudication, noticing the motion for hearing on January 14, 2008 (Doc. 47). On January 2, 2008, the day Plaintiff's opposition to the motion for summary judgment was due, Plaintiff filed an ex parte application for a 90 day continuance of the due date for Plaintiff's opposition to the motion for summary judgment and for continuance of the hearing date of the motion (Doc. 49). In support of this requested continuance, Plaintiff's counsel asserted:

**1.   Due to a variety of scheduling issues, plaintiff's counsel's subsequent medical problems and related restriction of his ability to practice, and other personal and financial difficulties of plaintiff's counsel, none of the defense witnesses have been deposed in this action, including those who have submitted declarations in support of the pending motion.  Moreover, plaintiff's counsel has not followed through with his long-intended plan to amend the complaint in this action for the same reasons.  Therefore, the state of the record, discovery, and the underlying pleadings make the consideration of the pending summary judgment motion in appropriate at this time.  Plaintiff requests permission to perform the requisite discovery, to amend the current complaint and perform other reasonably necessary preliminary tasks prior to opposing the pending motion.**

**2.   This is a relatively complex civil rights case, and the motion [for summary judgment] filed attacks numerous claims, based on numerous legal and factual arguments.  The motion also was filed along with voluminous evidentiary materials.**

**3.   The initial review of the defense motion suggests that it is not based upon the record construed in the light most favorable to the non-moving party ... but, rather, are founded upon selective snippets of documents and testimony that disregard th greater import of the record.  While this may be considered effective advocacy, it now places an enormous burden on the plaintiff, who has to carefully review and fully summarize the depositions and other documents so that the Court can get a true sense of the contours of the record in this case.  This alone will take plaintiff, who once again is a sole practitioner operating with limited time and resources, significant time [sic].**

**4.   Plaintiff's counsel's six year old son arrived to California for the Christmas holiday on December 18, 2007 and departs on January 3, 2008.  While parental obligations may be considered typical and perhaps not**

>           compelling for these purposes, plaintiff's
>           counsel's son is residing out of the country
>           temporarily, and only gets to spend time with
>           his father for a week to ten days every two
>           to three months.  Indeed, this is plaintiff's
>           counsel's son's first trip back to California
>           since his September departure, and during
>           this visit, plaintiff's counsel is the sole
>           custodial parent.  Plaintiff's counsel made
>           what he feels is a reasonable personal
>           decision to defer doing any substantial work
>           on the subject motion until after his son's
>           visit.  This work was also delayed because,
>           for the above-stated reasons, the current
>           state of discovery and the pleadings in this
>           case do not permit plaintiff to prepare a
>           reasonable opposition.
>
>      5.   Plaintiff's counsel recently, in November
>           2007, moved from his prior office and is
>           temporarily practicing from home, with the
>           majority of his files and equipment being
>           kept at an off-site storage facility.
>           Plaintiff's counsel does not have ready
>           access to his case files currently, and this
>           logistical obstacle also is a basis for
>           requesting additional time to oppose the
>           subject motion.
>
>      6.   In addition to the above-stated factors,
>           plaintiff's counsel has three other summary
>           judgment motions that he may have to oppose
>           during relatively the same time period, in
>           <u>Fenters v. Yosemite Chevrolet</u>, No. CV-F-05-
>           1630 OWW DLB, <u>Byrd v. Teater</u>, No. CV-F-06-
>           00900 OWW GSA, and <u>Hoffman v. Memorial
>           Medical Center</u>, No. CV-F-04-5714 AWI DLB, as
>           well as this action.

(Doc. 49, ¶ 1).  Plaintiff's ex parte application was heard on January 4, 2008.  By Minute Order filed on January 4, 2008, Plaintiff's request for a 90 day continuance was granted; Plaintiff's response to the motion for summary judgment was due by April 4, 2008; reply briefs due by April 18, 2008; and the hearing on the motion for summary judgment was set for May 5,

2008.  The pretrial conference and trial dates were vacated and a further scheduling conference to revise the trial schedule was set for May 30, 2008.  Defendants' counsel was instructed to prepare a written Order reflecting the Court's rulings.  A proposed Order was lodged by Defendants' counsel on January 29, 2008 (Doc. 53).  Plaintiff objected to the proposed Order, contending that the Court had ruled on January 4, 2008 that Plaintiff could file the amended complaint and objecting that the proposed Order limits permissible additional depositions to those witnesses whose affidavits were submitted by Defendants in support of their motion for summary judgment  (Doc. 54).  On January 31, 2008, Plaintiff filed a First Amended Complaint (Doc. 57).  The Court ordered a hearing on the dispute concerning Defendants' proposed Order for February 1, 2008 (Doc. 58). Because the conference call was not successfully coordinated, the hearing on the proposed Order was continued to February 4, 2008 (Doc. 59).  The Order Granting Plaintiff's Ex Parte Application for Continuance of Hearing Date for Pending Summary Judgment Motion and For Related Necessary Relief was filed on February 25, 2008 (Doc. 67).  After reciting the dates for completion of briefing and hearing of the summary judgment motion, the First Amended Complaint filed on January 31, 2008 was stricken; Plaintiff was ordered to file a motion for leave to amend by February 11, 2008; Defendants opposition was ordered to be filed by February 22, 2008, and no reply brief was allowed.  The Court expressly stated at the February 4, 2008 hearing: "Then from the

time that your motion is filed, the defendants will have ten days to respond and then we'll hear that motion, no reply." (Doc. 64, CT, 14:20-22). Notwithstanding this explicit order, on February 26, 2008 at 3:35 p.m., Mr. Little filed "Plaintiff's Supplemental Brief in Further Support of Motion for Leave to File Amended Complaint" (Doc. 68). By Minute Order filed on March 3, 2008, Plaintiff's motion to file the Amended Complaint was granted.

Defendants argue that the Amended Complaint, as well as the arguments of counsel in response to the summary judgment motion, changed the nature and complexity of the case. Defendants argue that the Court should exercise its discretion by excluding the delay between the time Mr. Little specially appeared to request leave to amend and the filing of the Amended Complaint in the calculation of prejudgment interest. Defendants request that prejudgment interest be limited to a period of 40 months, i.e., August 25, 2004 to November 25, 2006, minus 23 months, i.e., 3.33 years.

Plaintiff replies that he did not delay the prosecution of this action. Referring to the November 20, 2006 Minute Order (Doc. 35), granting Plaintiff's motion to vacate pretrial dates, Plaintiff contends that the court found good cause for the delay because of Mr. Little's substitution. Plaintiff refers to the Stipulation and Order filed on July 5, 2007, (Doc. 43), where the parties agreed to extend the pretrial and trial dates "[d]ue to a confluence of circumstances affecting the schedules of plaintiff's counsel and certain key witnesses, as well as the

8

unintended failure to file a prior duly executed stipulation."

Plaintiff contends that the belated filing of the Amended Complaint did not delay disposition of Defendants' summary judgment motion in any substantial way.  The summary judgment motion was filed on December 3, 2007 and noticed for hearing on January 14, 2008.  As noted above, it was continued for 90 days at Plaintiff's request and then delayed further because of Plaintiff's belated attempts to file the Amended Complaint. After leave to file the Amended Complaint was granted, Defendants filed a motion to dismiss.  The summary judgment motion was to be heard on June 30, 2008, but was continued because of the Court's schedule (Doc. 83).  The motion for summary judgment and the motion to dismiss were heard on August 4, 2008 and ruled on by Memorandum Decision filed on September 17, 2008.  (Doc. 92).

The period from December 17, 2007, through August 4, 2008 must be excluded.

Plaintiff asserts that, "as the time records attached an [sic] exhibit to plaintiff's attorney's fees motion confirms," Plaintiff performed many "necessary tasks during the subject time period, including responding to propounded discovery, propounding discovery, submitting plaintiff for his deposition, and doing necessary factual and legal research."

Plaintiff contends that Defendants were also responsible for delay of this action, "as a result of changing counsel in January 2009, by failing to comply with their 2006 and 2007 discovery obligations until April and May 2009, and by continuing this

trial until September 2009." Mr. Ratliff, who was counsel for Defendants, left the law firm without complying with certain discovery tasks and without reviewing the file with other counsel before he left. This necessitated some of the delay after the motions for summary judgment and to dismiss were resolved. Plaintiff's request for prejudgment interest will be redacted for a period of time due to Mr. Little's delay in prosecuting this action. All he had to do was formally substitute as counsel and file an Amended Complaint in accordance with court orders. He did not do so. Defendants should be not penalized monetarily for his delay.

Plaintiff, asserting that the prejudgment interest rate is the same as the postjudgment interest rate, contends that the postjudgment interest rate applicable to the date of accrual of his Section 1983 claims, i.e., August 25, 2004, is 1.98%.

Defendants oppose this rate, citing *Saavedra v. Korean Air Lines Co., Ltd.*, 93 F.3d 547, 555 (9th Cir.), *cert. denied*, 519 U.S. 1029 (1996):

> Saavedra argues that the district court erred by setting prejudgment interest at the 52-week T-Bill rate in effect just before judgment, rather than at the higher rate available right before the KE007 disaster. We review a district court's decision to assess prejudgment interest rates for abuse of discretion ....
>
> Saavedra contends, correctly, that prejudgment interest is a compensatory measure ... Saavedra is incorrect, however, that the district court was required to choose the higher interest rate at the date of the crash in order to achieve adequate

> compensation.  The most accurate way to fully compensate a plaintiff would be to award prejudgment interest from the date of injury, but at a fluctuating rate.  *See generally, MHC, Inc. v. Oregon Dep't of Revenue*, 66 F.3d 1082, 1090-91, n. 10, n. 11).  None of the parties presented this option to the district court.  Instead, Saavedra argued for the T-Bill rate just before the time of injury, while KAL argued for the T-Bill rate just before the time of judgment.  We find that the district court, presented with these choices, did not abuse its discretion.
>
> Indeed, the district court's decision is consistent with 28 U.S.C. § 1961(a), which states that post-judgment interest should be set at the T-Bill rate 'settled immediately prior to the date of judgment.'  Although this section governs post-judgment interest, this court has applied its presumption in favor of using T-Bill rates in the context of prejudgment interest ... As we have previously used § 1961(a) as a yardstick for prejudgment interest, we would be remiss to hold the district court abused its discretion in following the dictates of § 1961(a).

28 U.S.C. § 1961(a) provides that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.  Although Section 1961(a) does not speak to prejudgment interest, the Ninth Circuit, in *Western Pacific Fisheries, supra*, 730 F.2d at 1289, held that the same rate should be applied to prejudgment interest "unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate."

Defendants contend that the applicable rate at the time of

11

the Judgment on September 24, 2009 was .40%, and that this rate should be applied.  Plaintiff replies that the interest rate must be the rate applicable immediately prior to the date of the wrongful conduct which caused plaintiff's loss.   Plaintiff cites *United States v. Gordon*, 393 F.3d 1044, 1058 n.12 (9th Cir.2004):

> Gordon argues that the district court abused its discretion in not using the then current 1.25% interest rate.  Under federal law the rate of prejudgment interest is the Treasury Bill rate as defined in 28 U.S.C. § 1961, unless the district court finds on substantial evidence that a different prejudgment interest rate is appropriate. *See Blanton v. Anzalone (II)*, 813 F.2d 1574, 1576 (9th Cir.1987); *Blanton v. Anzalone (I)*, 760 F.2d 989, 992-93 (9th Cir.1985).  We have held that the applicable prejudgment interest rate is the one in effect immediately *prior* to the date of the wrongful conduct which caused a plaintiff's loss. *See Anzalone I*, 760 F.2d at 992-93.

Plaintiff's position is legally incorrect.  The Court is not "required" by Ninth Circuit authority to apply the rate in effect at the time of the wrongful conduct; it has discretion to do so.  As noted, Ninth Circuit authority also applies the rate in effect at the time of judgment, as not an abuse of discretion.

## CONCLUSION

An award of prejudgment interest is compensatory and within the Court's discretion.  Here, prejudgment interest will be awarded from August 25, 2004 to November 23, 2009, less the periods from December 2, 2005, through July 5, 2007, and from December 17, 2007, through August 4, 2008, because of Plaintiff's inexcusable delay in the prosecution of this action.  The rate

**for prejudgment interest shall be determined from the fluctuating 52-week T-Bill rate in effect during this period.  Plaintiff shall prepare and lodge within five (5) days an Order setting forth the calculation of and amount of prejudgment interest to be awarded in accordance with this Memorandum Decision.**

IT IS SO ORDERED.

**Dated:   November 30, 2009**               /s/ Oliver W. Wanger
                                           UNITED STATES DISTRICT JUDGE