**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| DANIEL E. RUFF, | ) | No. CV-F-05-631 OWW/GSA |
| | ) | |
| | ) | MEMORANDUM DECISION AND |
| | ) | ORDER DENYING WITHOUT |
| Plaintiff, | ) | PREJUDICE PLAINTIFF'S MOTION |
| | ) | FOR DECLARATORY AND |
| vs. | ) | ANCILLARY RELIEF UNDER 28 |
| | ) | U.S.C. §§ 2201 AND 2202 |
| | ) | (Doc. 199) |
| COUNTY OF KINGS, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

By jury verdict entered on September 23, 2009 (Doc. 194),
the jury found that Plaintiff "proved by a preponderance of the
evidence" that Defendants William Zumwalt and Sandy Roper
"violated [Plaintiff's] right to procedural due process under the
Fourteenth Amendment" and that Plaintiff "proved by a
preponderance of the evidence that the violation of his right to
procedural due process by any defendant was a cause of harm or
damage" to Plaintiff.  The jury found that Plaintiff had not
proved that any of the individual defendants violated Plaintiff's
right to substantive due process under the Fourteenth Amendment

1

or violated Plaintiff's right to equal protection of the law under the Fourteenth Amendment and found that the violation of procedural due process was not the result of a custom, policy or practice of the County of Kings.  The jury awarded monetary damages against Defendant Zumwalt in the amount of $140,000 and against Defendant Roper in the amount of $60,000 but did not award punitive damages.

By the Fourth Cause of Action of Plaintiff's First Amended Complaint, Plaintiff sought "a declaration from this Court that, based on the factual transactions underlying this proceeding, his rights ... were violated,""remedial orders requiring the County of Kings to repeal the illicit plan amendment, to permit Ruff to proceed with his recycling center forthwith, and to prevent future such actions in this County by its officials," and "further necessary and proper relief as provided under 28 U.S.C. § 2202."

Plaintiff now moves for declaratory and ancillary relief pursuant to 28 U.S.C. §§ 2201 and 2202.  Specifically, Plaintiff requests: (1) a declaration that Defendants William Zumwalt and Sandy Roper violated Plaintiff's rights to procedural due process under the Fourteenth Amendment to the United States Constitution; (2) a declaration that, in light of these constitutional violations, the December 23, 2003 amendments to Goal 3 of the Kings County General Plan, including Land Use Policy 3.4a, which otherwise became effective on January 22, 2004, cannot be applied to Plaintiff's July 14, 2004 application for site plan review;

(3) an ancillary order and/or injunction directing the Kings County Planning Department to grant Plaintiff's July 14, 2004 application for site plan review forthwith; (4) an ancillary order and/or injunction directing the Defendants to pay the damages assessed against him forthwith; and (5) an ancillary order and/or injunction providing that any unreasonable delay in the approval of Plaintiff's site plan review application, or obstruction of Plaintiff's subsequent activity to the issued site plan review permit, will constitute contempt of court and subject the responsible parties to sanctions.

28 U.S.C. § 2201(a) provides:

> In a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2202 provides that "[f]urther or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

It is well-settled that the Declaratory Relief Act's "actual controversy" requirement is the same as the case or controversy requirement of Article III of the United States Constitution. *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.,* 655 F.2d 938, 942 (9th Cir.1981), citing *Aetna Life Ins. Co. v.*

*Haworth*, 300 U.S. 227, 239-240 (1937).  The Act requires no more stringent showing of justiciability than the Constitution does. *Societe de Conditionnement*, 655 F.2d at 942.  Issuing a declaratory judgment in a case without an actual controversy is an advisory opinion, which is prohibited by Article III. *Hillblom v. United States*, 896 F.2d 426, 430 (9th Cir.1990):

> A 'controversy' in this sense must be one that is appropriate for judicial determination ... A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot ... The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests ... It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna,* 300 U.S. at 240-241.  A controversy exists justifying declaratory relief only when the challenged government activity has not disappeared or evaporated, and, "by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties."  *Headwaters, Inc. v. Bureau of Land Management*, 893 F.2d 1012, 1015 (9th Cir. 1999).

The granting of declaratory relief "'rests in the sound discretion of the [] court exercised in the public interest.'" *Natural Resources Defense Council, Inc. v. U.S. E.P.A.,* 966 F.2d 1292, 1299 (9th Cir.1992).  The guiding principles are whether a judgment will clarify and settle the legal relations at issue and

4

1   whether it will afford relief from the uncertainty and

2   controversy giving rise to the proceedings.  *McGraw-Edison Co. v.*

3   *Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir.), *cert.*

4   *denied*, 385 U.S. 919 (1966).  A declaratory judgment may be the

5   basis of further relief against the adverse party.  *Public*

6   *Service Commission of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 245

7   (1952).  As explained in *Horn & Hardart Co. v. National Rail*

8   *Passenger Corp.*, 843 F.2d 546, 548 (D.C.Cir.1988):

9          The 'further relief' provision[] of ... [the]
          federal declaratory judgment statute[]
10         clearly anticipate[s] ancillary or subsequent
          coercion to make an original declaratory
11         judgment effective ... Section 2202's
          retained authority, commentators have noted,
12         'merely carries out the principle that every
          court, with few exceptions, has inherent
13         power to enforce its decrees and to make such
          orders as may be necessary to render them
14         effective.'

15      "The existence of another adequate remedy does not preclude

16   a declaratory judgment that is otherwise appropriate."  Rule 57,

17   Federal Rules of Civil Procedure.

18      A.  <u>Declaration that Defendants William Zumwalt and Sandy</u>

19   <u>Roper violated Plaintiff's rights to procedural due process under</u>

20   <u>the Fourteenth Amendment to the United States Constitution</u>.

21      Plaintiff argues that he is entitled to this declaration

22   based on the jury's verdict.

23      Defendants oppose this request.  Defendants cite *Gruntal &*

24   *Co., Inc. v. Steinberg*, 837 F.Supp. 85, 89 (D.N.J.1993): "A

25   declaratory judgment is inappropriate solely to adjudicate past

26   conduct."  Defendants also cite *Poole v. Taylor*, 466 F.Supp.2d

5

578, 584 (D.Del.2006): "[I]t is not meant simply to proclaim that one party is liable to another."  Defendants also cite *Diaz-Fonseca v. Puerto Rico,*, 451 F.3d 13, 40 (1st Cir.2006):

> While '[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief where it is appropriate,' Fed.R.Civ.P. 57, plaintiffs are not entitled to use the declaratory judgment device as an instrument to double their recovery, in the absence of any authority allowing for double damages.

Plaintiff responds that the cases upon which Defendants rely are distinguishable.  His requests for declaratory relief "are designed to address the defendants' future conduct and to provide him with prospective relief that will afford him a full remedy for the violation of his procedural due process rights."  Plaintiff contends that *Diaz-Fonseca* is inapplicable because there, the declaratory relief sought was that Plaintiff was fully compliant with the IDEA when she unilaterally enrolled her child in a private school and was thus entitled to reimbursement of educational expenses.  Because the requested declaration duplicated the jury's verdict, the First Circuit ruled that declaratory relief was an inappropriate double recovery.  Plaintiff contends:

> Whether the Court sees fit to reiterate the jury's verdict as the basis for the declaratory judgment or otherwise refer to it is immaterial to plaintiff, so long as the declaratory judgment is sufficiently specific and self-contained so that he does not suffer procedural delay in order to seek clarification thereof.

The monetary judgment for violation of Plaintiff's

6

procedural due process rights affords complete relief.  Plaintiff presented the jury with damage claims that included the value of the real property as a developed recycling facility, but also for alleged lost income from future operations.  There is no suggestion of future Fourteenth Amendment violations by either individual defendant that require declaratory relief.  Defendant Zumwalt is retired.

B.  <u>Declaration that, in light of these constitutional violations, the December 23, 2003 amendments to Goal 3 of the Kings County General Plan, including Land Use Policy 3.4a, which otherwise became effective on January 22, 2004, cannot be applied to Plaintiff's July 14, 2004 application for site plan review</u>.

Plaintiff asserts that the jury's verdict "necessarily is based on this determination" because Plaintiff's sole theory at trial was that he was denied constitutionally adequate notice of the "subject amendments."

Defendants respond that the jury has already decided this issue.  Defendants refer to Jury Instruction No. 14:

> <u>SUBSTANTIVE DUE PROCESS - ELEMENTS AND BURDEN OF PROOF</u>
>
> Plaintiff's substantive due process claims are based on:
>
> 1.  Defendants' alleged unjustified delay in processing plaintiff's Site Plan Review application for the 10th Avenue real property;
>
> 2.  Defendant's [sic] application of the Amended General Plan to plaintiff's Site Plan Review Application for the 10th Avenue real property; and

7

          **3.   Defendant's alleged hurried amendment of the Kings County General Plan.**

          **Plaintiff must establish by a preponderance of the evidence that the defendants' actions were clearly arbitrary and unreasonable, having no substantial relation to the public health, safety or general welfare.**

The jury found in favor of Defendants on this claim.  The jury was instructed as to Plaintiff's procedural due process claim in Jury Instruction Nos. 11 and 12, respectively:

          <u>PROCEDURAL DUE PROCESS - ELEMENTS AND BURDEN OF PROOF</u>

          **In order for the plaintiff to prove his procedural due process claim, in addition to the prior elements [defendants acted under color of law and deprived Plaintiff of his particular rights under the Fourteenth Amendment], he must establish the following by a preponderance of the evidence:**

          **1) That a protected property interest was taken from him by one or more of the defendants; and**

          **2) That the procedural safeguards surrounding the taking of the property interest were inadequate.**

          <u>PROCEDURAL DUE PROCESS - PUBLIC NOTICE CONTENT</u>

          **The content of a notice of a public hearing must include the date, time and place of the public hearing, the identity of the hearing body or officer, a general explanation of the matter to be considered, and a general description, in text or by diagram, of the location of the real property that is the subject of the hearing.**

Defendants cite *Allan Block Corp. v. County Materials Corp.*, 512 F.3d 912 (7th Cir.2008).  In *Allen Block*, the plaintiff filed suit alleging breach of two licensing contracts.  The jury

8

awarded the plaintiff monetary damages.  The plaintiff then obtained an injunction from the court extending the term of covenants not to compete in the licensing agreements.  The plaintiff was entitled, pursuant to the licensing contracts, to relief for breach of the covenants not to compete, but not for an extension of them after they expired.  512 F.3d at 917-918.  The Seventh Circuit ruled:

> Allen Block did sue for damages for breach of the covenants, even though the trial took place only two months before they expired and there is no indication that anything happened in that last two months to harm the firm. The fact that a jury awards zero damages does not mean that damages could not be calculated and so could not provide an adequate remedy; it could just mean that the plaintiff was not injured.  To allow a plaintiff to base a claim for an injunction on an *adverse* jury verdict would be topsy-turvy.

*Id.* at 919.

Defendants argue that the jury found that plaintiff had failed to prove that the contents of the amended General Plan were substantively flawed or that Plaintiff's substantive due process rights were violated.  They contend that the jury's verdict should bind the court and compel denial of the requested declaratory relief.  Based on the jury's verdicts, the General Plan amendment was not unlawful.  Rather, the failure to give notice and timely process the application for site plan review violated Plaintiff's procedural due process rights.  In effect, Plaintiff argues his application for site plan review he sought should be analyzed as if the General Plan amendment had not been

adopted.   An infirmity to this contention is that Plaintiff did not have a valid application for site plan review on file with Kings County.

Defendants also cite *Beacon Construction v. Matco Electric Company, Inc.*, 521 F.2d 392, 398 (2nd Cir.1975):

> As noted in *Braden v. 30th Judicial Circuit Court of Commonwealth of Kentucky*, 454 F.2d 145, 147 n.1 (6th Cir.1972), *rev'd on other grounds*, 410 U.S. 484 ... (1973), it is clear that under Rule 57 'a court has Power to grant declaratory relief when another adequate remedy is available, although it may, in the exercise of its discretion, decline to do so.  "The test is whether or not the other remedy is more effective or efficient, and hence whether the declaratory action would serve a useful purpose."  6A J. Moore, Federal Practice § 57.08(3), at 3031-32.'

Defendants assert that the jury found that Plaintiff's right to procedural due process had been violated.  Defendants contend:

> The evidence presented during trial was that the purchase price of the property at issue was $170,000.00.  In finding for the plaintiff on this single claim, the jury awarded the plaintiff $200,000.00.  It is clear from this award that the jury adequately compensated the plaintiff for his alleged loss on those claims he was able to sufficiently prove and prevail.  This remedy to which the plaintiff availed himself was effective and efficient and therefore to now issue a declaratory judgment in the plaintiff's favor, in direct contradiction to the jury's findings, would serve no useful purpose.

Plaintiff replies that Defendants "misconstrue the jury's verdicts on plaintiff's substantive due process and equal protection claims as specific findings their actions were

constitutional."  Plaintiff notes that the verdicts merely asked the jury whether Plaintiff had established by a preponderance of the evidence the claimed violations of substantive due process and equal protection; the verdicts did not ask the jury to determine that Defendants' actions were constitutional. Plaintiff asserts that there is no inconsistency between the relief requested by him as to his procedural due process claim and the jury's verdicts as to the substantive due process and equal protection claims.  Plaintiff cites *International Ground Transp. v. Mayor and City Council of Ocean City*, 475 F.3d 214, 219-220 (4th Cir.2007):

> The City first asserts that it is entitled to judgment as a matter of law because a finding that the individual defendants were not liable precludes a finding that the City is liable.  We disagree.
>
> In support of its position that it cannot be held liable, the City relies primarily on *City of Los Angeles v. Heller*, 475 U.S. 796 ... (1986), and *Grayson v. Peed*, 195 F.3d 692 (4th Cir.1999).  In *Heller*, the Supreme Court held that a municipality may not be found liable for a constitutional violation in the absence of an unconstitutional act on the part of at least one individual municipal actor.  475 U.S. at 798-99 ... We reaffirmed this principle in *Grayson* and have applied it many times in the context of § 1983 actions.
>
> Nevertheless, we recognize that, despite the general bar to municipal liability set out in *Heller*, a situation may arise in which a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality.  Namely, such a verdict could result when the individual defendants successfully assert a qualified immunity defense.  This case presents exactly this

11

1    situation.

2        ...

3        ... We hold, therefore, that when a jury,
         which has been instructed on a qualified
4        immunity defense as to the individual
         defendants, returns a general verdict in
5        favor of the individual defendants but
         against the municipality, the verdict is
6        consistent and liability will lie against the
         municipality (assuming the verdict is proper
7        in all other respects).

8        In this case, the verdict form shows that the
         jury found that the City deprived IGT of
9        procedural and substantive due process but
         that the individual defendants did not.  The
10       City argues that these findings trigger
         application of the *Heller* rule and require
11       that judgment as a matter of law be entered
         in its favor.  However, the jury was
12       instructed that it could find the individual
         defendants not liable based on qualified
13       immunity.  Thus, the jury could have found
         that constitutional violations were committed
14       but that the individual defendants were
         entitled to immunity.  Indeed, this is the
15       only way the jury's verdict may be read
         consistently, and we must 'harmonize
16       seemingly inconsistent verdicts if there is
         any reasonable way to do so.' ....

17
         For the same reason, we cannot accept the
18       City's argument that the precise language of
         the verdict form necessitates a finding of no
19       liability on the part of the City.  Although
         it is true that the questions asked whether
20       the jury found that the individual
         defendants, *e.g.,* 'deprived White's Taxi of
21       procedural due process' and not simply
         whether the individual defendants were
22       liable, we find the distinction made
         meaningless by the submission of qualified
23       immunity to the jury.  The jury was
         specifically instructed that it could find
24       the individual defendants not liable based on
         qualified immunity.  However, the verdict
25       form submitted to the jury allowed the jury
         to find that the individual defendants
26       committed constitutional violations but were

                              12

1      not entitled to qualified immunity only by
2      checking the 'No' answers to the questions
   asked regarding the individual defendants
3      (*e.g.* 'Do you find that the following persons
   deprived White's Taxi of procedural due
4      process?').  The City, in fact, conceded at
   oral argument that there was no way for the
5      jury to find that qualified immunity applied
   except by answering 'No' to the questions
6      asking whether the individual defendants had
   committed constitutional violations.
7      Moreover, because the jury made specific
   findings that the City had committed
8      constitutional violations, the only way to
   read the jury's verdict consistently is to
9      read the questions asked of the individual
   defendants as encompassing qualified
10     immunity.  As we are required 'to determine
   whether a jury verdict can be sustained, on
11     any reasonable theory,' ... we must conclude
   that the language of the verdict form
12     permitted the jury to find that the
   individual defendants committed
13     constitutional violations but were entitled
   to qualified immunity.

14     In this case, under Ninth Circuit law, the issue of

15   qualified immunity was not submitted to the jury.

16     Plaintiff also cites *Floyd v. Laws*, 929 F.2d 1390, 1396 (9th

17   Cir.1991):

18      In *Gallick v. Baltimore & O.R.R. Co.,* 372
   U.S. 108, 110 ... (1963), the United States
19      Supreme Court held that, when confronted by
   seemingly inconsistent answers to the
20      interrogatories of a special verdict, a court
   has a duty under the seventh amendment to
21      harmonize those answers, if such be possible
   under a fair reading of them.  *Id.* at 119 ...
22      A court is also obligated to try to reconcile
   the jury's findings by exegesis, if
23      necessary.  *Id.*  Only in the case of fatal
   inconsistency may the court remand for a new
24      trial.

25   Finally, Plaintiff cites *Grant v. Westinghouse Elec. Corp*, 877

26   F.Supp. 806, 813 (E.D.N.Y.1995)("[B]ased on the evidence

presented, the chronological reference points for determining the negligent failure to warn claim and the strict products liability failure to war claim were not necessarily identical. Accordingly, the jury's findings may be reconciled.").

Plaintiff's arguments in his reply brief are obscure. Defendants do not contend that the verdicts were inconsistent. To the contrary, the jury found that Plaintiff's substantive due process and equal protection rights under the Fourteenth Amendment were not violated by any Defendants' actions. Necessarily the jury concluded that Defendants did not violate these constitutional rights.  If Defendants did not violate Plaintiff's substantive due process and equal protection rights, Plaintiff cannot now argue that he is entitled to declaratory relief that the December 23, 2003 amendments to Goal 3 of the Kings County General Plan, including Land Use Policy 3.4a, which became effective on January 22, 2004, cannot be applied to Plaintiff's July 14, 2004 application for site plan review.  The cases upon which Plaintiff relies are inapposite. *International Ground Transp.* involved the liability of the public entity when the individual defendants were entitled to qualified immunity. *Floyd* and *Grant* involved inconsistent verdicts, also not an issue here.

Plaintiff reiterates that denial of the requested declaratory relief will deny him a full remedy for the unconstitutional conduct found by the jury.  The only unconstitutional conduct was the infirmity in the notice.

Plaintiff is not entitled to more than a money judgment.

C. **Ancillary order and/or injunction directing the Kings County Planning Department to grant Plaintiff's July 14, 2004 application for site plan review forthwith**.

Plaintiff asserts that each of the individual Defendants testified at trial that Plaintiff's July 14, 2004 application for site plan review would have been granted, but for the the December 23, 2003 amendments to Goal 3 of the Kings County General Plan, including Land Use Policy 3.4a, which otherwise became effective on January 22, 2004.  Plaintiff asserts that the individual Defendants testified that all of the reasons set forth in the August 25, 2004 denial letter were based upon the amended Land Use Policy 3.4a.  Plaintiff contends that, under California Government Code § 65952.2, all of the reasons for disapproval of Plaintiff's application for site plan review had to be set forth in the denial letter.  Therefore, Plaintiff argues, the requested ancillary order/injunction merely holds Defendants to their sworn testimony and applicable law.

Defendants respond that Plaintiff cites no authority that the Court can order Defendants to grant Plaintiff's application for site review, notwithstanding the requirements of the California Government Code and the General Plan as amended. Again, Defendants note that Plaintiff prevailed only on his claim of deprivation of procedural due process.  Defendants assert:

> During the trial plaintiff was given full opportunity to present proper evidence that he attempted on several occasions to submit

his application for a Site Plan Review prior
to the December 23, 2003 hearing on the
proposed amendment to the General Plan, or
prior to January 22, 2004, when the amended
General Plan took effect.  Plaintiff failed
to present any documentation of other
applications, drawings, or other writings
which may have potentially been construed as
an attempt to submit an application.  Rather,
the only evidence presented in support of his
claim was the July 14, 2004 application.  The
evidence presented to the jury was that the
plaintiff's application was submitted to the
defendants the first time on July 14, 2004 -
more than six months after the General Plan
had been amended.

Plaintiff replies that the jury verdicts are not
inconsistent, *see discussion supra*.  Plaintiff further argues
that, by contending that Plaintiff will be required to comply
with additional procedures prior to having his "permit" granted,
Defendants are changing their position taken at trial where the
individual defendants testified that Plaintiff's site plan review
application would have been granted but for the enactment of Land
Use Policy 3.4a.  Plaintiff asserts that Defendants are
judicially estopped from seeking to impose additional conditions
on passage of Plaintiff's site plan review application.

Determining whether judicial estoppel should be invoked in
informed by several factors: (1) whether a party adopts a
position clearly inconsistent with its earlier position; (2)
whether the court accepted the party's earlier position; and (3)
whether the party would gain an unfair advantage or impose an
unfair detriment on the opposing party if not estopped.  *New
Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001).  Plaintiff is

16

correct that there was no reason for denial of the application for site plan review, except the change to the land use element of the General Plan.

Plaintiff replies that the Court found and instructed the jury that all of the grounds for denying the site plan review application had to be set forth in the denial letter; therefore, Defendants' assertion that adding this ground is an impermissible request for reconsideration.

Defendants further argue that Plaintiff has not established that he is entitled to injunctive relief.  As explained in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006):

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction ... The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.

Defendants argue that Plaintiff has not shown that he has suffered an irreparable injury for which legal remedies are inadequate.  The jury awarded $200,000 in damages and Plaintiff paid only $170,000 for the property at issue.  Furthermore, Plaintiff always had the right to appeal the denial of his site plan review application or annex to the City and move forward

17

with his project.

Plaintiff replies:

> [D]espite the jury's verdict that Land Use Policy 3.4(a) violated plaintiff's procedural due process rights, that he should nonetheless be required to appeal the denial of his permit administratively or apply for incorporation with the City of Hanford before his harm is deemed irreparable.  However, requiring the plaintiff to take either of these steps would give validity to the very land use policy the jury found violated plaintiff's procedural due process rights, since said policy represents the only basis upon which plaintiff's permit was denied and upon which incorporation was required.  Such a result would clearly make a mockery of and be inconsistent with the jury's verdict.

Plaintiff appears to misconstrue Defendant's position on irreparable injury for injunctive relief.  Defendants do not assert that Plaintiff must *now* appeal administratively or seek annexation.  Rather, Defendants accurately argue that Plaintiff's timely failure to do so in state court when his application was denied negates irreparable injury.  Plaintiff's procedural due process claim centered on the inadequate notice of the public hearing for the amendments to the General Plan.  Plaintiff appears to conflate the procedural due process claim he won on with the substantive due process claim that he lost.  Plaintiff sought damages for all harm caused by the violation of his Fourteenth Amendment procedural due process rights related to his application for site plan review for approval of a recycling center.  There is no lucid argument from Plaintiff that he has not been fully compensated.

18

The parties were given leave at the hearing to file supplemental briefs whether approval of Plaintiff's application for site plan review was a ministerial, rather than a discretionary act.

"'When the effect of a mandatory injunction is the equivalent of mandamus, it is governed by the same standard.'" *Alliedsignal, Inc. v. City of Phoenix,* 182 F.3d 692, 697 (9th Cir.1999), quoting *Oregon Natural Resources Council v. Harrell,* 52 F.3d 1499, 1508 (9th Cir.1995). "Mandamus is an extraordinary remedy." *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir.1994). "A writ of mandamus is appropriately issued only when (1) the plaintiff's claim is 'clear and certain'; (2) the defendant official's duty to act is ministerial, and 'so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available." *Id.* As explained in *Coachella Valley Unified School Dist. v. State of California*, 176 Cal.App.4th 93, 113 (2009):

> A party may seek relief by way of ordinary or traditional mandamus 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station ....' (Code Civ. Proc., § 1085, subd. (a).)  Thus mandate will lie to compel the performance of a clear, present and ministerial duty on the part of the respondent where the petitioner has a beneficial right to performance of this duty. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 868 ....; *City of Gilroy v. State Bd. of Equalization* (1989) 212 Cal.App.3d 589, 607 ... A ministerial act is one that a public functionary '"'is required to perform in a prescribed manner in obedience to the mandate of legal authority,'"' without regard to his or her own judgment or opinion concerning the

propriety of such act.  (*Ridgecrest Charter
School v. Sierra Sands Unified School Dist.*
(2005) 130 Cal.App.4th 986, 1002 ... And,
while a party may not invoke the remedy to
force a public entity to exercise
discretionary powers in any particular
manner, if the entity refuses to act, mandate
is available to compel the exercise of those
discretionary powers in some way.  (*Sego v.
Santa Monica Rent Control Bd.* (1997) 57
Cal.App.4th 250, 255 ... Finally, mandamus
may also issue to correct the exercise of
discretionary legislative power, but only
where the action amounts to an abuse of
discretion as a matter of law because it is
so palpably unreasonable and arbitrary.
(*Carrancho v. California Air Resources Board*
(2003) 111 Cal.App.4th 1255, 1264-1265 ....

Plaintiff argues that evidence presented at trial
establishes that approval of his application for site plan review
is ministerial.  Plaintiff refers to Plaintiff's Exhibit 56-1,
Section 1305C:

Sec. 1305 CS Commercial service district

...

C.  Permitted uses, site plan review:

The following uses may be permitted in
accordance with the provisions of Article 21:

1.  Commercial service establishments
including:

...

Recycling centers for aluminum cans, glass
bottles, plastic bottles, and paper from
households and small businesses.

Plaintiff refers to Plaintiff's Exhibit 56-3:

ARTICLE 21.   SITE PLAN REVIEW

Sec. 2101.  Purposes and application

> The purpose of the site plan review is to enable the zoning administrator to make a finding that the proposed development is in conformity with the intent and provisions of this ordinance and as a guide for the issuance of building permits.  The site plan review shall be deemed to be part of the conditional use permit and planned unit development process.  The provisions of this Article shall apply to any use listed within a particular zoning district as a permitted use subject to site plan review.
>
> Development of uses requiring site plan review are *ministerial* projects, and as such, they are exempt from environmental review under the California Environmental Quality Act (CEQA), Public Resources Code Section 21000, et seq., and the Kings County CEQA Implementation procedures.
>
> Compliance with the provisions of this article shall not be deemed to be in lieu of satisfaction of federal, state, regional, special district, or other county regulatory requirements.
>
> Sec. 2102.  Site plan review application and fee.
>
> ...
>
> C.  Within fifteen (15) working days after the application for a site plan review has been certified as complete by the zoning administrator, the zoning administrator shall issue an approval of the site plan review, or reject the site plan review application if it fails to meet the required standards ....
>
> ....

(Emphasis added).  Plaintiff also refers to Plaintiff's Exhibit 54-1, the August 25, 2004 letter to Plaintiff from Defendant Zumwalt rejecting Plaintiff's application:

> **FINDINGS**
>
> Your application for Site Plan Review No. 04-

21

> 36, a proposal to establish a commercial
> recycling center to accept recycle material
> from the public located at 11180 S. 10th
> Avenue, (Assessor's Parcel No. 018-150-010)
> is denied.  I have made the following
> findings which require that this application
> be denied:
>
> 1.   The proposed project is a *Ministerial*
> project, and is exempt from an environmental
> review under <u>Section 15268</u> of the *California
> Environmental Quality Act (CEQA)* guidelines,
> implemented through Kings County Board of
> Supervisors *Resolution No. 03-106*, adopted
> October 22, 2003.  In addition, pursuant to
> Section 15270 of the CEQA Guidelines, CEQA
> does not apply to projects which are rejected
> or disapproved by the permitting authority.
>
> ....

(Emphasis added).   Plaintiff argues that these documents
demonstrate that review and approval of his application for site
plan review was a ministerial, not discretionary act.

Plaintiff asserts that Defendant Mark Sherman testified
about the distinctions between site plan review and a conditional
use permit.  Specifically, Plaintiff asserts, Defendant Sherman
testified that, in the site plan review context, if an applicant
meets the stated requirements, he gets the "permit" within the
prescribed 15 day review period after the application is deemed
final and fully complaint.  Plaintiff further asserts that his
expert, Dr. Barrett Kays, testified about the distinctions
between the site plan review and conditional use permit processes
and "reached a similar conclusion, i.e., that the former is a
ministerial rather than discretionary process."  This is a
conclusion of law which Dr. Kays was not qualified to express.

22

Defendants contend that Plaintiff's analysis is incomplete because it does not recognize that Defendant Zumwalt, as the planning director-zoning administrator, is initially charged with determining if Plaintiff's application for site plan review complied with the requirements of local zoning ordinances. Defendants refer to Section 2101 of Article 21 that "[t]he purpose of the site plan review is to enable the zoning administrator to make a *finding* that the proposed development is in conformity with the intent and provisions of this ordinance and as a guide for the issuance of building permits." (Emphasis added).  Defendants also refer to Section 2102C: "Within fifteen (15) working days after the application for a site plan review has been certified as complete by the zoning administrator, the zoning administrator shall issue an approval of the site plan review, *or reject the site plan review application if it fails to meet the required standards.*" (Emphasis added).

Plaintiff cites *Land Waste Management v. Contra Costa County*, 222 Cal.App.3d 950, 958-959 (1990):

> [A] land-use permit which is inconsistent with existing zoning ordinances can be issued only by a responsible administrative entity only after the applicable ordinances have been amended by the legislative process.  In turn, where the proposed changes in the zoning ordinance are inconsistent with the general plan, the two must also be brought into conformity ... Such changes cannot be made by an administrative body such as the planning commission in this case; they must be made by the governing legislative body pursuant to prescribed procedures.  Issuance of a permit inconsistent with zoning ordinances or the general plan may be set

1          aside and invalidated as ultra vires ....

2          ...

3          ... Under established law, local government
           agencies are *powerless* to issue land-use
4          permits which are inconsistent with governing
           legislation.
5
Defendant Zumwalt reviewed Plaintiff's application for site plan
6
review and made findings that Plaintiff's proposed development
7
was not in conformity with the Kings County General Plan as it
8
existed on the date Plaintiff presented his application and was
9
not in conformity with the Kings County zoning ordinance.
10
       Defendants also cite *Blankenship v. Michalski*, 155
11
Cal.App.2d 672 (1957).  In *Blankenship,* the petitioner brought an
12
action in mandamus to compel a city attorney to commence an
13
abatement proceeding against claimed violators of a city
14
ordinance.  The Court of Appeals stated at 674-676:
15
           Mandate, of course, cannot be employed to
16         control the exercise of discretion by an
           administrator ... Section 28.02 of the
17         ordinance provides: 'Any building set up,
           erected, built, moved or maintained and/or
18         any use of property contrary to the
           provisions of this Ordinance shall be and the
19         same is hereby declared to be unlawful and a
           public nuisance, and the *City Attorney* shall
20         immediately commence action or actions,
           proceeding or proceedings, for the abatement,
21         removal, and enjoinment thereof in the manner
           provided by law and shall take such other
22         steps and shall apply to such court or courts
           as may have jurisdiction to grant such relief
23         as will abate and remove such building or
           from setting up, erecting, building, moving
24         or maintaining any such building or using any
           property contrary to the provisions of this
25         ordinance.'

26         In the present case the respondent, as city

                              24

attorney, determined that no violation of the zoning ordinance would occur by the issuance of the permit, and so advised the city manager.  Respondent contends that the ordinance necessarily confers upon him the power to determine, in the first instance, whether or not a violation has occurred.  If he determines that a violation has occurred he must then proceed to try and abate it and can be compelled to do so by mandamus ...  But, as he contends, if he in good faith determines that a violation has not occurred, then he is under no duty to start abatement proceedings and cannot be compelled to do so by mandamus.  This contention appears to be sound ..., at least where there are other more complete remedies available to a taxpayer who seeks to challenge the determination.  Certainly, someone, in the first instance, must determine whether a proposed use will violate the ordinance.  This requires an analysis of the facts and an interpretation of the ordinance.  The responsibility of determining this question, in the first instance, is placed on the city attorney.  He necessarily must have some discretion.  Certainly, if he, in good faith, determines that no violation has occurred, he should not be compelled to institute abatement proceedings at the whim or caprice of every taxpayer who disagrees with him.

It may be that where the claimed violation is clear and obvious the determination by the city attorney that no violation had occurred, and his refusal to bring an abatement proceeding, would be such a clear abuse of discretion that mandamus would issue.  But that is not this case.  Here, to say the least, it is reasonably debatable whether a violation has occurred.  In such a situation the determination of the city attorney that no violation has occurred was well within his discretion, and should not be controlled by mandamus.

Applying this reasoning, Defendants argue that Defendant Zumwalt first had to determine whether Plaintiff's application for site plan review complied with Kings County zoning requirements.

25

1  Defendant Zumwalt made findings in the August 25, 2004 letter to

2  Plaintiff that Plaintiff's application did not comply, and

3  specifically advised Plaintiff of his right to appeal Defendant

4  Zumwalt's findings, a remedy Plaintiff ignored.

5      Defendants also cite *Court House Plaza Company v. City of*

6  *Palo Alto*, 117 Cal.App.3d 871 (1981).  There, a building

7  developer brought an action for mandamus from actions of a city

8  council and planning commission in denying building and use

9  permits for the second phase of the construction of a 10-story

10 building and in denying a 1-year extension of the development

11 schedule provided for the project by a municipal zoning

12 ordinance.  The Court of Appeal stated:

13          Ordinary mandamus is particularly appropriate
            to compel the issuance of building and use
14          permits since they are generally ministerial
            in character ....
15
            Palo Alto has adopted section 302 of the
16          Uniform Building Code, which provides that a
            building permit will be issued if the
17          development plans submitted with the
            application comply with existing laws.  The
18          issuance of the permit is not left to the
            discretion of the building inspector; it is
19          only when the plans are not up to code that
            the permit may be denied.  Section 1085
20          applies.

21          Likewise, Palo Alto Municipal Code section
            18.68.040 states that upon payment of a fee
22          'a use permit *shall* be issued without a
            public hearing if the proposed structure or
23          structures comply with the development plan
            and conditions thereof.' ... It is apparent
24          that issuance is mandatory once it is
            determined that the applicant has complied
25          with a previously approved development plan.
            The fact that the zoning administrator may
26          impose conditions on the permit does not

                                26

                    change the essentially ministerial character
                    of the zoning administrator's function.

     Defendants argue that, here, Plaintiff's application for
site plan review did not comply with the General Plan or the
County's zoning ordinances.  Defendant Zumwalt made findings to
this effect in denying the application and advised Plaintiff of
his appeal rights.  Defendants contend that Defendant Zumwalt's
actions in this instance were not ministerial and he was not
required to act differently than he did.  Defendants assert that
the applicable zoning ordinances expressly authorized Defendant
Zumwalt to approve or reject the application for site plan review
based on his findings whether or not the application was in
compliance with those zoning ordinances.  In making this
determination, Defendants contend, Defendant Zumwalt "necessarily
must have some discretion."  *Blankenship, supra*, 155 Cal.App.2d
at 675.

     Defendants further note that Plaintiff had other remedies.
First of all, Plaintiff could have appealed Defendant Zumwalt's
findings in denying the application, but failed to do so.
Plaintiff then brought this action for damages and has been
awarded damages based on the jury's verdict that Plaintiff's
procedural due process rights were violated by the public notice.
Defendants note that Plaintiff did not prevail on his claims of
unjustified delay in processing his application for site plan
review, that the Amended General Plan should not have been
applied to his application, and that Defendants hurried in the

                                   27

amendment to the General Plan.

Although approval or rejection of an application for site plan review is ministerial for purposes of CEQA, the fact that Defendant Zumwalt had the authority to approve or reject the application based on his findings of compliance or noncompliance with applicable zoning requirements is not a ministerial act for purposes of mandamus.

D.  <u>Ancillary order and/or injunction directing the Defendants to pay the damages assessed against him forthwith</u>.

Plaintiff asserts that the trial testimony of Plaintiff and Art Brieno confirm that Plaintiff is on the verge of losing the property as a result of the delay he has experienced because of the wrongful denial of his site plan review application and that Plaintiff and Brieno confirmed that Plaintiff has a $70,000 balloon payment due in January, 2010, which must be paid in order for Plaintiff to continue owning the property.  Plaintiff contends that delay in the payment of the damages awarded by the jury will result in all likelihood in the loss of the property, making the jury's verdict and the Judgment largely illusory. Plaintiff asserts that an order requiring immediate payment of the Judgment is the only way to "prevent this miscarriage of justice."  Defendants respond that Plaintiff testified at trial that the terms of the January 2010 balloon payment may be negotiated so that Plaintiff will not lose the property.

Attached to Plaintiff's reply brief is Plaintiff's declaration.  Plaintiff avers:

4.   Because I have not been able to utilize the subject property as intended for my propose [sic] recycling center, because I incurred in excess of $100,000 in expenses in litigating this action, and because I have exhausted my remaining financial abilities making the required contractual payments due on the subject property to date, I lack the ability to make the payment due in January 2010.

5.   Mr. Art Brieno, one of the persons who sold me the subject property and the principal representatives of the sellers, has not indicated any willingness to enter into further negotiations pertaining to the January 2010 balance payment.   To the contrary, since the conclusion of trial proceedings in my case, Mr. Brieno has repeatedly and consistently insisted that I comply in full with my contractual obligations in order to continue having my existing interest in the subject property.

6.   If called as a witness, I could truthfully and competently testify as to the foregoing.

This declaration in Plaintiff's reply brief raises a factual

issue to which Defendants have not had an opportunity to examine.

Defendants respond by referring to Rule 69(a)(1), Federal

Rules of Civil Procedure:

A money judgment is enforced by a writ of execution, unless the court directs otherwise.   The procedure on execution - and in proceedings supplementary to and in aid of judgment or execution - must accord with the procedure of the state where the court is located, but a federal statute governs to the extent if applies.

Defendants, citing *Lenzinger v. County of Lake*, 253 F.R.D. 469, 473 (N.D.Cal.2008), contend that Plaintiff must use California's procedures for executing or enforcing the Judgment.

29

Defendants refer to California Government Code §§ 970 *et seq.*, which pertain to enforcement of judgments against a local public entity.  The Judgment in this case is not against a "local public entity."  The Judgment is against Defendants Zumwalt and Roper for monetary damages.  However, California Government Code § 825(a) provides:

> Except as otherwise provided in this section, if an employee or former employee of a public entity requests the public entity to defend him or her against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity and the request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.

> If the public entity conducts the defense of an employee or former employee against any claim or action with his or her reasonable good-faith cooperation, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed. However, where the public entity conducted the defense pursuant to an agreement with the employee or former employee reserving the rights of the public entity not to pay the judgment, compromise, or settlement until it is established that the injury arose out of an act or omission occurring within the scope of his or her employment as an employee of the public entity, the public entity is required to pay the judgment, compromise, or settlement only if it is established that the injury arose out of an act or omission occurring in the scope of his or her employment as an employee of the public entity.

Although it is not known whether Defendants Zumwalt and Roper made a timely request to the County, given that the County assumes in response to this motion that the County is liable for the Judgment, it is reasonable to infer that there was compliance with Section 845.

Assuming that Government Code §§ 970 *et seq.* applies to Plaintiff's enforcement of the Judgment, Section 970.2 provides:

> A local public entity shall pay any judgment in the manner provided in this article.  A writ of mandate is an appropriate remedy to compel a local public entity to perform any act required by this article.

Government Code §§ 970.4 - 970.6 provide the procedure by which local public entities must pay tort judgments.  The judgment must be paid to the extent funds are available in the fiscal year in which it becomes final.  If the judgment cannot be paid in full in such fiscal year, the public entity must pay the balance of the judgment in the ensuing fiscal year unless this would result in undue hardship to the entity.  In the case of undue hardship, the public entity is authorized to spread the payment of the balance of the judgment over a period not to exceed ten years. Law Revision Commission Comments, 1963 Addition.

Defendants argue that Plaintiff has failed to avail himself of the procedures set forth in the Government Code.

Plaintiff replies that monetary damages can be ordered paid as part of a declaratory judgment consistent with 28 U.S.C. § 2202 and Rule 57, which Plaintiff asserts collectively empower the Court to provide necessary and proper relief even if other

1   remedies might be available.   Plaintiff cites cases in which it

2   is held that "further relief" may include an award for damages.

3   *See, e.g., Beacon Const. Co., Inc. v. Matco Elec. Co., Inc.*, 521

4   F.2d 392, 400 (2nd Cir.1975).   Plaintiff asserts:

5              [T]his is a case where the ordinary
               procedures for executing judgments will not
6              provide the plaintiff with full relief, since
               he will likely lose his property if the
7              defendants are merely ordered to post a
               supersedeas bond pending appeal under FRCP
8              62, which typically stays execution under
               FRCP as a matter of course ... Such an order
9              would result in the plaintiff's never being
               able to go forward with the development and
10             operation of his proposed recycling center,
               despite the jury's verdict that his
11             procedural due process rights were violated.
               In this case, justice requires that the Court
12             order full payment of the judgment as part of
               the requested declaratory and ancillary
13             relief.

14       The Judgment is only $200,000.   There will be some

15   additional prejudgment interest.   However, if Plaintiff cannot

16   make the $70,000 balloon payment, how is immediate payment of the

17   Judgment going to provide Plaintiff with sufficient funds to

18   complete development and build the recycling center?   It is

19   unclear that Plaintiff is being totally forthcoming  about his

20   financial situation.   Rule 62(d), Federal Rules of Civil

21   Procedure, provides:

22             If an appeal is taken, the appellant may
               obtain a stay by supersedeas bond, except in
23             an action described in Rule 62(a)(1) or (2).
               The bond may be given upon or after filing
24             the notice of appeal or after obtaining the
               order allowing the appeal.   The stay takes
25             effect when the court approves the bond.

26   In their Ex Parte Application for Stay of Enforcement of the

                                    32

Judgment Pending Post Trial Motions and Appeal, discussed in a separate memorandum decision, Defendants represent they intend to appeal the Judgment and any post trial rulings.  Although they request that the stay of judgment be issued without the requirement of a supersedeas bond, Defendants also state they will post a supersedeas bond if required by the Court and request that the supersedeas bond be limited to the amount of the Judgment, i.e., $200,000.  As explained in Wright, Miller & Kane, 11 Federal Practice and Procedure, § 9405:

> Although the amount of the bond usually will be set in an amount that will permit satisfaction of the judgment in full, together with costs, interest, and damages for delay, the courts have inherent power ... to provide for a bond in a lesser amount or to permit security other than the bond.

If Defendants file a notice of appeal and post a supersedeas bond, the Court does not have the authority to compel payment of the Judgment while it is on appeal.  As explained in *Exxon Valdez v. Exxon Mobil*, 568 F.2d 1077, 1085 (9th Cir.2009)(Kleinfeld, J., concurring):

> The rationale for a supersedeas bond is that there can be no certainty about who is in the right until the appeals are done; the party that lost should not have to pay the winner until the district court's decision is finally affirmed, but in the meantime, the party that won in district court should not be at risk of the money disappearing.  To protect the winner from the risk that the loser will not have the money if and when the judgment is affirmed, the bond is ordinarily secured by property or by surety.

At the hearing, Plaintiff requested that the Court compel

33

payment by Defendants of $70,000.00 of the Judgment and asserted that Plaintiff could post the Property as security for repayment of that amount if the Judgment is reversed on appeal.

Plaintiff provides no authority that the Court can compel partial payment of a Judgment if a supersedeas bond is posted. The law provides to the contrary by authorizing a bond to avoid enforcement of a money judgment pending appeal.  There are practical difficulties to Plaintiff's approach.  Plaintiff does not have fee title to the property until he timely makes the $70,000 balloon payment to Mr. Brieno.  Plaintiff's oral assurances that he will then have fee simple title to the property free and clear of any liens and that the value of the property will suffice to secure the payment of $70,000 of the Judgment need not be accepted.  Defendants are entitled to the protection of a title report and an appraisal, for which Defendants cannot be expected to pay.  Government Code §§ 970.4 - 970.6 set forth the applicable procedures for enforcement of a judgment against a local public entity.  The local public entity cannot be compelled to pay a final money judgment in a fiscal year in which there are not funds to do so.  Plaintiff presents no evidence that the County has sufficient funds in this fiscal year to pay any portion of the Judgment.

E.  <u>Ancillary order and/or injunction providing that any unreasonable delay in the approval of Plaintiff's site plan review application, or obstruction of Plaintiff's subsequent activity to the issued site plan review permit, will constitute</u>

contempt of court and subject the responsible parties to
sanctions.

Plaintiff asserts that, if the jury's verdict and the
Judgment "are to be truly meaningful, the defendants, as well as
their agents, must be prohibited from further delaying or
interfering with the plaintiff's site plan review application or
related recycling center project."  Plaintiff argues, that absent
this injunction, Plaintiff will "not likely receive meaningful
relief."  Plaintiff has not established that the jury's verdict
does not amount to full compensation.

Defendants oppose this request, contending that, to the
extent Plaintiff's request is for a declaration, there is no
actual case or controversy:

> Rather, it contemplates the actions of the
> parties in the future.  Any the [sic] effect
> of any decision fashioned pursuant to
> plaintiff's request in this regard would be
> unknown as it is not presently know [sic] to
> which actions it would be applied.

To the extent Plaintiff's request is for injunctive relief,
Defendants assert that Plaintiff's request pertains to future
actions, which are unknown.

An injunction may only issue where there is a "cognizable
danger of recurrent violation."  *United States v. W.T. Grant Co.*,
345 U.S. 629, 633-634 (1953); *see also Madsen v. Women's Health
Center, Inc.*, 512 U.S. 753, 766 n.3 (1994).  Blanket injunctions
to obey the law are disfavored.  *Metro-Goldwyn-Mayer Studios,
Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1226 (C.D.Cal.2007).

35

1        Defendants assert:

2              During the trial, evidence of the County's
               processing of other site plan review
3              applications was presented and admitted.
               Upon review of several of the County's
4              response [sic] to several of those site plan
               review applications, it is noted that there
5              are terms and conditions that are placed on
               the various projects.  (See 421.8 through
6              421.18, 421.29 through 429.45, 421.46 through
               421.71, and 421.85 through 421.105, LMD
7              decl., Exhibit 'C')  Also produced by the
               defendants during discovery was a document
8              which was marked defendants' 453.1 through
               453.7 (LMD decl., Exhibit 'D').  That
9              document involved a recycling center within
               the County of Kings and set forth certain
10             requirements with which the recycling center
               needed to comply.  Included in plaintiff's
11             proposed evidence was correspondence from the
               County of Kings to the plaintiff, dated
12             January 25, 2005, involving another recycling
               operation of the plaintiffs [sic].   (LMD
13             decl., Exhibit 'E').  That correspondence
               also set out certain County requirements that
14             needed to be complied with for the continued
               operation.

15
               Finally, included in plaintiffs' marked,
16             proposed evidence was a copy of the Kings
               County ordinance with regard to site plan
17             review.  (LMD decl., Exhibit 'F').

18             It is clear that there are certain
               requirements that must be complied with in
19             developing a project such as a recycling
               center.  These requirements, terms and
20             conditions to which the plaintiff may need to
               comply would not necessarily only be placed
21             by the County but likely fire and police
               departments and the City of Hanford.  These
22             requirements are not arbitrary, but rather
               are for the health and safety of the general
23             public and to assure the orderly development
               of land and projects.

24
               Should plaintiff move forward with his
25             recycling project, the defendants cannot be
               impermissibly bound by the fear that any
26             proper application of law, ordinance or other

                            36

regulatory device may be construed as a
sanctionable contemptuous action. The
defendants must be allowed to apply and
enforce the relevant and appropriate laws,
ordinances and regulations to the plaintiff
just as would be applied to any other
individual or organization desirous of
developing a project such as plaintiff's.

Of additional concern is the true nature and
extent of the plaintiff's proposed
development. During the trial, it became
clear that the plaintiff had not fully
disclosed to the County the true nature of
what he planned. When asked why he had not,
the plaintiff responded: 'Because they didn't
ask.' Should the plaintiff be allowed to
move forward with his recycling center, he
should be properly and strictly bound to the
project as set forth on his site plan review
application. Should he desire to expand that
operation to conform to what he testified to
at the time of trial, the plaintiff should be
required to obtain those permits which may be
required by the County or any other
applicable entity and/or agency and conform
to those rules and regulations that apply to
such a development. And in obtaining those
additional permits as may be required, he
should be required to comply with the General
Plan that is in effect at the time he applies
for those permits.

Plaintiff ignores the complex issues raised by his
insistence he has a right to go forward with the proposed
recycling center and, instead asserts that the Court has inherent
power to enforce its declaratory judgments. Plaintiff cites
*Rincon Band of Mission Indians v. Harris*, 618 F.2d 569, 575 (9th
Cir.1980):

In affirming the district court's grant of
summary judgment for plaintiffs, we recognize
that the relief granted is declaratory only,
and that the obligations imposed on the
defendants to adopt a health services program
for the California Indians that is comparable

37

1              to that offered Indians elsewhere is not as
            explicit as it might be.  If further relief

2              becomes necessary at a later point, however,
            both the inherent power of the court to give

3              effect to its own judgement, ... and the
            Declaratory Judgment Act, 28 U.S.C. § 2202

4              ..., would empower the district court to
            grant supplemental relief, including

5              injunctive relief.

6  Plaintiff argues:

7              The defendants' arguments against this relief
            would have the Court restrict its enforcement

8              power based on the possibility that the
            plaintiff might exceed the bounds of his

9              permit or otherwise violate development laws
            or regulations of general applicability.

10             However, the declaratory relief plaintiff
            requests pertains to the proposed recycling

11             center reflected in the site plan review
            application, see Trial Exhibit 53, Exhibit 3

12             to this motion, which the defendants have
            already conceded would have been granted but

13             for the land use policy the jury found
            violated plaintiff's procedural due process

14             rights.  The fact that the defendants are
            still taking the position that plaintiff's

15             site plan review application cannot be
            granted is the strongest evidence that the

16             Court must not limit its enforcement powers
            by failing to provide the constitutionally

17             required notice.

18     Plaintiff's request is not limited to approval of

19 Plaintiff's site plan review application.  Plaintiff's request

20 also seeks an order that any "obstruction of Plaintiff's

21 subsequent activity to the issued site plan review permit, will

22 constitute contempt of court and subject the responsible parties

23 to sanctions."  Such relief is beyond the Court's authority

24                     <u>CONCLUSION</u>

25     Plaintiff ignores that there is no final judgment.

26 Plaintiff offered damages for the loss of the recycling center as

1  an income producing business.   Plaintiff also ignores that the

2  $200,000.00 total damages is the amount the jury fixed for this

3  lost business opportunity and violation of his procedural due

4  process rights.   Plaintiff does not yet have an enforceable

5  judgment, pending post trial motions and appeal.

6      Plaintiff's request for a mandatory injunction or

7  declaratory judgment ordering Defendants to process the

8  application for site review gives Plaintiff more than the jury

9  awarded or that he was entitled to at trial.   Plaintiff's motion

10 is for declaratory and ancillary relief is DENIED WITHOUT

11 PREJUDICE.

12      IT IS SO ORDERED.

13 Dated:    December 18, 2009              /s/ Oliver W. Wanger
                                        UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26