1

2

3

4

5

6                    IN  THE  UNITED  STATES  DISTRICT  COURT  FOR  THE

7                         EASTERN  DISTRICT  OF  CALIFORNIA

8

9   DANIEL E. RUFF,                    )        No. CV-F-05-631 OWW/GSA
                                       )
10                                     )        MEMORANDUM DECISION GRANTING
                                       )        PLAINTIFF'S MOTION FOR
11              Plaintiff,             )        ATTORNEY'S FEES (Doc. 211)
                                       )        AND AWARDING COSTS
12         vs.                         )
                                       )
13                                     )
    COUNTY OF KINGS, et al.,           )
14                                     )
                                       )
15              Defendants.            )
                                       )
16  _____        )

17         Before the Court are Plaintiff's motion for an award of

18   attorney's fees pursuant to 42 U.S.C. § 1998, Plaintiff's bill of

19   costs, and Defendants County of Kings and Mark Sherman's opposing

20   bill of costs.

21         A.   PLAINTIFF'S MOTION FOR ATTORNEY'S FEES.

22         Plaintiff Daniel Ruff moves for an award of attorney's fees

23   pursuant to 42 U.S.C. § 1988 in the amount of $217,365.00.

24              1.   Governing Standards.

25   42 U.S.C. § 1988(b) provides:
                 In any action or proceeding to enforce a
26               provision of sections ... 1983 [or] 1985 ...

                                       1

of this title, ... the court, in its
discretion, may allow the prevailing party
... a reasonable attorney's fee as part of
the costs ....

"'In determining what a reasonable attorneys' fee entails,
the district court must apply the hybrid approach adopted in
*Hensley v. Eckerhart*, 461 U.S. 424, 423 ... (1983).' ... 'The
most useful starting point for determining the amount of a
reasonable fee is (1) the number of hours reasonably expended on
the litigation (2) multiplied by a reasonable hourly rate.' ...
The resulting figure is known as the 'Lodestar.'" *Wal-Mart
Stores, Inc. v. City of Turlock*, 483 F.Supp.2d 1023, 1040
(E.D.Cal.2007).  Although there is a strong presumption that the
lodestar represents a reasonable fee, *Burlington v. Dague*, 505
U.S. 557, 562 (1992), the district court has the discretion to
exclude from the initial fee calculation hours that were not
reasonably expended, for example, cases that are overstaffed.
Furthermore, the Supreme Court in *Hensley* held:

Counsel for the prevailing party should make
a good faith effort to exclude from a fee
request hours that are excessive, redundant,
or otherwise unnecessary, just as a lawyer in
private practice ethically is obligated to
exclude such hours from his fee submission.
'In the private sector, "billing judgment" is
an important component in fee setting.  It is
no less important here.  Hours that are not
properly billed to one's <u>client</u> also are not
properly billed to one's <u>adversary</u> pursuant
to statutory authority.' ....

*Id.* at 434.  As explained in *Wood v. Sunn*, 865 F.2d 982, 991 (9th
Cir.1988):

Many factors previously identified by courts

as probative on the issue of 'reasonableness'
of a fee award, *see e.g., Kerr v. Screen
Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th
Cir.1975), *cert. denied*, 425 U.S. 951 ...
(1976), are now subsumed within the initial
calculation of the lodestar amount.  *Blum v.
Stenson*, 465 U.S. 886, 898-900 ...
(1984)('the novelty and complexity of the
issues,' 'the special skill and experience of
counsel,' the 'quality of the
representation,' and the 'results obtained'
are subsumed within the lodestar);
*Pennsylvania v. Delaware Valley Citizen's
Council*, 478 U.S. 546 ... (1986), *rev'd after
rehearing on other grounds*, 483 U.S. 711 ...
(1987)(an attorney's 'superior performance'
is subsumed).

*See also Clark v. City of Los Angeles*, 803 F.2d 987, 990 & n.3

(9th Cir.1986).  As the *Clark* court explained:

[T]he Supreme Court has recognized that
adjustments, both upward and downward to the
lodestar amount are sometimes appropriate,
albeit in 'rare' and 'exceptional' cases ...
*Blum*, 465 U.S. at 898-901 ... The possibility
of adjustments to the lodestar amount
necessitates an analysis of various factors
that could justify an adjustment.  In this
circuit, the relevant factors were identified
in *Kerr v. Screen Extras Guild, Inc.*, 526
F.2d 67, 70 (9th Cir.1975).  Although several
of these factors are now considered to be
subsumed within the calculation of the
lodestar figure ..., review of the *Kerr*
factors remains the appropriate procedure for
considering a request for a fee-award
adjustment.

*Id.*  The *Kerr* factors, as modified by *Stewart v. Gates,* 987 F.2d

1450, 1453 (9th Cir.1993), are:

(1) the time and labor required of the
attorney(s);

(2) the novelty and difficulty of the
questions presented;

(3) the skill requisite to perform the legal

3

service properly;

(4) the preclusion of other employment by the attorney(s) because of the acceptance of the action;

(5) the customary fee charged in matters of the type involved;

(6) any time limitations imposed by the client or the circumstances;

(7) the amount of money, or the value of the rights involved, and the results obtained;

(8) the experience, reputation and ability of the attorney(s);

(9) the 'undesireability of the action;

(10) the nature and length of the professional relationship between the attorney and the client;

(12) awards in similar actions.

*Id.; see also* Rule 54-293(c), Local Rules of Practice.

The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *Hensley, supra* at 433, 437. The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits. *Blum v. Stenson*, 465 U.S. 886, 892 n.5 (1984); *Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th Cir. 1987).

2. <u>Partial or Limited Success</u>.

Defendants argue that the award of attorney's fees should not include time incurred on issues not presented to the jury or

incurred on issues as to which Plaintiff did not prevail.

"The extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley, id.,* 461 U.S. at 440. *Hensley* prescribed a two-step process for calculating attorney's fees in a case of partial or limited success. A Court must consider (1) whether "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded," and (2) whether "the plaintiff achiev[ed] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Hensley*, *id.* at 434. Deductions based on limited success are within the discretion of the district court. *Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir.2002), *cert. denied*, 538 U.S. 1574 (2003). As explained in *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir.2005):

> The first step requires the district court to determine whether the successful and unsuccessful claims were unrelated ... '[C]laims are *unrelated* if the successful and unsuccessful claims are "distinctly different" *both* legally *and* factually," ...; claims are related, however, if they 'involve a common core of facts or are based on related legal theories.' ... At bottom, 'the focus is on whether the unsuccessful and successful claims arose out of the same "course of conduct."' ... If they did not, the hours expended on the unsuccessful claims should not be included in the fee award ....
>
> If, however, 'the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on

the litigation.' ... 'Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.' ... When 'a plaintiff has achieved only partial or limited success, [however,] the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.' ... Nonetheless, a plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee.

Plaintiff's First Amended Complaint alleged causes of action for violation of Section 1983, 1985(3), 15 U.S.C. §§ 2 and 15, and for declaratory judgment.  By Memorandum Decision filed on September 17, 2008, (Doc. 92), the Court dismissed Plaintiff's Fifth Amendment takings claim on the ground of ripeness and alleged delay in processing Plaintiff's application and dismissed Plaintiff's antitrust claim because controlling Supreme Court and Ninth Circuit authority establish as a matter of law that Defendants are entitled to immunity from antitrust liability alleged in the FAC.

The Court granted summary judgment for Defendants with regard to Plaintiff's claim that Defendants intentionally discriminated against Plaintiff on the basis of his race by amending the General Plan and granted summary judgment for Defendants to the extent Plaintiff's claim of denial of procedural due process was based on the failure to mail notice specifically to Plaintiff.

Plaintiff proceeded to trial on his claims of violation of his rights to procedural and substantive due process and of

denial of equal protection of the laws.  The jury found that Plaintiff "proved by a preponderance of the evidence" that Defendants William Zumwalt and Sandy Roper "violated [Plaintiff's] right to procedural due process under the Fourteenth Amendment" and that Plaintiff "proved by a preponderance of the evidence that the violation of his right to procedural due process by any defendant was a cause of harm or damage" to Plaintiff.  The jury found that Plaintiff had not proved that any of the individual defendants violated Plaintiff's right to substantive due process under the Fourteenth Amendment or violated Plaintiff's right to equal protection of the law under the Fourteenth Amendment and found that the violation of procedural due process was not the result of a custom, policy or practice of the County of Kings.  The jury awarded monetary damages against Defendant Zumwalt in the amount of $140,000 and against Defendant Roper in the amount of $60,000 but did not award punitive damages.

Post trial, Plaintiff filed motions for declaratory relief and for prejudgment interest.  Plaintiff's motion for declaratory relief was denied, (Doc. 236), as was Plaintiff's motion for reconsideration of that denial.  (Doc. 248).  Plaintiff's motion for prejudgment interest was granted in part and denied in part. (Docs. 226 & 235).  Defendants filed a renewed motion for judgment as a matter of law or for new trial, which was denied. (Doc. 225).

a. <u>Issues Not Presented to the Jury</u>.

7

As to issues not presented to the jury and other miscellaneous non-recoverable time, Defendants refer to the time log for April 18-19, 2006, attached to Plaintiff's opening brief, for "Research re Motion in Limine (1.0) and E-File Motion in Limine (1.5).  The docket does not show that any such motion was filed at that time.

Plaintiff responds that the time log attached to his opening brief "resulted from an input error on the original spreadsheet document" and that the subject hours were incurred in 2009, not 2006.

Defendants object to inclusion of time incurred (18.8 hours) in connection with Plaintiff's expert, John Bettancourt, CPA. Plaintiff retained Mr. Bettancourt to testify as to Plaintiff's lost business opportunities or loss of income.  However, Mr. Bettancourt was not called as a witness at trial.

Plaintiff responds that it would have been malpractice not to retain an expert to investigate whether Plaintiff's economic damages were the proper subject of expert testimony, and to preserve such potential testimony by designating Mr. Bettancourt as a potential trial witness.  Plaintiff asserts that the decision not to call Mr. Bettancourt at trial is of no moment for attorney's fees, since the retention and solicitation of his opinion was reasonable.  Plaintiff asserts that it was also reasonable for Plaintiff's counsel to modify the presentation of his case based on the composition of the jury, the development of evidence at trial, and the cost-benefit analysis of calling the

expert witness.  Plaintiff cites *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir.2008):

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the fee.  It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning.  By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had be been more of a slacker.

Plaintiff argues that an attorney is not required to be clairvoyant as to how litigation will develop in order for the time incurred to be reasonable.

Defendants assert that "[i]n or around April of 2009, plaintiff's counsel brought a motion to preclude the defendants from calling certain witnesses or presenting certain evidence."  From the docket, Defendants are referring to Plaintiff's motions in limine filed on April 19, 2009 as Doc. 116).  Defendants assert that the Court denied Plaintiff's motion provided that Defendants complied with certain enumerated conditions.  Defendants contend that, because Plaintiff did not prevail on the motion, attorney's fees incurred in connection with the motion (7.9 hours), should be stricken.

Plaintiff responds that the Court "only denied the plaintiff's requested relief because it decided to be lenient and not strike what would have been the majority of the defense case, which for still unknown reasons was not disclosed by predecessor

defense counsel in discovery."  Plaintiff asserts that it was only because of Plaintiff's motion that reasonable time for discovery was granted by the Court and the trial date continued to September, 2009: "The defendants' argument that the plaintiff's motion was unsuccessful and not deserving of compensation ignores what actually occurred as a result thereof and how it changed the case."

Defendants assert that the time incurred on issues that were not tried to the jury, anti-trust issues -1.4 hours, or on issues on which Plaintiff did not prevail, i.e., LAFCO issues, substantive due process violation claim (5.5 hours), Kings County Planning Minutes/Guidelines (3.9 hours), publication Government Code issues - effective date of amended General Plan (7.25 hours), and land use planning issues (5.5 hours), should be stricken.

Defendants' objection lacks merit because all of Plaintiff's claims were inextricably interrelated factually and in terms of the relief requested.  As Plaintiff asserts:

> [A]ll of the plaintiff's claims arose from the events surrounding the August 25, 2004 denial of his application for site plan review on the basis that his application was untimely under Kings County General Plan, Land Use Policy 3.4a ... [T]he First Amended Complaint demonstrates that the plaintiff's claims are requests for relief are based on the same factual allegations: the facts related to the August 25, 2004 denial gave rise to overlapping legal theories against four individuals and one municipal defendant: (1) a section 1983 claim alleging procedural due process, substantive due process, equal protection, and taking clause violations; (2)

a section 1985(3) claim; (3) an antitrust
claim; and (4) a declaratory relief claim
....

Additionally, the proof at trial was
similarly overlapping as to the then-existing
claims.  All of the evidence at trial can
fairly be placed in one of the following six
categories: (1) background evidence
establishing the underlying factual context,
i.e., plaintiff's purchase of the land, the
nature of the property, and his intentions as
to the development of the property into a
recycling center; (2) evidence pertaining to
the origin and promulgation of Kings County
General Land Use Policy 3.4a between October
2003 and January 2004; (3) evidence
pertaining to plaintiff's trips to the Kings
County Planning Office, either in connection
with his purchase of the subject property or
the subsequent application process; (4)
evidence pertaining to the denial of
plaintiff's application and the purported
reasons therefor; (5) land use expert
evidence from Dr. Bernard Kays and, to a
lesser extent, the individual defendants; and
(6) damages evidence from plaintiff and Kings
Waste and Recycling Authority Administrator
Jeff Monaco.  While these six categories of
evidence had different applications and
importance to the plaintiff's respective
claims, they all were pertinent and had to be
presented in relation to the procedural due
process claim upon which the plaintiff
prevailed, as well as his ... declaratory
relief claim.  To wit: (1) was obviously
necessary for the jury to understand the
factual context of the case and to evaluate
whether the plaintiff sustained any damages;
(2) was important for the jury to understand
why plaintiff was not permitted to proceed
with the proposed recycling center and what
the time line was vis á vis his initial
proposal, the promulgation of the policy, and
his accepted application; (3) was important
for the jury for the same reasons as item 2,
and in addition was necessary for damages
purposes, i.e., to show the jury that the
plaintiff truly intended on operating a
recycling center, actually applied for a
permit, and was thus damaged by the denial;

11

> (4) was obviously necessary to prove that the
> plaintiff's denial related to the alleged
> wrongful conduct, and the jury obviously
> found a causal link; (5) was necessary to
> establish the unreasonableness of the notice
> language and the basis for the denial of
> plaintiff's application; and (5) was equally
> necessary as to all of the plaintiff's
> claims.  Thus, there was no category of
> evidence at trial that pertained solely to
> one claim, thus establishing beyond
> reasonable argument that the plaintiff's
> claims were all highly interrelated to the
> procedural due process claim on which he
> prevailed, as well as the ... claim for
> declaratory relief.

Plaintiff asserts that "only one damages verdict inquiry was

necessary at trial as to all of the plaintiff's claims, thus

confirming the overlapping nature of the relief sought."

Finally, Plaintiff contends, Plaintiff's counsel's time records

demonstrate that "almost all of his time was related to multiple

asserted claims or requests for relief, or issues that overlapped

two or more of these claims/requests."  Plaintiff asserts that

there is "no way to go back ... to separate the time spent and

apportion it among various claims."

> b.   Unsuccessful Claims.

Defendants argue that the fee award should be reduced

because Plaintiff prevailed on only one of his claims.

Defendants acknowledge that, in reviewing counsel's time logs, it

cannot be determined to which of Plaintiff's various claims the

time relates and that Plaintiff will argue that all of his claims

were interrelated.  Defendants assert:

> In looking at the degree of success obtained
> by the plaintiff at the trial in this matter

12

> the following is noted: plaintiff purchased
> the subject property for $170,000; he
> allegedly attempted on numerous occasions
> prior to December of 2003 to submit an
> application for a site plan review but was
> stalled or put off by Mark Sherman; he
> anticipated that his planned recycling center
> would earn him $500,000 per year thereby
> resulting in a past economic loss at the time
> of trial in the approximate amount of $2.5 to
> $3 million; the plaintiff claimed that the
> County, through its employees, branded him as
> a difficult person to deal with and set out
> to prevent him from developing his proposed
> recycling center; that the County failed to
> following [sic] the statutory requirements in
> the process of amending its General Plan.
> While the plaintiff opted not to call his
> retained economic expert to testify on the
> value of the lost business opportunity
> suffered by the plaintiff, Mr. Ruff, himself,
> was allowed to testify in that regard.  It
> was clear from his testimony as to what he
> valued his past economic loss to be.  And
> applying the $500,000, plus, per year to the
> future, the jury could have rendered a 'seven
> figure' award to the plaintiff had they
> determined that he had met his burden of
> proof.

Because the jury returned a verdict for Plaintiff on only one of his five separate theories of liability and, rather than returning a multi-million dollar verdict to award Plaintiff his past, present and future lost business opportunity, awarded him $200,000, Defendants assert that the verdict and the award is "minimal at best."  Therefore, Defendants argue, the Court should reduce the fee award "to at least one-half, if not more, of the items allowed."

Plaintiff obtained far more than nominal damages.  Referring to what was then his pending motion for declaratory relief, since denied by the Court, Plaintiff asserts:

1
2
3
4
5
6
7
8

> [T]he $200,000 in damages awarded by the jury likely represented compensation for plaintiff's out-of-pocket expenditures, as well as an award of general damages for being inconvenienced and mistreated.  Clearly, a $200,000 award is substantial, especially given the uncertain nature of the evidence of future damages presented at trial.  The record should also reflect that this is not a case in which the plaintiff requested any specific sum of damages, either in his pleadings, during the opening or closing arguments, or through expert testimony at trial; that question was left to the sole discretion of the jury.

9  Plaintiff refers to an email communication from Plaintiff's

10  counsel to Defendants' counsel on September 3, 2009, attached to

11  Plaintiff's reply.  Mr. Little had inquired of Defendant's

12  counsel concerning any possible settlement.  Ms. Dillahunty

13  inquired asking for a "range or something" that Plaintiff was

14  looking for.  Mr. Little replied:

15
16
17
18
19
20
21
22

> Leslie, my view is that the most important issue in a potential settlement would not be monetary but rather the parties' willingness to stipulate to some declaratory relief that would permit plaintiff to proceed with the development of a recycling center consistent with the zoning provisions and restrictions that existed prior to January 2004. Plaintiff would also request a monetary settlement sufficient to reimburse him for his out-of-pocket expenditures, plus whatever your economist opines to be plaintiff's lost profits.  The issue of attorney's fees could be left to the Court by way of a section 1988 motion.

23  Plaintiff asserts that, "[g]iven the relief obtained by plaintiff

24  or still pending mirrors that which he sought to resolve this

25  matter before trial, it can hardly be found that he achieved only

26  minimal or insubstantial success at trial."

14

Although Plaintiff's motion for declaratory relief was denied on all grounds, the Court concurs with Plaintiff that a reduction of the fee award based on a finding of limited success would ignore the record and disregard the crucial importance of federal civil rights litigation generally.  In *City of Riverside v. Rivera*, 477 U.S. 561, 574-578 (1986), the Supreme Court stated:

> We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers.
>
> As an initial matter, we reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefitting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms ... And, Congress has determined that "the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff...." ... Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards.
>
> ...
>
> In addition, the damages a plaintiff recovers contributes significantly to the deterrence of civil rights violations in the future ... Congress expressly recognized that a plaintiff who obtains relief in a civil rights lawsuit " 'does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance.'" ...

15

"If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers." ...

Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief. Rather, Congress made clear that it "intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature." ... "[C]ounsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" ... Thus, Congress recognized that reasonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of money damages. The lower courts have generally eschewed such a requirement.

A rule that limits attorney's fees in civil rights cases to a proportion of the damages awarded would seriously undermine Congress' purpose in enacting § 1988. Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process. See House Report, at 3. These victims ordinarily cannot afford to purchase legal services at the rates set by the private market.

...

A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts. This is totally inconsistent with Congress' purpose in

16

1
2
3
4
5

> enacting § 1988. Congress recognized that
> private-sector fee arrangements were
> inadequate to ensure sufficiently vigorous
> enforcement of civil rights. In order to
> ensure that lawyers would be willing to
> represent persons with legitimate civil
> rights grievances, Congress determined that
> it would be necessary to compensate lawyers
> for all time reasonably expended on a case.

6    The Court rejects Defendants' arguments that the amount of

7  the fee award should be reduced because of Plaintiff's partial or

8  limited success.  The facts and legal theories upon which

9  Plaintiff litigated this action were inextricably inter-related.

10  Although Plaintiff did not obtain all of the monetary and

11  equitable relief he sought in this action, his recovery was by no

12  means nominal.

13          3.  <u>Lodestar</u>.

14              a.  <u>Hours Reasonably Expended</u>.

15    In support of the motion for attorney's fees is filed the

16  declaration of Plaintiff's counsel, Kevin Little.  Mr. Little

17  details his professional background as well as his background in

18  civil rights litigation.  Mr. Little avers:

19
20
21
22
23
24
25
26

> 5.  I took this case on a contingency basis
> back in 2005.  Given plaintiff's poor
> representation, lack of pursuit of
> administrative appeals, and the nature of the
> allegations against the defendants, i.e.,
> intentional misconduct, it was in my
> estimation quite unlikely that a settlement
> would result.  My impression in this regard
> was confirmed as this case progressed through
> litigation without anything substantial every
> offered by the defense.  It was also clear
> early on that a considerable amount of
> investigation and document gathering would be
> required.  In short, it appeared from the
> outset that this was case [sic] that would

likely proceed through years of litigation
and to trial.  My impressions in this regard
were confirmed by the course of this action,
which is reflected in the time and billing
record submitted herewith as Exhibit 1.
Those records show that I reasonably expended
a great number of hours in this action and
that a contingency fee of one-third the
plaintiff's $200,000 verdict, the amount to
which I would be contractually obligated,
would not provide fair compensation.

6.  The reason why I took this case on that
basis was because I perceived it as an
important case not only for the plaintiff but
for the public as a whole.  Plaintiff is a
lifelong resident of Kings County, a disabled
veteran, and a respectable businessman, yet
he was unfairly denied the opportunity to
start a recycling center on the property he
purchased for that sole reason.  Moreover,
Kings County is the county arguably with the
most need for recycling services of any in
the state, if not the country.  This is
documented by exhibits presented to the Court
at the summary judgment stage showing the
historically low waste diversion rates in
Kings County.  This evidence was also
confirmed by the trial testimony of Kings
Waste Management Coordinator Jeff Monaco.  It
was therefore important to both the plaintiff
and the public that he prevail in this
action.

7.  Despite the factors that made this case a
challenging and extended one, plaintiff
prevailed, with the jury finding that
defendants Zumwalt and Roper denied him his
procedural due process rights under the
Fourteenth Amendment.  Handling plaintiff's
case successfully required skill and
experience.  As a review of the docket sheet
... confirms, this was a case which has
lasted more than four years.  Also, this was
a case in which there was considerable
pretrial motion, discovery motion, and in
limine motion practice.  This was also a case
in which expert and technical evidence was
involved, in addition to percipient evidence.
My trial experience enabled me to present
this case in a simple yet persuasive manner

18

that convinced the jury as to liability.  In
my estimation, only experienced and capable
counsel could have handled this matter
successfully.

8.  In light of the time consuming and
difficult nature of plaintiff's case, along
with the defendants' intransigent approach to
a possible settlement, I submit that it is
extremely unlikely that another attorney: (a)
would have undertaken the case on a
contingency basis; (b) would have, even
assuming one had accepted the case on a
contingency basis, invested the tremendous
time and resources crucial for success; (c)
even if one had accepted the case and made
the initial investment of time and resources,
would have had sufficient skill and
experience to have prevailed in the case.

At the hearing, Plaintiff's counsel conceded that he is not

entitled to an award of attorney's fees from the District Court

for those fees incurred in connection with Plaintiff's decision

to file an appeal with the Ninth Circuit.  Plaintiff's Notice of

Appeal was filed on January 7, 2010.  (Doc. 253).  In Plaintiff's

Submission of Updated Time Records filed on February 20, 2010,

(Doc. 263), Mr. Little incurred time in connection with

Plaintiff's appeal starting on December 30, 2009 through February

19, 2010, totaling 31.40 hours.  Plaintiff's fee award will be

reduced by these hours.

In addition, the duration of this was caused in large part

by Mr. Little's failure to timely prosecute the action.  The

Complaint was filed on May 10, 2005.  At the time, Plaintiff was

represented by Rafael Pio Fonseca.  Defendants' Answer was filed

on June 6, 2005.  On December 2, 2005, Kevin Little, present

counsel for Plaintiff, made a special appearance and requested

leave to file an amended complaint.  A Minute Order ordered that
an amended complaint be filed by January 15, 2006.  Plaintiff did
not file an amended complaint as required by the Court's Order.
On March 31, 2006, Mr. Little filed a Notice of Substitution of
Attorneys, listing himself as counsel for Plaintiff and
substituting Mr. Little as counsel of record (Doc. 25).  On April
25, 2006, Mr. Little, listing himself as attorney for Plaintiff,
filed a Stipulation and Proposed Order substituting Mr. Little as
counsel for Plaintiff (Doc. 27).  Mr. Little was substituted as
counsel for Plaintiff by docket entry issued on April 7, 2006.
On October 19, 2006, Plaintiff filed a motion to vacate the dates
set forth in the Scheduling Order (Doc. 31), stating as grounds
that the current pretrial schedule "was rendered infeasible by
unforeseen delays in the finalization of the undersigned
counsel's retention in this matter"; that "[t]he finalization of
this retention, which has now occurred, was necessary before
counsel began substantial work in this matter"; that "as a result
of counsel's extended illness in the latter part of 2005 many
maters [sic] were delayed, and he has had to 'make up for lost
time' in 2006 and has been in a trial or evidentiary-type
proceeding virtually the entire year, in addition to handling
complex briefing issues on several cases."  Plaintiff's motion to
vacate the schedule was granted and new dates set by Minute Order
filed on November 20, 2006 (Doc. 35) and formal written Order
filed on March 13, 2007 (Doc. 40).  By Stipulation and Order
filed on July 5, 2007, a new schedule was entered "[d]ue to a

confluence of circumstances affecting the schedule of plaintiff's counsel and certain key witnesses, as well as the unintended failure to file a prior duly executed stipulation" (Doc. 43). The July 5, 2007 scheduling order required that non-dispositive motions be filed by November 5, 2007 and that dispositive motions be filed by December 3, 2007.  The Pretrial Conference was set for March 28, 2008 and jury trial was set for May 6, 2008.

On December 3, 2007, Defendants filed a motion for summary judgment or summary adjudication, noticing the motion for hearing on January 14, 2008 (Doc. 47).  On January 2, 2008, the day Plaintiff's opposition to the motion for summary judgment was due, Plaintiff filed an ex parte application for a 90 day continuance of the due date for Plaintiff's opposition to the motion for summary judgment and for continuance of the hearing date of the motion (Doc. 49).  In support of this requested continuance, Plaintiff's counsel asserted:

> 1.  Due to a variety of scheduling issues, plaintiff's counsel's subsequent medical problems and related restriction of his ability to practice, and other personal and financial difficulties of plaintiff's counsel, none of the defense witnesses have been deposed in this action, including those who have submitted declarations in support of the pending motion.  Moreover, plaintiff's counsel has not followed through with his long-intended plan to amend the complaint in this action for the same reasons.  Therefore, the state of the record, discovery, and the underlying pleadings make the consideration of the pending summary judgment motion in appropriate at this time.  Plaintiff requests permission to perform the requisite discovery, to amend the current complaint and perform other reasonably necessary

21

preliminary tasks prior to opposing the
pending motion.

2.   This is a relatively complex civil rights
case, and the motion [for summary judgment]
filed attacks numerous claims, based on
numerous legal and factual arguments.   The
motion also was filed along with voluminous
evidentiary materials.

3.   The initial review of the defense motion
suggests that it is not based upon the record
construed in the light most favorable to the
non-moving party ... but, rather, are founded
upon selective snippets of documents and
testimony that disregard th greater import of
the record.   While this may be considered
effective advocacy, it now places an enormous
burden on the plaintiff, who has to carefully
review and fully summarize the depositions
and other documents so that the Court can get
a true sense of the contours of the record in
this case.   This alone will take plaintiff,
who once again is a sole practitioner
operating with limited time and resources,
significant time [sic].

4.   Plaintiff's counsel's six year old son
arrived to California for the Christmas
holiday on December 18, 2007 and departs on
January 3, 2008.   While parental obligations
may be considered typical and perhaps not
compelling for these purposes, plaintiff's
counsel's son is residing out of the country
temporarily, and only gets to spend time with
his father for a week to ten days every two
to three months.   Indeed, this is plaintiff's
counsel's son's first trip back to California
since his September departure, and during
this visit, plaintiff's counsel is the sole
custodial parent.   Plaintiff's counsel made
what he feels is a reasonable personal
decision to defer doing any substantial work
on the subject motion until after his son's
visit.   This work was also delayed because,
for the above-stated reasons, the current
state of discovery and the pleadings in this
case do not permit plaintiff to prepare a
reasonable opposition.

5.   Plaintiff's counsel recently, in November

22

2007, moved from his prior office and is temporarily practicing from home, with the majority of his files and equipment being kept at an off-site storage facility. Plaintiff's counsel does not have ready access to his case files currently, and this logistical obstacle also is a basis for requesting additional time to oppose the subject motion.

6.   In addition to the above-stated factors, plaintiff's counsel has three other summary judgment motions that he may have to oppose during relatively the same time period, in <u>Fenters v. Yosemite Chevrolet</u>, No. CV-F-05-1630 OWW DLB, <u>Byrd v. Teater</u>, No. CV-F-06-00900 OWW GSA, and <u>Hoffman v. Memorial Medical Center</u>, No. CV-F-04-5714 AWI DLB, as well as this action.

(Doc. 49, ¶ 1).  Plaintiff's ex parte application was heard on January 4, 2008.  By Minute Order filed on January 4, 2008, Plaintiff's request for a 90 day continuance was granted; Plaintiff's response to the motion for summary judgment was due by April 4, 2008; reply briefs due by April 18, 2008; and the hearing on the motion for summary judgment was set for May 5, 2008.  The pretrial conference and trial dates were vacated and a further scheduling conference to revise the trial schedule was set for May 30, 2008.  Defendants' counsel was instructed to prepare a written Order reflecting the Court's rulings.  A proposed Order was lodged by Defendants' counsel on January 29, 2008 (Doc. 53).  Plaintiff objected to the proposed Order, contending that the Court had ruled on January 4, 2008 that Plaintiff could file the amended complaint and objecting that the proposed Order limits permissible additional depositions to those witnesses whose affidavits were submitted by Defendants in

23

support of their motion for summary judgment (Doc. 54). On
January 31, 2008, Plaintiff filed a First Amended Complaint (Doc.
57). The Court ordered a hearing on the dispute concerning
Defendants' proposed Order for February 1, 2008 (Doc. 58).
Because the conference call was not successfully coordinated, the
hearing on the proposed Order was continued to February 4, 2008
(Doc. 59). The Order Granting Plaintiff's Ex Parte Application
for Continuance of Hearing Date for Pending Summary Judgment
Motion and For Related Necessary Relief was filed on February 25,
2008 (Doc. 67). After reciting the dates for completion of
briefing and hearing of the summary judgment motion, the First
Amended Complaint filed on January 31, 2008 was stricken;
Plaintiff was ordered to file a motion for leave to amend by
February 11, 2008; Defendants opposition was ordered to be filed
by February 22, 2008, and no reply brief was allowed. The Court
expressly stated at the February 4, 2008 hearing: "Then from the
time that your motion is filed, the defendants will have ten days
to respond and then we'll hear that motion, no reply." (Doc. 64,
CT, 14:20-22). Notwithstanding this explicit order, on February
26, 2008 at 3:35 p.m., Mr. Little filed "Plaintiff's Supplemental
Brief in Further Support of Motion for Leave to File Amended
Complaint" (Doc. 68). By Minute Order filed on March 3, 2008,
Plaintiff's motion to file the Amended Complaint was granted.
Given this delay, attributable to Mr. Little, the Court reduced
the amount of prejudgment interest to which Plaintiff was
entitled, ruling that the periods from December 2, 2005 through

24

July 5, 2007 and from December 17, 2007 through August 4, 2008, would not be included in the time for calculation of prejudgment interest because of Plaintiff's inexcusable delay in the prosecution of this action.

At the hearing, Mr. Little conceded that a reduction in the fee award for tasks performed as a result of his unavailability which would not otherwise have been necessary was appropriate. In his supplemental brief filed on February 23, 2010, (Doc. 265), Plaintiff redacted the following time from his fee request:

> A. Time related to solely counsel's unavailability in late 2006 and the related need to request vacatur of the then scheduled dates: 10/13/06 (0.4), 10/18/06 (2.4), 10/19/06 (0.1), 11/1/06 (0.4), 11/20/06 (2.4), 2/23/07 (0.5), 3/5/07 (0.2), 3/13/07 (0.1) - TOTAL OF 6.5 HOURS

> B. Time related solely to counsel's unavailability in 2007 due to his sister's passing and the related stipulation and order to continue the then scheduled dates: 4/17/07 (0.5), 4/18/07 (0.5) 7/5/07 (0.15) - TOTAL OF 1.15 HOURS

> C. Time related solely to counsel's failing to timely oppose the defendants' motion for summary judgment/adjudication and failure to timely move to file a First Amended Complaint:1/1/08 (0.5), 1/2/08 (0.8), 1/3/08 (0.4), 1/4/08 (1.15), 1/13/08 (0.3), 1/15/08 (0.4), 1/29/08 (1.25), 1/30/08 (0.3), 1/31/08 (0.5) - TOTAL OF 5.6 HOURS

> D. Time related solely to counsel's having to respond to the Court's August 4, 2008 Order to Show Cause, which was based on counsel's unavailability and related issues in several of his then pending matters: 8/4/08 (0.1), 8/13/08 (0.2), 8/21/08 (0.25), 8/25/08 (1.00), 8/25/08 (0.1) - TOTAL 1.65 HOURS

The Court also concludes that the time incurred by Mr.

25

Little in connection with his motion to amend will be redacted. The motion to amend would have been totally unnecessary had Mr. Little timely with the Court's Order granting him leave to amend by January 15, 2006.  From the Court's review of the time records, this includes the time incurred February 4, 2008 through March 3, 2008, for a total of 16.2 hours.

Consequently, the requested fee award is reduced by a total of 31.10 hours for the unnecessary time incurred by Plaintiff's counsel due to his failure to timely prosecute this action.

The total number of hours redacted from Plaintiff's fee request is 62.50 hours.

Defendants complain that the billing records submitted by Mr. Little with his opening brief are vague and general and refer to specific entries in the time records submitted with Plaintiff's opening brief.  Defendants also asserts that there are numerous emails to Plaintiff's retained experts which fail to provide information as to the nature of the emails, vague entries pertaining to emails to Defendants' attorneys, and vague entries of "T.C. With D. Ruff re: update."

"Plaintiff's counsel ... is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures."  *Hensley*, *supra*, 461 U.S. at 437 n.12.  Even minimal descriptions will pass muster if they establish that the time was spent on matters for which the district court awarded attorney's fees.  *See Lytle v. Carl*, 382 F.3d 978, 989 (9th

Cir.2004).  However, "[w]here the documentation of the hours is inadequate, the district court may reduce the award accordingly." *Hensley*, *id.* at 432.

In his reply brief, Plaintiff amended all of the time entries cited by Defendants as inadequate and amplified them with more detail.  The Court concludes that the revised time sheets are specific and detailed enough to pass muster.

Plaintiff asserts that his attorney has complied with his duty to exercise billing judgment to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, *supra*, 461 U.S. at 434.  Plaintiff contends:

> [A]lthough the plaintiff could have, he has not sought compensation for the time spent on this case by his former staff, Gloria Coronado and Jill Hoffman, or the time spent on this case by his current assistant, Michelle Tostenrude.  This is a case that was handled in all important respects by the undersigned counsel individually, and only those hours are being sought for compensation.

Plaintiff argues that, where counsel has already to some degree discounted the hours to which he would be entitled to claim, the Court should consider that reduction in assessing the reasonableness of the fee request.  As authority, Plaintiff cites *Moreno v. City of Sacramento*, *supra*, 534 F.3d at 1113:

> The district court has a greater familiarity with the case than we do, but even the district court cannot tell by a cursory examination which hours are unnecessarily duplicative.  Nevertheless, the district court can impose a small reduction, no greater that 10 percent - a 'haircut' - based on its exercise of discretion and without a

more specific explanation.  Here, however,
the district court cut the number of hours by
25 percent, and gave no specific explanation
as to which fees it thought were duplicative,
or why.  While we don't require the
explanation to be elaborate, it must be
clear, and this one isn't.  Plaintiff's
counsel had already cut her fees by 9
percent, so an additional 25 percent cut
would amount to almost one third.  The court
has discretion to make such an adjustment,
but we cannot sustain a cut that substantial
unless the district court articulates its
reasoning with more specificity.  We
therefore conclude that the district court's
explanation is insufficient to sustain a 25
percent cut based on duplication.

Mr. Little provides no evidence of the amount of time
incurred by his assistants or what those assistants did.
Consequently, there is no evidence of the amount of time that
Plaintiff asserts has been redacted from the fee request.
Moreover, Mr. Little provides no evidence by way of declaration
that he redacted anything from his billing statements pursuant to
the *Hensley* standard, i.e., excessive, redundant, or otherwise
unnecessary.  However, given the redactions ordered above, the
Court concludes that the award is reasonable.

b. <u>Reasonable Hourly Rate</u>.

Reasonable fees under Section 1988 are calculated according
to the prevailing market rates in the relevant legal community.
*Blum v. Stenson, supra*, 465 U.S. at 895.  The general rule is
that the rates of attorneys practicing in the forum district are
used.  *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992);
*Davis v. Mason County*, 927 F.2d 1473, 1478 (9th Cir.), *cert.
denied*, 502 U.S. 899 (1991).  The reasonable hourly rate "is not

28

made by reference to rates actually charged by the prevailing party." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir.1986).  The Court should use the prevailing market rate in the community for similar services of lawyers "of reasonably comparable skill, experience, and reputation."  *Id.*

Plaintiff asserts that $300/hour is a reasonable hourly rate for the Eastern District of California.   Mr. Little avers:

> 9.  My hourly fee when I began my practice in Fresno in 1995 was $150.  From January 1, 1998 to January 1, 2000, my hourly fee was $175.  From January 1, 2000 to January 1, 2002, my hourly fee was $200.  From January 1, 2002 to January 1, 2003, my hourly rate was $225.  From January 1, 2003 to January 1, 2004, my hourly rate was $250.  From January 1, 2004 to January 1, 2005, my hourly rate was $275.  Since January 1, 2005, my hourly rate has been $300.  The increase in my hourly fee has been due not only to my now having considerable experience as a sole practitioner, but also due to the increased overhead costs associated with my practice.
>
> ...
>
> 11.  As confirmed by the several declarations of attorneys submitted to this Court in connection with a 1998 fee motion in <u>Caton v. London</u>, No. CV-F-96-6108 AWI SMS, those of Patience Milrod, Melvin M. Richtel, William J. Smith, Jacob Weisberg, Mary Louise Frampton, Glenn Holder, and Scott Williams, all of whom are themselves experienced in civil rights and/or employment cases as plaintiff or defense counsel, an hourly rate within the $170-$285 range was then (more than a decade ago) deemed as the minimum reasonable fee for experienced and qualified counsel in civil rights actions.  Copies of the declarations submitted to the Court in that action, albeit unexecuted copies, are attached hereto as Exhibit 5.  Furthermore, the declarations of those counsel establish that the hourly rate charged is reasonable,

29

> due to the difficulties inherent in civil
> rights litigation, the hesitancy of counsel
> to undertake such litigation absent the
> payment of a reasonable fee, and the risk of
> loss usually personally assumed by counsel in
> such cases.

Defendants pose no objection to the $300 hourly rate sought by Plaintiff.

The $300 hourly rate is reasonable.  Despite his medical troubles, Mr. Little is an experienced and competent civil rights trial lawyer.  In *Beauford v. E.W.H. Group Inc.,* 2009 WL 3162249 (E.D.Cal., Sept. 29, 2009), Judge Ishii ruled that a $350 hourly rate was reasonable for the Eastern District.  *See also Wells Fargo Bank, Nat. Ass'n v. PACCAR Financial Corp.,* 2009 WL 211386 (E.D.Cal., Jan. 28, 2009)(Judge Ishii ruled that $315 is a reasonable hourly rate).  Judge Ishii's rulings were supported by current affidavits from other counsel.  Although Mr. Little would have done better to submit more recent affidavits establishing the current hourly rate being charged by civil rights attorneys of comparable skill and experience, the absence of any objection from Defendants coupled with Judge Ishii's rulings establishes that the $300.00 hourly rate is reasonable.

4. <u>Interim Award</u>.

In his reply brief, Plaintiff requested that attorney's fees be paid as part of an interim fee award as permitted under Section 1988.

Defendants objected to this request as prejudicial to them because they were unable to respond to it.  Courts generally

30

decline to consider arguments raised for the first time in a reply brief.  *See United States v. Bohn*, 956 F.2d 208, 209 (9th Cir.1992); *United States v. Boyce*, 148 F.Supp.2d 1069, 1085 (S.D.Cal.2001).  Therefore, Plaintiff's request for an interim award of attorney's fees is denied.

> **B.   PLAINTIFF'S REQUEST FOR BILL OF COSTS.**

On October 6, 2009, Plaintiff filed a Bill of Costs, seeking costs in the total amount of $16,887.19.

Defendants object that Plaintiff's Bill of Costs was untimely filed.

Judgment for Plaintiff was entered on September 24, 2009. Rule 54-292(b), Local Rules of Practice, in effect on October 2, 2009, provided:

> Within ten (10) days after entry of judgment or order under which costs may be claimed, the prevailing party may served on all other parties and file with the Clerk a bill of costs conforming to 28 U.S.C. § 1924.  *See* Fed. R. Civ. P. 6(a), (d).

Effective March 3, 2010, the Local Rules for the Eastern District of California were amended.  Rule 292(a), Local Rules of Practice now provides:

> Within fourteen (14) days after entry of judgment or order under which costs may be claimed, the prevailing party may serve on all other parties and file a bill of costs conforming to 28 U.S.C. § 1924.

Rule 6(a)(1), Federal Rules of Civil Procedure, effective December 1, 2009, provides:

> (a) Computing Time.  The following rules apply in computing any time period specified

1

2

in these rules, in any local rule or court
order, or in any statute that does not
specify a method of computing time.

3

4

(1) Period Stated in Days or a Longer Unit.
When the period is stated in days or a longer
unit of time:

5

6

(A) exclude the day of the event that
triggers the period;

7

(B) count every day, including intermediate
Saturdays, Sundays, and legal holidays; and

8

9

10

(C) include the last day of the period, but
if the last day is a Saturday, Sunday, or
legal holiday, the period continues to run
until the end of the next day that is not a
Saturday, Sunday, or legal holiday.

11   Pursuant to Rule 6(a)(2), the ten day period in which to file the

12   Bill of Costs expired on Monday, October 5, 2009.

13        Plaintiff argues that, when an applicable time period is

14   less than ten days, intermediate weekend days and holidays are

15   excluded, referring to Rule 6 prior to its amendment and to Rule

16   6-136, Local Rules of Practice.  At the time Plaintiff filed his

17   bill of costs, the amendment to Rule 6 had become effective.

18   Local Rule 6-136 merely refers the party to Rule 6.  Plaintiff is

19   charged to know the law.  Although the Local Rules of Practice

20   for the Eastern District as amended were not issued until March

21   3, 2010, Rule 54-292(b) specifically referred the party to Rule

22   6(a).  Rule 6(b)(1), effective December 1, 2009, provides:

23

24

When an act may or must be done within a
specified time, the court may, for good
cause, extend the time:

25

26

(A) with or without motion or notice if the
court acts, or if a request is made, before
the original time or its extension expires;

1          or

2          (B) on motion made after the time has expired
           if the party failed to act because of
3          excusable neglect.

4      Defendants' objection that Plaintiff's Bill of Costs was

5  untimely filed is well-taken.  Although Plaintiff did not seek an

6  extension of time within the original time period and has not

7  filed a motion seeking relief from the time requirement because

8  of excusable neglect, the Court nonetheless concludes that

9  Plaintiff's failure was due to excusable neglect.  Plaintiff's

10 counsel clearly was not aware that a long-standing rule of

11 federal procedure had been amended and Plaintiff's Bill of Costs

12 was filed only one day late under the new calculation procedure

13 set forth in Rule 6(a)(2).  If the Local Rules as amended on

14 March 3, 2010 had been in effect, Plaintiff's Bill of Costs would

15 have been timely.  Defendants' objection to Plaintiff's Bill of

16 Costs on the ground of untimeliness is rejected.

17     Plaintiff's Bill of Costs seeks reimbursement for items

18 beyond those allowed by 28 U.S.C. §§ 1821 (pertaining to per diem

19 and milage generally) and 1920.  Specifically, Plaintiff seeks

20 reimbursement for "compensation of court-appointed experts" in

21 the amount of $13,370.48, and for "other costs" in the amount of

22 $1,802.85.  In Plaintiff's itemization, the expert fees are

23 $13,000.00 for Barrett Kays and $370.48 for John Bettancourt.  In

24 Plaintiff's itemization, the "other costs" are:

25          Kings Waste and Recycling Authority - Public
           Records Fee - $43.05;
26

Postal Annex - Mailing Fees - $32.20;

Motel 6 - room for H. Ruff, first week of trial - $201.57;

Parking - $31.00;

La Quinta - room for H. Ruff, second week of trial - $176.96;

El Torito - dinner with Barrett Kays - $50.37;

Airfare - H. Ruff - $480.40;

Airfare - Barrett Kays - $787.30.

Section 1821(a)(1) provides that "[e]xcept as otherwise provided by law, a witness in attendance at any court of the United States ... or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section."  A witness "shall be paid an attendance fee of $40 per day for each day's attendance" and shall be paid "the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."  Section 1821(b).  Section 1821(c)(1) provides:

> A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance.  Such a witness shall utilize a common carrier at the most economical rate reasonably available.  A receipt or other evidence of actual cost shall be furnished.

34

"[P]arking fees (upon presentation of a valid parking receipt), shall be paid in full to the witness incurring such expenses," Section 1821(c)(3), and "[a]ll normal travel expenses within and outside the judicial district shall be taxable as costs pursuant to section 1920."  Section 1821(c)(4).  "A subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance" which shall be "paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to Section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government."  Section 1821(d)(1) & (2). Section 1920 provides that the following costs may be taxed:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts ....

    Plaintiff contends that costs and expert fees are explicitly recoverable under 42 U.S.C. § 1988(c).

    In *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987), the Supreme Court held that expert witness fees are

only recoverable pursuant to a contract or explicit statutory
authority.  In *West Virginia University Hospitals v. Casey*, 499
U.S. 83 (1991), the Supreme Court addressed whether expert fees
in civil rights litigation may be shifted to the losing party
pursuant to Section 1988.  The Supreme Court found that where
Congress had intended to provide for the recovery of expert fees,
it specifically provided for such recovery and ruled that Section
1988's provision for a "reasonable attorney's fee" did not allow
for the recovery of expert witness fees.  42 U.S.C. § 1988(c) was
enacted in 1991 to expressly provide:

> In awarding an attorney's fee under
> subsection (b) of this section in any action
> or proceeding to enforce a provision of
> section 1981 or 1981a, the court, in its
> discretion, may include expert fees as part
> of the attorney's fee.

Here, Plaintiff's action was based on Section 1983, not
Section 1981 or Section 1981a.  Plaintiff cites no authority that
has permitted an award of expert witness fees in a Section 1983
action pursuant to Section 1988(c).  The Court's research
indicates that cases are uniform that Section 1988(c) does not
apply to a Section 1983 action, relying on the plain wording of
the statute and *West Virginia University Hospitals v. Casey*,
*supra*.  *See e.g., Frevach Land Co. v. Multnomah County, Dept. of
Environmental Services, Land Use Planning Div.*, 2001 WL 34039133
at * 35-36 (D.Or.Dec.18, 2001).  In fact, Plaintiff concedes in
his reply brief that he cannot seek reimbursement for expert
witness fees.  Plaintiff's bill of costs for $13,370.48 in expert

36

witness fees is disallowed.

Defendants argue that Plaintiff's Bill of Costs should be reduced to reflect his limited success in this action.  For the reasons stated *supra*, this contention is rejected.

Defendants argue that Plaintiff's Bill of Costs for $1,252.56 in fees for exemplification and copies of papers necessarily obtained for use in the case should be reduced by $1,241.39.  Defendants refer to the following itemization attached to Plaintiff's Bill of Costs:

4-15-09 Office Depot - Document Reproduction - $617.98;

9-11-09 Office Deport - Exhibit Binders, tabs, etc. - $188.00;

9-11-09 Office Depot - Document Reproduction - $6.47;

9-11-09 Office Depot - Reproduction and binding of exhibits - $424.12;

9-13-09 Office Depot - Document reproductions - $4.81.

As to April 15, 2009 copying costs, Defendants assert that they received no production of documents from Plaintiff on or about April 15, 2009, and that the receipt indicates "services" in the amounts of $56.00 and $211.06, as well as burning or scanning of a CD in the amount of $8.97, and a "services/handplace" in the amount of $179.75.  As to the September 11, 2009 Office Depot receipts, the costs include Post-It tabs, a Sharpie pen, computer printer ink, costs, for indexing, binding and labor, none of which, Defendants assert, are taxable.

Defendants assert that Plaintiff's Bill of Costs for $151.30 for fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case should be reduced by $129.80 paid to Al Cala and Associates for John Bettancourt's deposition transcript.  Defendants note that the deposition transcript was not ordered until one week prior to the trial and Mr. Bettancourt was not called as a witness in this action.

As to Plaintiff's "Other Costs," Defendants that the Public Records Fee to the Kings Waste and Recycling Authority and the Postal Annex mailing fees are not recoverable costs under Section 1920.  With regard to the parking fees, Defendants note that Plaintiff fails to identify on whose behalf the parking fees were incurred, i.e., for a specific witness or Plaintiff's counsel. As to the lodging fees for Plaintiff's son, Hannaniah Ruff, at Motel 6 on September 14, 2009 and at La Quinta on September 21 and 22, 2009, Defendants note that Hannaniah Ruff testified as a witness on the second day of the trial, September 16, 2009. Defendants assert:

> In reviewing the documentation in support of this claim, it appears that the charges incurred were for two adults staying at the Motel 6 on Monday, September 14; Tuesday, September 15; and Wednesday, September 16; and checked out on Thursday, September 17. Hannaniah Ruff did not arrive in Fresno until Tuesday, September 15, 2009.  As such, the charges incurred for the night of Monday, September 14, 2009, were not necessarily incurred.  According to the bill, the hotel rate is $59.99 per night.  While a one night charge may be reasonable for lodging for

> Hannaniah Ruff, the balance of $141.58 should
> be stricken.
>
> Similarly, hotel charges were incurred at La
> Quinta Inn on Monday, September 21, 2009; and
> Tuesday, September 22, 2009.  Again,
> Hannaniah Ruff testified the week before, and
> his presence during trial this second week
> was not longer necessary.  As such, this
> charge in the amount of $176.96 should be
> stricken.

Plaintiff replies that Defendants' contentions "conflate 28 U.S.C. § 1920 with 42 U.S.C. § 1988."  Plaintiff concedes that his Bill of Costs seeks reimbursement for items beyond those allowed by Section 1821 and 1920, but, Plaintiff asserts, the reason for this is that such costs are taxable in a civil rights action pursuant to Section 1988.  "Under § 1988, the prevailing party 'may recover as part of the award of attorney's fees those out-of-pocket expenses that "would normally be charged to a fee paying client,"'" *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir.2005), even if the court cannot tax these expenses as "costs" under Section 1920.  *Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir.1994).  Such out-of-pocket expenses are recoverable when reasonable.  *Dang*, *id.*

Defendants do not contend that the "Other Costs" are not ones that would normally be charged to a fee-paying client; they only argue that the challenged costs were not necessary or were not taxable under Section 1920.  Nonetheless, an attorney would not normally charge a fee paying client for hotel bills for a witness and some unidentified person for a number of days when that witness only testified on one day.  Plaintiff's bill of

39

1 costs is reduced by the amount of $318.54.

2        C.  **DEFENDANTS' REQUEST FOR BILL OF COSTS**.

3        On October 2, 2010, Defendants County of Kings and Mark

4 Sherman timely filed a Bill of Costs, seeking costs in the total

5 amount of $2,210.49, representing one half of the costs incurred

6 by Defendants in the action.

7        Plaintiff, referring to his then pending motion for

8 declaratory relief against the County of Kings, (Doc. 199),

9 argued that the County's liability for prospective relief

10 dictates that it is not a prevailing party in this action.

11 However, Plaintiff's motion for declaratory relief was denied by

12 Memorandum Decision and Order filed on December 18, 2009 (Doc.

13 236), as was Plaintiff's motion for reconsideration.  (Doc. 248).

14        As to Defendant Mark Sherman, Plaintiff objects that he has

15 failed to show that, despite indemnification rights under

16 California Government Code §§ 825 and 825.2, he is actually

17 personally liable for paying any defense costs.  Plaintiff cites

18 *Chew v. Gates*, 27 F.3d 1432, 1436 (9th Cir.1994) and *Farmers Ins.*

19 *Group v. County of Santa Clara*, 36 Cal.App.4th 91 (1994).

20 Plaintiff contends:

21              Since there is no indication that defendant
               Sherman actually incurred or paid any costs,
22              his bill of costs should be altogether
               denied.  Plaintiff should not be required to
23              reimburse costs incurred by Kings County,
               which [sic] itself is not entitled to seek
24              costs.

25        However, there is no such discussion in *Chew v. Gates*.  And

26 as Defendants note, the lower court opinion in *Farmers Ins. Group*

was reversed by the California Supreme Court in *Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992 (1995).  In the lower court opinion, a deputy sheriff and his homeowner's insurer brought an action against the county seeking indemnity pursuant to Government Code §§ 825.2 and 996 for attorney fees, costs, and settlement payment in an action by female deputies alleging sexual harassment.  The Court of Appeal held that the deputy's conduct was within his "scope of employment" and, therefore the county was required to indemnify the deputy sheriff.  The Supreme Court reversed, holding that sexual harassment was not within the scope of employment even though it occurred during work hours in a workplace that could be characterized as traditionally male dominated.  Moreover, the County is a prevailing party in this action because the jury found for the County and the Court denied Plaintiff's motion for declaratory relief.

Plaintiff concedes that, as a general rule, a prevailing party whose costs are paid by a third party is still entitled to seek costs from a losing party.  Plaintiff cites *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir.1991)(costs under Rule 54(d) could be awarded to a prevailing city even though the costs were incurred by the city's insurer; to rule otherwise would allow plaintiffs to bring lawsuits against insured defendants without incurring litigation costs after losing on the merits); *see also Safeway Rental & Sales Co. v. Albina Engine & Machine Works, Inc.*, 343 F.2d 129, 135 (10th Cir.1965).  However, Plaintiff argues, the "role of defendant Sherman's idemnitor,

1   Kings County, is not merely one of an insurer but rather one of a
2   codefendant who is not entitled to seek costs."  Therefore,
3   Plaintiff contends, Kings County is more aptly characterized as a
4   party to a joint defense rather than Defendant Sherman's insurer.
5   Plaintiff argues that "[t]he third party insurer rule is
6   inapplicable in the joint defense context; typically, parties to
7   a joint defense or cost sharing arrangement are entitled to
8   recover only that portion of costs they actually paid
9   thereunder."  Unless Defendant Sherman can demonstrate that he
10  actually paid the joint defense costs for which he seeks
11  reimbursement, Plaintiff asserts the Bill of Costs should be
12  denied as to Defendant Sherman.  Plaintiff cites *Smith v. Hughes*
13  *Aircraft Co.,* 10 F.3d 1448, 1453 (9th Cir.1993) and *Truck*
14  *Components, Inc. v. Beatrice Co.,* 1996 WL 402520 (N.D.Ill, July
15  15, 1996), as authorizing reimbursement to a joint defense or
16  cost sharing defendant based on the amount of costs for which the
17  defendant was actually responsible.

18      There is no discussion of such a rule in either of these
19  cases.

20      Defendants respond that there is no evidence that the County
21  and Defendant Sherman are co-insurers or entered into any cost
22  sharing agreement:

23          The fact that the County was also a named
            defendant in this matter has no bearing on
24          whether Mr. Sherman, as a prevailing party,
            may recover his costs.
25
26      Plaintiff's contention that the joint defense or cost-

sharing rule applies to preclude the taxing of costs as to

Defendant Sherman is without merit.  First of all, the County is

a prevailing party and entitled to seek costs.  Secondly, as a

public employee whose defense was provided by the County,

Defendant Sherman would not have been liable for any of these

costs.

Plaintiff objects to Defendants' Bill of Costs for $737.50

in fees for service of summons and subpoena, itemized in Exhibit

A to the Bill of Costs.    Plaintiff asserts:

> Exhibit A shows that the stated expenses were
> not merely for service but also for
> investigative-type expenses.  The latter
> categories are not subject to reimbursement
> under 28 U.S.C. § 1821 and 1920.  Since the
> defendants have failed to separate the
> compensable and non-compensable expenses
> under this item, it should be altogether
> denied.  Moreover, there is a $193.00 expense
> for a trial subpoena serve [sic] on Jan
> Reynolds, who did not even testify at trial.

Exhibit A to Defendants' Bill of Costs includes two invoices

from Doug Stokes Investigations for the service of six presumably

trial subpoenas in late May-early June, 2009 and for the service

of a trial subpoena on Jan Reynolds.  Fees for service of trial

subpoenas by private process servers are taxable as costs.  *See*

*Alflex Corp. v. Underwriters Laboratories, Inc.,* 914 F.2d 175,

178 (9th Cir.1990).

Defendants respond that Exhibit A to Defendants' Bill of

Costs documents the steps that were necessarily taken in order to

effectuate service of the various subpoenas.  The invoice for

service of the six trial subpoenas in late May-early June, 2009

43

shows the following activity log:

5-29-09

• Dropped off old subpoenas and picked up new

• Drove to Armona and served Rita Brown (she understands Ruff brothers are still living out of state)

• Drove to 533 W. Ivy, Hanford and attempted to serve Brieno

• Drove to 208 Scott St., Hanford and served Tammy Sanders

• Drove to 9549 Eastview Dr., Hanford and spoke with Mr. Ruff who refused to give information regarding his wife's whereabouts

    3.5hr/124 mi

5-30-09

• Drove to Eastview Dr., Hanford - no answer, spoke with neighbors who state they have not seen Edith [Ruff] for a month or so

• Drove to Ivy address and served Brieno (he stated that D. Ruff is separated from his wife and Edith is living in Fresno with her mother)

    3 hr/120 mi

6-1-09

• Spoke with Dillahunty regarding information obtained

• Ran skip trace check for E. Ruff in Fresno - no new addresses

• Created activity log

    1 hr

6-3-09

• Returned proof of service and unserved subpoenas

44

1

    **5 mi**

2

   **BILLING**

3

   7.5 hrs @ $70/hr = $525.00
   254 mi @ .50/mi = $ <u>127.00</u>

4

         $652.00

5  Defendants assert that, just as defendants are entitled to

6 recover witness fees paid to a witness who was not called to

7 testify, Defendants should be entitled to recover costs incurred

8 in subpoenaing a trial witness who was not ultimately called to

9 testify.

10  Plaintiff objects to Defendants' Bill of Costs for $3,326.95

11 for fees of the court reporter for all or any part of the

12 transcript necessarily obtained for use in the case.  Defendants'

13 itemization of its Bill of Costs reflects deposition transcripts

14 of Plaintiff, John Bettancourt, Barrett L. Kays, Art Brieno,

15 Tammye Sanders, and Rita Brown.  Plaintiff asserts that the

16 record shows that Defendants did not call any of the deponents as

17 witnesses at trial and deponents John Bettancourt and Rita Brown

18 did not testify at all.

19  Deposition costs are taxable if they are reasonably

20 necessary for trial.  *Evanow v. M/V Neptune*, 163 F.3d 1108, 1118

21 (9th Cir.1998).  "'Whether a transcript or deposition is

22 "necessary" must be determined in light of the facts known at the

23 time the expense was incurred ....'" *Sunstone Behavioral Health,*

24 *Inc. v. Alameda County ...*, 646 F.Supp.2d 1206, 1219

25 (E.D.Cal.2009), citing *Barber v. Ruth*, 7 F.3d 636, 645 (7th

26 Cir.1993).  Defendants assert:

> Each lay witness deposed was an individual
> who had been identified by the plaintiff,
> both in written discovery responses and in
> his deposition testimony, as having
> information pertinent to his lawsuit.  Based
> on those representations, it was determined
> that each witness should be deposed.
> Plaintiff's experts were also necessarily
> deposed in order to determine the nature of
> their opinions, the basis therefor, and in
> order to prepare for trial.  As each
> deposition was reasonably necessary,
> defendants are entitled to recover costs
> therefor.

Plaintiff objects to Defendants' Bill of Costs for $200 for fees for witnesses.  Defendants' itemization of its Bill of Costs indicates $40.00 for the depositions of John Bettancourt, Barrett Kays, Art Brieno, Rita Brown, and Tammye Johnson [sic].  Plaintiff asserts that Defendants are not entitled to obtain reimbursement for expert witness fees or fees for witnesses who were not necessary for trial under 28 U.S.C. §§ 1821 or 1920.  Plaintiff contends:

> The defendants did not subpoena the
> plaintiff's experts, John Bettancourt and
> Barrett Kays, and are instead trying to
> obtain reimbursement for a portion of the
> expert witness fees paid to them as if they
> had been subpoenaed and paid witness fees.
> This is improper and should be denied.
> Further, as to witness Brown, she was not a
> witness necessarily subpoenaed and paid
> witness fees in this case, since she was not
> even called as a witness at trial and did not
> have her deposition used at trial.  These
> cost items should be denied.

Plaintiff's objections are without merit.  Both Rule 54-292 and Rule 292, Local Rules of Practice, provide that items taxable as costs include "[p]er diem, mileage and subsistence for

46

witnesses (28 U.S.C. § 1821)." Section 1821(a)(1) and (b) provides for the payment of the statutory fee of $40.00 per day for a witness's attendance "before any person authorized to take his deposition pursuant to any rule or order of a court of the United States."

Plaintiff's objections are without merit. Defendants' bill of costs is allowed as an offset to the costs allowed to Plaintiff.

<u>CONCLUSION</u>

For the reasons stated:

1. Plaintiff's motion for attorney's fees is GRANTED;

2. Plaintiff is awarded attorney's fees in the amount of $198,615.00 (662.05 hrs. x $300.00 hr.);

3. Plaintiff's Bill of Costs is taxed at the total amount of $3,198.17, offset by $ $2,210.48 for Defendants County of Kings and Mark Sherman's Bill of Costs, for a total taxable cost to Plaintiff of $967.68.

3. Plaintiff's counsel shall prepare and lodge a form of order consistent with this Memorandum Decision within five (5) court days following service of this Memorandum Decision.

IT IS SO ORDERED.

Dated: __March 24, 2010__          _____/s/ Oliver W. Wanger_____
                                     UNITED STATES DISTRICT JUDGE