**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DANIEL RUFF,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**COUNTY OF KINGS, et al.,**<br><br>**Defendant.** | **No. CV-F-05-631 OWW/GSA**<br><br>**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO INCREASE SUPERSEDEAS BOND (Doc. 280)** |

**By motion filed on April 5, 2010, Plaintiff moved the Court to increase the $250,000 "supersedeas bond" ordered by the Court in its Memorandum Decision and Order Granting Defendants' *Ex Parte* Application for Stay of Enforcement of Judgment Pending Post Trial Motions and Appeal filed on December 2, 2009 (Doc. 237; December 2, 2009 Memorandum Decision). Plaintiff's motion sought to increase the "supersedeas bond" to $350,000 to cover the award of attorney's fees to Plaintiff in the amount of $198,615 and "additional fees that plaintiff would likely occur in opposing the defendants' appeal."**

**No supersedeas bond was posted by Defendants. Pursuant to a subsequent oral ruling by the Court, Defendants deposited $250,000.00 into the registry of the Court in lieu of posting a supersedeas bond. (Doc. 247).**

**On May 8, 2010, Plaintiff filed a supplemental brief. Plaintiff notes that Defendants' voluntarily dismissed their appeal on May 7, 2010, (Doc. 284), although Plaintiff's appeal remains pending. Because of the dismissal by Defendants' of their appeal, Plaintiff moves the Court for an order releasing the $250,000 cash bond to Plaintiff in order to satisfy the Judgement. Plaintiff asserts that the amount currently owed by Defendants to Plaintiff is $415,483.65, comprised of: (1) the $200,000 Judgment; (2) prejudgment interest in the amount of $15,900.97; (3) costs in the amount of $987.68; and (4) attorney's fees in the amount of $198,615.00. Plaintiff moves the Court to order Defendants to pay the $165,483.65 balance over the cash deposit "forthwith."**

**A threshold issue not discussed by the parties is whether this Court has any jurisdiction to entertain Plaintiff's motion. As a general rule, "[t]he filing of a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."** ***Griggs v. Provident Consumer Disc. Co.,*** **459 U.S. 56, 58 (1982). As explained in *Stein v. Wood*, 127 F.3d 1187, 1189 (9th Cir.1997):**

> **The rationale for this general rule is that it avoids 'the confusion and waste of time that might flow from putting the same issues before two courts at the same time.' ... The general rule is thus a rule of judicial economy. It does not rest on a statute and 'should not be employed to defeat its purposes nor to induce needless paper shuffling.' ....**
>
> **There are a number of exceptions to the general rule that a district court loses jurisdiction upon the filing of a notice of appeal. A district court may, for example, retain jurisdiction to correct clerical errors or clarify its judgment pursuant to Fed.R.Civ.P 60(a) ... A district court may retain jurisdiction when it has a duty to supervise the status quo during the pendency of an appeal, or in aid of execution of a judgment that has not been superseded ....**

***See also Ribbens Intern., S.A. de C.V. v. Transport Int'l Pool, Inc.,*** **40 F.Supp.2d 1141, 1143 (C.D.Cal.1999)("This Court ... has jurisdiction to hear and decide this ex parte application for enforcement of the supersedeas bond and stay of execution (application) despite the fact that a notice of appeal has been filed in this Court.")**

**In *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988), the Supreme Court ruled that a district court's decision on the merits was appealable as a final decision within the meaning of 28 U.S.C. § 1291, even though the recoverability or amount of attorney's fees for the litigation remains to be determined:**

> **"A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." ... A question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot**

> **or revise decisions embodied in the order.**

***Id.* at 199.**

**The fact that Plaintiff's cross-appeal continues in the Ninth Circuit should not preclude granting this motion, Plaintiff contends, because his appeal pertains only to issues or rulings on which Plaintiff was unsuccessful:**

> **If plaintiff prevails on his cross-appeal, he could be entitled to additional declaratory relief and/or further proceedings on his unsuccessful claims, but the current judgment's validity is no longer in question and should be ordered paid and satisfied forthwith.**

**Defendants respond that the pendency of Plaintiff's appeal precludes granting this motion because, until Plaintiff's appeal is resolved, there is no final judgment. Defendants assert that Plaintiff "is appealing not only the jury verdict with regard to his substantive due process and equal protection claims, he is also appealing the jury's verdict on the procedural due process claim and the court's ruling on his motion for declaratory and/or ancillary relief." Defendants refer to the Court's conclusion in the Memorandum Decision Granting Plaintiff's Motion for Attorney's Fees and Awarding Costs, (Doc. 271), that the issues pertaining to substantive due process and equal protection were inextricably inter-related to the claim on which Plaintiff prevailed. Plaintiff's amended notice of cross-appeal filed on January 7, 2010 is of this Court's "adverse rulings on the defendants' motion to dismiss the First Amended Complaint, the defendants' motion for summary judgment or summary adjudication,**

**plaintiff's motion for partial adjudication as a matter of law, the adverse aspects of the jury verdict and judgment, plaintiff's motion for declaratory relief, as well as the Court's various adverse rulings on post-trial motions, including any adverse ruling on the pending motion for attorney's fees." (Doc. 254). Defendants argue that, should Plaintiff prevail on any of these issues, it is likely that the money judgment "could increase, decrease or simply remain the same" and that "[g]iven the uncertainty as it pertains to the judgment, the plaintiff is not entitled to a release of the funds currently deposited with the court." Defendants cite *Tennessee Valley Authority v. Atlas Machine & Iron Works, Inc.*, 803 F.2d 794 (4th Cir.1986).**

**In *Atlas Machine & Iron Works*, TVA sued to recover for Atlas' breach of contract to construct and deliver steel embedments for use at nuclear reactors. Atlas counterclaimed for TVA's alleged breach of warranty. The District Court determined TVA's damages due to Atlas' breach, but also found that Atlas was entitled to costs due to defective specifications and to an unpaid balance due on the contract, resulting in a net award to TVA. Atlas filed a notice of appeal and posted a supersedeas bond, with Fireman's Fund acting as surety on the supersedeas bond. TVA then filed a notice of cross-appeal. The Fourth Circuit affirmed on the question of liability, but remanded for calculation of damages. On remand, the District Court recalculated the damages, resulting in a net award to TVA. TVA moved for enforcement of the supersedeas bond when it was**

**determined that Atlas was unable to pay any part of the new judgment. The District Court denied TVA's motion and TVA appealed. On appeal, Fireman's Fund, the surety for the supersedeas bond argue that it was not liable "(1) because TVA, by taking its own appeal, lost its right to enforce the original judgment and rendered superrogatory the supersedeas bond; (2) because, under the terms of the supersedeas bond itself, the obligations of both principal and surety had been discharged when the court of appeals vacated the original judgment." 803 F.2d at 797. As to the first issue, the Fourth Circuit ruled:**

> **Fireman's Fund is correct in contending that TVA's filing of a cross-appeal deprived TVA of the right to execute the original judgment even in the absence of a supersedeas bond. Where the prevailing party in the lower court appeals from that court's judgment, the appeal suspends the execution of the decree ... Morever, where the prevailing party is the first to take an appeal, no supersedeas bond can be required of the losing party when it subsequently files its own appeal, because the execution of the judgment has already been superseded by the prevailing party's appeal ....**
>
> **However, Fireman's Fund can point to no authority to support its conclusion that where the losing party is the first to appeal and a supersedeas bond is properly required, the appellant's obligations under that bond are excused when the prevailing party subsequently files a cross-appeal. On the contrary, the Fifth Circuit implicitly rejected that view in *Aviation Credit Corporation v. Conner Air Lines*, 307 F.2d 685 (5th Cir.1962), where it enforced a supersedeas bond filed by an appellant despite the fact that the appellee had taken a cross-appeal. While no explanation for the court's ruling is forthcoming in its opinion, we are satisfied as to the correctness of its**

> **result. Had Atlas filed the bond as part of a bargained-for exchange, receiving in response TVA's promise not to execute the district court's judgment, Fireman's Fund might perhaps be entitled to argue that its obligation was excused because TVA's filing of a cross-appeal deprived Atlas of consideration or frustrated its purpose. Those contract-law doctrines are inapplicable here, however, where the bond was given not as part of a bargained-for exchange, but pursuant to the requirements of Fed.R.Civ.P. 62(d). Moreover, to hold the bond vacated by the cross-appeal would have put TVA to an untenable choice of either taking a $200,300.29 bird in the hand or, with a substantial degree of probability, losing any recovery altogether, although it was finally vindicated in its conclusion that the damages award had been very substantially understated.**

**803 F.2d at 797-798.**

**Given the dismissal by Defendants of their appeal, it is extremely unlikely that the monetary Judgment and the award of attorney's fees and costs will decrease. Plaintiff's amended notice of cross-appeal makes clear that Plaintiff's appeal is limited to claims on which he was unsuccessful and does not appeal the claim on which he prevailed. Plaintiff argues that *Atlas Machine* is distinguishable because, here, there is no net damages award involved and "the issues on appeal have no possible effect on the jury award, fee award, cost award, and interest award, which are no longer being appealed by the party who posted the bond." Further, *Atlas* does not stand for the proposition that a losing party who appeals may be excused from a supersedeas bond merely by virtue of a prevailing party's subsequent cross-appeal. Following the hearing, Plaintiff filed a supplemental**

**brief, (Doc. 292), in which he cites *BASF Corp. v. Old World Trading Co.*, 979 F.2d 615 (7th Cir.1992).**

**In *BASF Corp.*, BASF won a judgment against Old World of $2.5 million and costs of $275,000 and Old World received $1 on its counterclaim. Both parties filed notices of appeal, BASF contending that it is entitled to more damages, and Old World contending that BASF should get nothing while the $1 should be increased. Old World argued to the District Court that it was entitled to a stay of execution of judgment without posting a bond or other security because an appeal by the nominally prevailing party automatically stays the judgment. The District Court rejected Old World's position. The Seventh Circuit noted that the Courts of Appeal had taken divergent views, citing *Atlas Machine & Iron Works*, *supra*, and *Enserch Corp. v. Shand Morahan & Co.*, 918 F.2d 462 (5th Cir.1990)(appeal by prevailing party does not stay enforcement). The Seventh Circuit denied Old World's motion for a stay of enforcement of BASF's judgment without security. The Seventh Circuit rejected Old World's contention that BASF was taking inconsistent positions by demanding enforcement of the judgment while contending that the amount of the judgment was too low:**

> **[W]e know ... that a litigant may accept a tender of the amount of the judgment without forfeiting his right to seek more on appeal ... Why should things be otherwise when the loser is reluctant to pay? In either case, the holder of the judgment wants to enjoy its benefits while seeking more.**

**979 F.2d at 616. The Seventh Circuit ruled:**

**Rule 62(d) requires a bond as a condition of the stay of a money judgment during an appeal. There are some automatic exceptions - for example, when the losing party is the United States or a federal agency, Rule 62(e) - but an appeal by the victor is not among them ....**

**For six years, until the district court resolved the case, Old World held the disputed stakes. BASF was at risk that business reverses or other developments might render Old World unable to pay any sum ultimately awarded. Now that BASF has carried its burden of persuasion and possesses a judgment, it is entitled to be made secure during the steps leading to the final disposition. So much would be clear if Old World were the only appellant. Old World's belief that BASF should get nothing does not justify leaving the prevailing party at risk. A bond secures both sides: the winner is sure to recover if the judgment is affirmed, and the loser need not fear inability to recoup if the judgment is reversed. If the loser must pay or post security even though the judgment may be too high, the need for security is even more urgent if the judgment may be too low. To see this, suppose BASF is right and the judgment should be increased; in that event, BASF is under-secured even if Old World posts a bond for the full amount of the judgment. If instead BASF is wrong and the judgment is proper, then security for the full amount of the judgment remains appropriate, just as if Old World were the only appellant.**

***...***

**The fifth circuit held in *Enserch* that a prevailing party's appeal suspends enforcement of the judgment only when the theory of the appeal is inconsistent with enforcement in the interim. We agree with that approach and join the fifth circuit in rejecting *Atlas Machine*. Nothing in BASF's appellate demand for Old World's profits as damages is inconsistent with collecting the loss-based award that BASF deems paltry.**

***Id.* at 617.**

**Plaintiff argues that Defendant's reliance on *Atlas Machine* is misplaced and that the weight of authority provides that "a prevailing party's appeal suspends enforcement of the judgment only when the theory of the appeal is inconsistent with enforcement in the interim." *BASF, id.* Plaintiff contends:**

> **The mere existence of plaintiff's cross-appeal does not absolutely bar him from executing the portion of the judgment favorable to him, so long as the issues on appeal make it clear that the favorable judgment is not being challenged and will not be altered by the appellate disposition. Since plaintiff has made it clear in his amended notice of cross-appeal ... that he is not appealing the claims he won, but rather those he lost, there is no legal reason to suspend the execution of the favorable portion of the judgment further.**

**Neither *Atlas Machine* nor *BASF* are relevant to the resolution of this motion; here Defendants did post security for the judgment and received a court-ordered stay of the judgment pending appeal. At the hearing on the instant motion, the Court questioned whether there is a final judgment for purposes of execution because of the pending appeal. *BASF* stands for the proposition that a judgment is final for purposes of execution notwithstanding an appeal if no supersedeas bond or other security is posted by the losing party and the prevailing party's issues on appeal are not inconsistent with enforcement of the judgment in the interim. As explained in *Exxon Valdez v. Exxon Mobil*, 568 F.2d 1077, 1085 (9th Cir.2009)(Kleinfeld, J., concurring):**

> **The rationale for a supersedeas bond is that there can be no certainty about who is in the right until the appeals are done; the party that lost should not have to pay the winner until the district court's decision is finally affirmed, but in the meantime, the party that won in district court should not be at risk of the money disappearing. To protect the winner from the risk that the loser will not have the money if and when the judgment is affirmed, the bond is ordinarily secured by property or by surety.**

**Here, the jury's monetary award and the amount of prejudgment interest and attorney's fees and costs awarded to Plaintiff by the Court are now essentially final given the dismissal of Defendants' appeal. Plaintiff may be entitled to more money or different relief if he prevails on his cross-appeal, but he cannot be entitled to less. The purpose behind requiring Defendants to deposit the moneys with the Court in lieu of a supersedeas bond no longer exists. Defendants' reliance on cases determining the amount of an award of attorney's fees to a prevailing party is misplaced.**

**Defendants further argue that Plaintiff has failed to utilize the proper procedure for executing on his Judgment. Rule 69(a)(1), Federal Rules of Civil Procedure, provides:**

> **A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution - and in proceedings supplementary to and in aid of judgment or execution - must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.**

**As explained in the Memorandum Decision and Order Denying without Prejudice Plaintiff's Motion for Declaratory and Ancillary Relief**

**under 28 U.S.C. §§ 2201 and 2202, filed on December 21, 2009 (Doc. 236):**

> **Defendants, citing *Lenzinger v. County of Lake*, 253 F.R.D. 469, 473 (N.D.Cal.2008), contend that Plaintiff must use California's procedures for executing or enforcing the Judgment.**
>
> **Defendants refer to California Government Code §§ 970 *et seq.*, which pertain to enforcement of judgments against a local public entity. The Judgment in this case is not against a "local public entity." The Judgment is against Defendants Zumwalt and Roper for monetary damages. However, California Government Code § 825(a) provides:**
>
>> **Except as otherwise provided in this section, if an employee or former employee of a public entity requests the public entity to defend him or her against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity and the request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.**
>>
>> **If the public entity conducts the defense of an employee or former employee against any claim or action with his or her reasonable good-faith cooperation, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed. However, where the public**

> **entity conducted the defense pursuant to an agreement with the employee or former employee reserving the rights of the public entity not to pay the judgment, compromise, or settlement until it is established that the injury arose out of an act or omission occurring within the scope of his or her employment as an employee of the public entity, the public entity is required to pay the judgment, compromise, or settlement only if it is established that the injury arose out of an act or omission occurring in the scope of his or her employment as an employee of the public entity.**

**Although it is not known whether Defendants Zumwalt and Roper made a timely request to the County, given that the County assumes in response to this motion that the County is liable for the Judgment, it is reasonable to infer that there was compliance with Section 845 [sic].**

**Assuming that Government Code §§ 970 *et seq.* applies to Plaintiff's enforcement of the Judgment, Section 970.2 provides:**

> **A local public entity shall pay any judgment in the manner provided in this article. A writ of mandate is an appropriate remedy to compel a local public entity to perform any act required by this article.**

**Government Code §§ 970.4 - 970.6 provide the procedure by which local public entities must pay tort judgments. The judgment must be paid to the extent funds are available in the fiscal year in which it becomes final. If the judgment cannot be paid in full in such fiscal year, the public entity must pay the balance of the judgment in the ensuing fiscal year unless this would result in undue hardship to the entity. In the case of undue hardship, the public entity is authorized to spread the payment of the balance of the judgment over a period not to exceed ten**

> **years. Law Revision Commission Comments, 1963 Addition.**

**Plaintiff replies that California Government Code §§ 970.4. - 970.6 on their face apply only when the judgment is against a local entity and not when it is an indemnitor of a government official pursuant to California Government Code § 825. Plaintiff cites *Scott v. County of Los Angeles*, 27 Cal.App.4th 125, 155 (1994). In *Scott*, a jury awarded damages to a minor for injuries she suffered from negligent supervision of her foster care by a county and an employee of the court's department of children's services. The jury found that 1 percent of the negligence was attributable to the foster parent, 24 percent was attributable to the county employee and 75 percent was attributable to the county. In pertinent part, the Court of Appeals ruled:**

> **[T]he defendants would appear to be correct in contending that the rate of interest applicable to all defendants' share of the judgment is 7 percent. As the plaintiff has expressly conceded, Government Code section 970.1, subdivision (b), limits the rate of interest on the County's share of the judgment to 7 percent. (*San Francisco Unified School Dist. v. San Francisco Classroom Teachers Assn*. (1990) 222 Cal.App.3d 146, 151-152 ... The intent of the Legislature in enacting section 970.1, subdivision (b), was to provide that execution and other remedies under the Code of Civil Procedure for enforcement of money judgments do not apply to enforcement of money judgments against local public entities. (222 Cal.App.3d at p. 151.) It would be inconsistent with that intent to allow interest at more than 7 percent on judgments against parties entitled to be indemnified by a local entity. Under**

> **Government Code section 825, Maxwell is entitled to be indemnified by the County for her share of the judgment. To prevent the County from being liable for interest on a judgment in excess of that allowed by section 970.1, subdivision (b), interest on Maxwell's share of the judgment should also be limited to 7 percent.**

**Plaintiff argues that, although *Scott* found that imposing the same interest rate on judgments against local entities and against local officials who are indemnified by the local entity is consistent with legislative intent,**

> **there is no indication that imposing the payment standards applicable only to public entity judgments also to public official judgments would be consistent with legislative intent; to the contrary, it would undermine the seemingly mandatory language of section 825(a), i.e., the portion which provides that 'the public entity shall pay any judgment' against a public official, and sections 970(b) and (c), which expressly decline to include judgments against public officials in the definition of 'judgment' against a local public entity and also excludes government officials from the definition of 'local public entity' itself. Accepting the defendants [sic] argument that the county liability procedures of Government Code §§ 970 *et seq*. apply would require a rewriting of state law, as well as the judgment in this case, under which Kings County was held not liable to plaintiff.**

**Plaintiff is correct that Government Code § 970(b) provides that "'[j]udgment' means a final judgment for the payment of money rendered against a local entity." However, Plaintiff is not correct that Government Code § 970(c) expressly excludes judgment against officials of the local public entity. Section 970(c) provides:**

> **'Local public entity' includes a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the state, but does not include the Regents of the University of California and does not include the state or any office, officer, department, division, bureau, board, commission or agency of the state claims against which are paid by warrants drawn by the Controller.**

**The Court can find no authority concerning the procedure to be followed to enforce a judgment for which a local public entity is liable pursuant to Government Code § 825(a) and the parties cite none. However, enforcement of such a judgment against the local public entity would be subject to the same procedural requirements as it would if the judgment had been directly against the local public entity. To make an extreme example, if a judgment which the local public entity agrees to pay pursuant to Section 825(a) is for millions of dollars which the local public entity cannot pay in that fiscal year, why should the public entity not be entitled to the protections of Government Code §§ 970.4-970.6?**

**Plaintiff argues that California Code of Civil Procedure §§ 699.510 - 699.560, pertaining to issuance of writs of execution, allows a judgment creditor to obtain an order directing the judgment debtor to pay a judgment, attaching a Judicial Council Form EJ-130, entitled Writ of Execution (Money Judgment). Plaintiff asserts:**

> **There is no inconsistency between the relief requested by the plaintiff, i.e., an order requiring the defendants to pay the judgment, and the procedures set forth in the above-**

> **cited state law provisions. Rule 69(a) 'permits judgment creditors to use any execution method consistent with the practice and procedure of the state in which the district court sits.'**

**Assuming that execution of Plaintiff's judgment is not subject to the California Government Code, *see discussion supra*, a court order to Defendants to pay the judgment is not appropriate. The California Code of Civil Procedure sections upon which Plaintiff relies pertain to the issuance of a writ of execution, which is issued by the Clerk of the Court. If the Court orders Defendants to pay the judgment, how can the Court enforce the order - by contempt? The appropriate way to proceed would be to vacate the Order Granting Defendants' Ex Parte Application for Stay of Enforcement of Judgment Pending Post Trial Motions and Appeal filed on December 21, 2009. Plaintiff can then take whatever steps he believes is appropriate to execute the judgment.**

**If Plaintiff's motion to immediately enforce the money judgment is denied and the stay remains in place, Plaintiff argues that Defendants should be required to increase the amount of security posted with the Court pursuant to Rule 62(d). Plaintiff concedes that he has found no authority permitting the Court to increase the amount of a supersedeas bond or security during the pendency of an appeal but contends that "the Court cannot abdicate its duty to do justice in a given situation merely because it has never arisen before." Plaintiff refers to the December 9, 2009 Memorandum Decision where the Court ruled**

**that "[t]he supersedeas bond should reflect the amount of monetary damages, prejudgment interest, recoverable costs, and some amount for delay," and then ordered Defendants to post a supersedeas bond in the amount of $250,000. Because the Court subsequently awarded Plaintiff attorney's fees in the amount of $198,615.00, Plaintiff asserts that the $250,000 deposit does not comply with the December 9, 2009 Memorandum Decision "any longer, because that order obligated the defendants to post a bond in an amount sufficient to cover the entire judgment." Plaintiff contends that Defendants are seeking to benefit from a continued stay that resulted from their initial supersedeas bond, which is now insufficient to cover the amount of the judgment. Plaintiff seeks to increase the amount of the cash deposit by $165,502.00, for a total deposit of $415,502.00.**

**Authority has been found that supports a Court's authority to exercise its discretion to increase the security for the increased award of attorney's fees and costs. *See Acacia Research Corp. v. National Union Fire Ins. Co.,* 2008 WL 4381649 (C.D.Cal., Sept. 9, 2008)(District Court increased amount of supersedeas bond after notice of appeal filed to include amount awarded as attorney's fees). Increasing the amount of Defendants' security for the judgment pending appeal is collateral; it does not involve the merits of the Judgment or Plaintiff's appeal.**

**Plaintiff's motion is GRANTED. Defendants shall increase the amount of the supersedeas bond or the cash deposited with the**

**registry of the Court in lieu of a supersedeas bond to the total amount of $415,502.00.**

IT IS SO ORDERED.

**Dated: June 23, 2010**

**/s/ Oliver W. Wanger**
UNITED STATES DISTRICT JUDGE